Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Robert Ahdoot, SBN 172098
*rahdoot@ahdootwolfson.com*
Theodore W. Maya, SBN 223242
*tmaya@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

Michael A. Galpern (*pro hac vice* application forthcoming)
Andrew P. Bell (*pro hac vice* application forthcoming)
James A. Barry (*pro hac vice* application forthcoming)
LOCKS LAW FIRM, LLC
801 North Kings Highway
Cherry Hill, New Jersey 08034
Tel: (856) 663-8200; Fax: (856) 661-8400

Counsel for Plaintiff,
JONATHAN KOLES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN KOLES, individually and on behalf of all others similarly situated, | Case No. 3:15-cv-04429 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| YAPSTONE, INC., a Delaware corporation, | |
| Defendant. | |

Plaintiff Jonathan Koles ("Plaintiff") brings this action against Defendant YapStone, Inc. ("Defendant"), on behalf of himself and all others similarly situated, to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action against Defendant for failing to secure and safeguard the personally identifiable information ("PII") and bank account information ("BAI") that Defendant collected and maintained (collectively "Private Information"), and for failing to provide timely and adequate notice to Plaintiff and other Class members that their information had been stolen and precisely what types of information were stolen (the "Data Breach").

2.      Due to Defendant's negligence, the Private Information that Defendant collected and maintained is now in the hands of thieves. Accordingly, Plaintiff brings this action against Defendant asserting claims for negligence, breach of implied contract, unjust enrichment, and violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"); the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* (the "NJCFA"); the New Jersey Data Breach Act, N.J.S.A. 56:8-163, *et seq.* (the "NJDBA"); and the California Data Breach Law, Cal. Civ. Code § 1798.80, *et seq.* (the "DBL").

## PARTIES

3.      Plaintiff Jonathan Koles is a citizen and current resident of New Jersey. Plaintiff listed a property in Wildwood Crest, New Jersey for rent on the website www.vrbo.com, through which individuals could rent the property and pay for rentals. Unbeknownst to Plaintiff, PII related to said rentals was passed through Defendant. By letter dated September 11, 2015, Defendant notified Plaintiff of the Data Breach. (*See* Yapstone Data Breach Notification Letter attached hereto as Exhibit A.)

4.      Defendant YapStone, Inc. is a Delaware corporation with its headquarters located at 2121 North California Boulevard, Suite 400, Walnut Creek, California. Defendant allowed a

massive breach of personal and financial information it collected and maintained to occur between approximately July 2014 and August 2015, which is the subject of this Complaint.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d), the Class contains members of diverse citizenship from Defendant and the amount in controversy exceeds $5 million.

6.      This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters and transacts substantial business in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because Defendant maintains offices within this District, and the Data Breach affected consumers in this District.

## FACTUAL BACKGROUND

### Defendant's Collection of Personally Identifiable Information and Bank Data

8.      Defendant is an American web-based and mobile platform payment processing company.  The company is expected to process over $14 Billion in transaction volume in 2015. YapStone, "YapStone Secures $60M in Debt Financing", <available at http://www.yapstone.com/news/yapstone-secures-60m-in-debt-financing/> (last visited Sept. 25, 2015).

9.      Defendant discloses the Information it collects about individuals for whom payments are processed using its systems on its website:

> Information We May Collect from You
>
> We may collect and process the following data about you:
>
> **1. Information that you provide by filling in forms, applications, or provide to us to facilitate our customer due diligence procedures. This includes personally identifiable information (PII), information provided at the time of registering for our services, engaging in a transaction, establishing reoccurring transactions, or requesting further services.** We may also ask you for information when you report a problem with our website.
>
> 2. If you contact us, we may keep a record of that correspondence regardless of the means.

3. We may also ask you to complete surveys that we use for research purposes, although you do not have to respond to them.

4. Details of transactions you carry out through our services and of the fulfillment of your transactions.

5. Details of your visits to our websites including, but not limited to, traffic data, location data, weblogs and other communication data, whether this is required for our own purposes or otherwise and the resources that you access.

6. **When you initiate a payment transaction, we also collect financial information such as credit card, debit card, or bank account details.** We do so in accordance with the highest level of the Payment Card Industry Data Security Standard (PCI-DSS), as YapStone is a Level One provider.

7. **For verification purposes we reserve the right to request proof of identification in an offline format. This may include passport, driver's license, proof of ownership, utility bill, business data, or other items we deem necessary to establish identity, residence, or place of business. Such proofs of identification may be stored electronically on our servers** in order to comply with our legal and regulatory obligations.

8. Your IP address, computer or device information including device-specific parameters, and access times may be tracked. We do this to prevent fraud, establish your identity, and provide promotional information which may be of interest to you.

9. Data necessary to detect and prevent fraud may be collected and compiled; we will either do this directly or in conjunction with a third-party who use this data to detect and protect against fraud ("third-party experts"). These third-party experts are subject to privacy and confidentiality obligations.

10. Competitions, promotions, or giveaways may be made available on our websites or through third parties from time to time. You do not have to participate in these. However, if choose to you may be asked to disclose some personal information. At the time of entering the promotion, we will disclose in its specific Terms and Conditions how your personal information will be used. Please do not participate in any promotion if you do not agree to such usage.

<http://www.yapstone.com/privacy-policy/> ("Privacy Policy U.S." last updated June 15, 2014)> (last visited Sept. 25, 2015) (emphasis added).

10.    Thus, Defendant stores massive amounts of PII on its servers and utilizes this information to maximize profits.

4

**CLASS ACTION COMPLAINT**

**Importance of Data Security to Processing of Transactions**

11.     Consumers place value in data privacy and security and they consider it when making decisions as to how to accept payments or complete transactions. Plaintiff would not have utilized the online payment services of Defendant or its affiliated entities had they known that Defendant does not take all necessary precautions to secure their personal and financial data. Defendant failed to disclose its negligent and insufficient data security practices and consumers relied on this omission in deciding to accept or make payments online through websites using Defendant's platform.

12.     Furthermore, when consumers decide to make or accept payments online through a platform such as Defendant's, they assume that its data security practices and policies are state of the art and that the retailer will use part of the price that consumers pay for adequate security measures. In fact, rather than use those moneys to implement data security policies and procedures, Defendant simply kept the money to maximize its profits, thus breaching the implied contract.

**Value of PII to Companies and Hackers**

13.     Plaintiff's PII and BAI is personal property and when stolen, is an extremely valuable commodity. A "cyber black-market" exists in which criminals openly post stolen social security numbers and other personal information on a number of underground Internet websites. This information can be used by thieves to open new financial accounts and take out loans in another person's name, incur charges on existing accounts or clone ATM, debit, or credit cards.

14.     PII data has been stolen and sold by the criminal underground on many occasions in the past, and the accounts of thefts and unauthorized access have been the subject of many media reports. Unfortunately, and as will be alleged below, despite all of this publicly available knowledge of the continued compromises of PII in the hands of other third parties, such as retailers, Defendant's approach at maintaining the security of Plaintiff's and Class Members' PII was lackadaisical, cavalier, reckless, or at the very least, negligent.

**The Data Breach Affecting Defendant**

15.     Defendant has indicated that PII as well as potentially, bank account information were accessible "via a YapStone URL between approximately July 15, 2014 and August 5, 2015." (*See* YapStone Data Breach Frequently Asked Questions attached hereto as Exhibit B).

**CLASS ACTION COMPLAINT**

16.     While Defendant has indicated that "[i]n some cases, the exposed information may include names, e-mail addresses, physical addresses, dates of birth, bank account and social security numbers." (*Id.*)  However, Defendant has not disclosed what other PII it collects, including computer IP addresses, location and information were disclosed in the breach.  (*Id.*)  Without such detailed disclosure, Plaintiff and Class members are unable to take the necessary precautions to prevent imminent harm, such as continued misuse of their personal information.

17.     Upon information and belief, Defendant failed to properly segregate PII from bank account information.

**Consequences of Defendant's Conduct**

18.     Upon information and belief, Plaintiff's identifying and/or financial information was disclosed in the Data Breach.

19.     The information Defendant lost, including Plaintiff's identifying information and/or other financial information, is "good as gold" to identity thieves, in the words of the Federal Trade Commission ("FTC").  FTC ").  FTC Interactive Toolkit, *Fighting Back Against Identity Theft*, available at  <http://www.vanderbilt.edu/PersonalIdentityTheftProtection.pdf > (last visited September 24, 2015).  Identity theft occurs when someone uses another's personal identifying information, such as that person's name, address, credit card number, credit card expiration dates, and other information, without permission, to commit fraud or other crimes.  *Id.*

20.     As the FTC has stated, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."  FTC, Signs of Identity Theft, available at <http://www.consumer.ftc.gov/articles/0271-signs-identity-theft> (last visited September 25, 2015).

21.     According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year." Rogers, Kate, Someone Became an Identity Theft Victim Every 2 Seconds Last year available at ,http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identity-theft-victim-every-2-seconds-last-year/. (last visited September 25, 2015).

CLASS ACTION COMPLAINT

22.     Identity thieves can use personal information such as that pertaining to the Class, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims.  For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.  This activity may not come to light for years.

22.     In addition, identity thieves may get medical services using consumers' lost information or commit any number of other frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest.

23.     It is incorrect to assume that reimbursing a consumer for fraud makes that individual whole again.  On the contrary, after conducting a study the Department of Justice's Bureau of Justice Statistics ("BJS") found that "[a]mong victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."  Victims of Identity Theft, 2012 at 1 (2013), available at <http://www.bjs.gov/content/pub/pdf/vit12.pdf> (last visited September 25, 2015). In fact, the BJS reported, "[r]esolving the problems caused by identity theft [could] take more than a year for some victims."  Id. at 11.

24.     According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [S]tolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

GAO, Report to Congressional Requesters, at p. 29 (June 2007), available at <http://www.gao.gov/new.items/d07737.pdf> (last visited September 25, 2015).

25.     As a result of the Data Breach, Plaintiff has purchased identity theft protection, costing a monthly premium of $29.99 per month.

26.     While Defendant has not given an indication of the size of the breach at issue, the breadth of its market share indicates that it is substantial, with numerous individuals now facing years

CLASS ACTION COMPLAINT

of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them, and the resulting loss of use of their credit and access to funds whether or not such charges are ultimately reimbursed by the credit card companies.

27. Plaintiff would not have accepted online payments through Defendant's platform, or paid as much for said services, had they known Defendant would not adequately protect their personal and financial information.

## CLASS ACTION ALLEGATIONS

28. Plaintiff seeks relief in his individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. ("Rule") 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a Nationwide Class preliminarily defined as follows:

> All natural persons and entities in the United States whose personal and/or financial information was disclosed in the data incursion affecting Defendant between 2014 and 2015. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff. (The "Nationwide Class.")

29. Plaintiff also brings this action on behalf of a New Jersey State Class, preliminarily defined as:

> All natural persons and entities in the State of New Jersey whose personal and/or financial information was disclosed in the data incursion affecting Defendant between 2014 and 2015. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff. (The "New Jersey Class.")

30. <u>Numerosity</u>. Rule 23(a)(1). The members of both Classes are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, it is in the millions.

31.     Commonality.  Rule 23(a)(2) and (b)(3).  There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.     Whether Defendant unlawfully used, maintained, lost or disclosed Plaintiff's and Class members' personal and/or financial information;

b.     Whether Defendant unreasonably delayed in notifying affected customers of the Data Breach and whether the belated notice was adequate;

c.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

a.     Whether Defendant's conduct was negligent;

b.     Whether Defendant's conduct violated the NJCFA;

c.      Whether Defendant's conduct violated the NJDBA;

d.     Whether Defendant entered into an implied contract with Plaintiff and Class Members containing a term to safeguard their Private Information;

e.     Whether Defendant was unjustly enriched;

f.     Whether Defendant violated the requirements of the DBL;

g.     Whether Defendant's conduct violated the UCL; and

h.     Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

32.     Typicality.  Rule 23(a)(3).  Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other class member, was misused and/or disclosed by Defendant.

33.     Adequacy of Representation.  Rule 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff's Counsel are competent and experienced in litigating class actions.

34.     Superiority of Class Action.  Rule 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is

CLASS ACTION COMPLAINT

impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

35.     Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Classes.

36.     Defendant has acted or refused to act on grounds that apply generally to the class, as alleged above, and certification is proper under Rule 23(b)(2).

**FIRST COUNT**
**Negligence**
**(On Behalf of Plaintiff and All Classes)**

37.     Plaintiff incorporates all previous factual allegations as if fully set forth herein.

38.     Plaintiff brings this claim individually and on behalf of the nationwide Class and the New Jersey Class.

39.     Defendant knowingly collected, came into possession of and maintained Plaintiff's Private Information, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

40.     Defendant had and continues to have a duty to timely disclose that Plaintiff's Private Information within its possession might have been compromised and precisely the types of information that were compromised.

41.     Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's Private Information.

42.     Defendant systematically failed to provide adequate security for data in its possession.

43.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff by failing to exercise reasonable care in protecting and safeguarding Plaintiff's Private Information within Defendant's possession.

44.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's Private Information.

45.     Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class members the fact that their Private Information within its possession might have been compromised and precisely the type of information compromised.

46.     Defendant's breach of duties owed to Plaintiff and the Class proximately caused Plaintiff's and Class members' Private Information to be compromised.

47.     As a result of Defendant's ongoing failure to notify consumers regarding what type of PII has been compromised, consumers are unable to take the necessary precautions to mitigate their damages by preventing future fraud.

48.     Defendant's breaches of duty caused Plaintiff to overpay for services, purchase services they would not otherwise have purchased, loss of time to monitor and cancel additional cards or accounts, loss of time and money monitoring their finances for additional fraud, diminished value of the services they received, and loss of control over their BAI and/or PII.

49.     Additionally, Plaintiff is in danger of imminent harm that his PII, which is or may be still in the possession of third parties, will be used for fraudulent purposes.

50.     Plaintiff seeks the award of actual damages on behalf of the Class.

51.     In failing to secure Plaintiff's and Class members' Private Information and promptly notifying them of the Data Breach, Defendant was guilty of oppression, fraud, or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiff's and Class Members' rights.  Plaintiff therefore, in addition to seeking actual damages, seeks punitive damages on behalf of themselves and the Class.

52.     Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1) compelling Defendant to institute appropriate data collection and safeguarding methods and policies with regard to consumer information and (2) compelling Defendant to provide detailed and specific disclosure of what types of PII have been compromised as a result of the data breach.

**SECOND COUNT**
**Breach Of Implied Contract**
**(On Behalf of Plaintiff and All Classes)**

53.     Plaintiff incorporates all previous factual allegations as if fully set forth herein.

54.     Defendant required customers who intended to accept payment through its online platform to provide bank account information as well as identity verification.

55.     In providing such information, Plaintiff and other Class members entered into an implied contract with Defendant whereby Defendant became obligated to reasonably safeguard their sensitive and non-public information.

56.     Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their financial data. Plaintiff and Class Members suffered and will continue to suffer damages including, but not limited to, actual identity theft, fraud and/or phishing, loss of money and costs incurred as a result of increased risk of identity theft, and loss of their PCD and PII, all of which have ascertainable value to be proved at trial.

**THIRD COUNT**
**Unjust Enrichment**
**(On Behalf of Plaintiff and All Classes)**

57.     Plaintiff incorporates all previous factual allegations as if fully set forth herein.

58.     Plaintiff hereby pleads in the alternative to the Second Count.

59.     Plaintiff and Class Members conferred a monetary benefit on Defendant.

60.     Defendant received and retained money belonging to Plaintiff and the Class.

61.     Defendant appreciates or has knowledge of such benefit.

62.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class members, which Defendant has unjustly received as a result of its unlawful actions.

63.     As a  result of Defendant's conduct, Plaintiff and the Class suffered and will continue to suffer actual damages including, but not limited to, the release of their Private Information; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and, time spent initiating fraud alerts. Plaintiff

and Class members suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, other economic and non- economic losses.

### FOURTH COUNT
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

64.    Plaintiff incorporates all previous factual allegations as if fully set forth herein.

65.    Defendants' conduct constitutes unfair and unlawful and fraudulent business practices within the meaning of the UCL.

66.    Defendants' conduct violated certain laws as alleged herein.  By engaging in the said conduct in the course of doing business, Defendants engaged in unlawful business practices in violation of the UCL.

67.    By engaging in the above-described conduct in the course of doing business, Defendants engaged in unfair business practices in violation of the UCL.  The harm to each Plaintiff outweighed any utility that Defendants' conduct may have produced.

68.    Defendants' failure to disclose information concerning the data breach directly and promptly to affected customers, constitutes a fraudulent act or practice in violation of the UCL.

69.    Plaintiff suffered injury in fact and lost property and money as a result of Defendants' conduct.

70.    Plaintiff seeks restitution and injunctive relief on behalf of the Nationwide Class.

### FIFTH COUNT
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-1, *et seq.***
**(On behalf of Plaintiff and the New Jersey Class)**

71.    Plaintiff incorporates all previous factual allegations as if fully set forth herein.

72.    Plaintiff brings this claim individually and on behalf of all other New Jersey Class members.

73.    The NJCFA, clearly applies to all sales to New Jersey consumers.

74.    The NJCFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services.  *See Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Ct. App. 1997).

75.    The NJCFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.  *See Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 441 (N.J. 2004) ("The [NJCFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

76.    "The available legislative history demonstrates that the [NJCFA] was intended to be one of the strongest consumer protection laws in the nation."  *New Mea Const. Corp. v. Harper*, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

77.    For this reason, the "history of the [NJCFA] is one of constant expansion of consumer protection."  *Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 681-82 (N.J. Ct. App. 2003).

78.    The NJCFA was intended to protect consumers "by eliminating sharp practices and dealings in the marketing of merchandise and real estate."  *Lemelledo v. Beneficial Mgmt. Corp.*, 696 A.2d 546, 550 (N.J. 1997).

79.    Specifically, N.J.S.A. 56:8-2 prohibits "unlawful practices, . . . which are defined as:

> The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby.

80.    The catch-all term "unconscionable commercial practice" was added to the NJCFA by amendment in 1971 to ensure that the Act covered, *inter alia*, "incomplete disclosures."  *Skeer v. EMK Motors, Inc.*, 455 A.2d 508, 512 (N.J. Ct. App. 1982).

81.    In describing what constitutes an "unconscionable commercial practice," the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic.  *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

82.     In order to state a cause of action under the NJCFA, a plaintiff does not need to show reliance by the consumer.  *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. App. Div. 2000); *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997) (holding that reliance is not required in suits under the NJCFA because liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'").

83.     Rather, the NJCFA requires merely a causal nexus between the false statement and the purchase, not actual reliance.  *See Lee*, *supra*, 4 A.3d at 579 ("causation under the [NJCFA] is not the equivalent of reliance").

84.     Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect Private Information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which the courts consider when evaluating claims under the Consumer Protection Acts, including N.J.S.A. 56:8-1, *et seq.*.

85.     Plaintiff and other New Jersey Class Members have suffered injury in fact and damages as a result of Defendant's violations of the NJCFA, including *inter alia* Plaintiff's purchase of identity theft protection as a result of the Data Breach.

### SIXTH COUNT
**Violation of the New Jersey Data Breach Act**
**N.J.S.A. 56:8-163, *et seq.***
**(On Behalf of Plaintiff and the New Jersey Class)**

86.     Plaintiff incorporates all previous factual allegations as if fully set forth herein.

87.     The NJDBA provides:

> Any business or public entity that compiles or maintains computerized records that include personal information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers, as provided in subsection a. of this section, of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person.

N.J.S.A. 56:8-163.

88.     N.J.S.A. 56:8-166 provides that:

**CLASS ACTION COMPLAINT**

1
2
3

> It shall be an unlawful practice and a violation of P.L. 1960, c. 39 (*C. 56:8-1* et seq.) to willfully, knowingly or recklessly violate sections 10 through 13 [*C.56:8-161* through *56:8-164*] of this amendatory and supplementary act.

4
5
6

89.     As alleged above, Defendant discovered and purportedly closed the data breach in August of 2015, however, Defendant delayed until September to disclose the fact that the data breach occurred to Plaintiff and Class Members.

7
8
9

90.     Defendant violated N.J.S.A. 56:8-1, *et seq.* by failing to immediately notify affected customers of the nature and extent of the Data Breach pursuant to the NJDBA, N.J.S.A. 56:8-163, *et seq.* which provides at Section 163:

10
11
12
13

> Any business or public entity that compiles or maintains computerized records that include personal information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers, as provided in subsection a. of this section, of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person.

14
15
16

91.     As a result of the data Breach, and Defendant's failure to disclose said breach, Plaintiff and class members have suffered injury in fact including but not limited to Plaintiff's expenditure of money in order to obtain credit monitoring services.

17
18

92.     Defendant's conduct violated the NJDBA, N.J.S.A. 56:8-163, which requires disclosure to affected consumers "in the most expedient time possible and without unreasonable delay."

19
20
21
22

93.     New Jersey's data breach law provides that:

> It shall be an unlawful practice and a violation of P.L. 1960, c. 39 (*C. 56:8-1* et seq.) to willfully, knowingly or recklessly violate sections 10 through 13 [*C.56:8-161* through *56:8-164*] of this amendatory and supplementary act.

23
24
25

94.     As a result of Defendant's violation of New Jersey law, Plaintiff and Class Members are entitled to treble damages, attorneys' fees and costs as well as all other damages the Court deems just.  N.J.S.A. 56:8-19.

26
27
28

**SEVENTH COUNT**
**Violation of the California Data Breach Law**
**Cal. Civ. Code § 1798.80, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

95. Plaintiff incorporates all previous factual allegations as if fully set forth herein.

96. The data breach described above constituted a "breach of the security system" of Defendants, within the meaning of Section 1798.82(g) of the California Civil Code.

97. The information lost in the data breach constituted "personal information" within the meaning of Section 1798.80(e) of the California Civil Code.

98. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach.

99. Defendants unreasonably delayed informing anyone about the breach of security of Class Members' confidential and non-public information after Defendants knew the data breach had occurred.

100. Defendants failed to disclose to Class Members, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, personal Information when they knew or reasonably believed such information had been compromised.

101. Upon information and belief, no law enforcement agency instructed Defendants that notification to Class Members would impede investigation.

102. As a result of Defendants' violation of Cal. Civ. Code § 1798.80 *et seq.*, Plaintiff and other Class Members incurred economic damages, including expenses associated with necessary credit monitoring.

103. Plaintiff, individually and on behalf of the Class, seeks all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to: (a) damages suffered by Class Members as alleged above; (b) statutory damages for Defendants' willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; and (c) equitable relief.

104. Plaintiff, individually and on behalf of the Class, also seeks reasonable attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for judgment as follows:

A.      For an Order certifying this action as a class action and appointing Plaintiff and their Counsel to represent the Class;

B.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.      For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage and safety and to disclose with specificity the type of PII compromised during the Data Breach;

D.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.      Ordering Defendant to pay for not less than three years of credit card monitoring services for Plaintiff and the Class;

F.      Ordering Defendant to disseminate individualized notice of the Data Breach to all Class members and to post notice of the Breach in all affected stores;

G.      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

H.      For an award of punitive damages, as allowable by law;

I.      For an award of attorneys' fees and costs, including expert witness fees;

J.      Pre- and post-judgment interest on any amounts awarded; and

K.      Such other and further relief as this court may deem just and proper.

18

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

Dated:  September 25, 2015             **AHDOOT & WOLFSON, PC**

/s/ Tina Wolfson
Tina Wolfson
Robert Ahdoot
Theodore W. Maya
Bradley K. King
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

LOCKS LAW FIRM, LLC
Michael A. Galpern (*pro hac vice* application to be filed)
Andrew P. Bell (*pro hac vice* application to be filed)
James A. Barry (*pro hac vice* application to be filed)
801 North Kings Highway
Cherry Hill, New Jersey 08034
Tel: (856) 663-8200; Fax: (856) 661-8400

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT