# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

*In re* Yapstone Data Breach

CASE NO. 4:15-cv-04429-JSW

**STIPULATION OF SETTLEMENT**

Hon. Jeffrey S. White, Presiding

**TABLE OF CONTENTS**

Page

I.      RECITALS .................................................................................................... 1

II.     DEFINITIONS ............................................................................................... 4

III.    SETTLEMENT CLASS ................................................................................. 9

IV.     SETTLEMENT CONSIDERATION ............................................................ 10

V.      PRELIMINARY APPROVAL ...................................................................... 12

VI.     SETTLEMENT ADMINISTRATOR ............................................................ 13

VII.    NOTICE, OPT-OUTS, AND OBJECTIONS ................................................ 15

VIII.   FAIRNESS HEARING, FINAL APPROVAL ORDER, AND JUDGMENT ................... 20

IX.     RELEASES .................................................................................................... 21

X.      ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS ....................... 23

XI.     MODIFICATION OR TERMINATION ........................................................ 24

XII.    NO ADMISSION OF LIABILITY ............................................................... 26

XIII.   MISCELLANEOUS ...................................................................................... 27

# EXHIBIT LIST

**Exhibit A**:       [Proposed] Final Approval Order

**Exhibit B**:       [Proposed] Final Judgment

**Exhibit C**:       Claim Form

**Exhibit D**:       [Proposed] Preliminary Approval Order

**Exhibit E**:       Long Form Notice

**Exhibit F**:       Settlement Administration Protocol

**Exhibit G**:       Summary Notice

**Exhibit H:**       Declaration of the Settlement Administrator

This Settlement Agreement and Release ("Agreement") is made and entered into on January 20, 2017, by and among (1) Settlement Class Representatives,[1] for themselves and on behalf of the Settlement Class, and (2) Yapstone Holdings, Inc., formerly known as Yapstone, Inc. and is subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. Settlement Class Representatives and Yapstone enter into this agreement by and through their respective counsel. As provided herein, Yapstone and Settlement Class Representatives hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class Representatives and the Settlement Class against Yapstone in the Consumer Action, shall be settled, compromised, and released upon the terms and conditions contained herein.

## I.    RECITALS

A.    Yapstone is purportedly an online "payments service provider (PSP)" company located in Walnut Creek, California, which provides payment services for e-commerce websites that have a large volume of regular payment processing needs, such as third party Homeaway.com, Inc. (a.k.a. VRBO.com, hereinafter "Homeaway").

B.    In September of 2015, Yapstone announced it experienced a data Incident in which certain personally identifiable information ("PII") of some users may have been exposed via unsecured online unique resource locators ("URLs"), otherwise commonly known as "web addresses," between July 15, 2014 and August 5, 2015 (the "Incident"). The PII had been provided by real estate lessor users ("Lessors"), on standardized Yapstone payment processing application forms, who sought to use Yapstone's service for collection of real estate rental payments intended for the Lessors. The forms were used to provide Yapstone with information on which to decide whether to accept such payments and identity verification only, and not for withdrawals or charges against lessees or those making the payments. Hence, the forms did not request credit card or debit card information.

---

[1]    Unless otherwise defined, all capitalized terms used herein shall have the same meaning and effect as defined in Section II of this Agreement, entitled "Definitions."

C.      The PII provided varied, but mostly included the name, address, date of birth, and bank deposit routing numbers and account numbers ("bank account information").  A minority of these users (approximately 36,500) had also provided their social security number ("SSN"), driver's license numbers ("DLN"), and/or passport numbers ("PN").  There were no credit card numbers, bank PINs, or account credentials.

D.      Yapstone hired outside third party experts to investigate the Incident.  Yapstone contends that they did not find any evidence of malicious extraction of user PII and confirmed that against the access logs.

E.      Yapstone contends that (i) no PII was extracted or misused and (ii) it nevertheless thought it important for its reputation and goodwill as a payments processor and vendor to notify users of the Incident by sending the Incident Notices, after September 2015 (the time during which Yapstone sent the Incident Notices is hereinafter referred to as the "Incident Notification Period").  Yapstone also contends that included in Yapstone's Incident Notices was an offer for two years of credit protection services through Experian's ProtectMyID®, free of charge (hereinafter the "Monitoring Offer").  In addition to credit monitoring and protection services, Yapstone contends that the ProtectMyID® Services provided enrolled individuals with up to $1 million in identity theft insurance, surveillance reports, and identity theft resolution.  Yapstone contends that it kept the Monitoring Offer open for approximately four months, and provided extensions of two to four additional months.

F.      After announcement of the Incident, the Actions were filed against Yapstone and Homeaway in the United States District Court for the Northern District of California.  These putative class actions alleged, *inter alia*, that Yapstone maintained inadequate data security practices and delayed in notifying users of the Incident.

G.      On February 8, 2016, Hon. Jeffrey S. White consolidated the Actions (into the Consumer Action) for coordinated pretrial proceedings, and appointed Ahdoot & Wolfson, PC as interim class counsel pursuant to Federal Rule of Civil Procedure 23(g)(3).  The Court appointed Ahdoot & Wolfson, PC, Locks Law Firm, LLC, and Levi & Korsinsky, LLP to Plaintiffs' Executive Committee.

H.    On March 8, 2016, Consumer Plaintiffs filed a Master Consolidated Class Action Complaint against Yapstone but removed Homeaway, asserting claims for alleged violations of state consumer protection statutes, state data breach notification statutes, and other state-specific statutes, negligence, breach of implied contract, and unjust enrichment.  On April 8, 2016, Yapstone moved to dismiss the Master Consolidated Class Action Complaint.  On April 22, 2016, Consumer Plaintiffs filed a notice of intent to file an amended class action complaint.  On June 7, 2016, Consumer Plaintiffs filed a First Amended Consolidated Class Action Complaint ("FACC").  On June 24, 2016, Yapstone moved to dismiss and also to strike allegations in the FACC.

I.    The Parties participated in mediation before the Honorable Richard Kramer (Ret.) of JAMS, and thereafter engaged in numerous telephone conferences with Judge Kramer, and conducted extensive negotiations directly among counsel.

J.    Consumer Plaintiffs conducted informal discovery concerning the size and membership of the Settlement Class, as well as the nature and scope of the Incident, and the nature and scope of Yapstone's response to the Incident.  According to Yapstone, it sent approximately 182,500 Incident Notices to its users, and the information that may have been exposed mostly included a user's name, address, date of birth, and bank deposit routing numbers and account numbers.

K.    Yapstone is in possession of the names, e-mail addresses, and physical mailing addresses of all Settlement Class Members.

L.    The Parties now agree to settle the Consumer Action in its entirety, without any admission of liability or certifiability of the Settlement Class, with respect to all Released Claims of the Settlement Class.  The Parties intend this Agreement to bind Settlement Class Representatives, Yapstone, and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement Class.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Consumer Action be settled, compromised, and dismissed on the merits and with prejudice as to Yapstone, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the

following terms and conditions:

**II.    DEFINITIONS**

The following defined terms apply throughout this Agreement:

1.      "Actions" means the civil actions entitled *Koles v. Yapstone, Inc.*, Case No. 4:15-cv-04429-JSW and *Bonnema v. Yapstone, Inc.*, Case No. 4:15-cv-05023-JSW, later consolidated into the Consumer Action.

2.      "Claims Deadline" means 180 days after the Notice Deadline.

3.      "Claim Form" or "Claim" means the form Redemption Claimants must submit to be eligible for relief under the terms of the Settlement, the proposed form of which is attached hereto as Exhibit C.

4.      "Class Counsel" means Tina Wolfson and Robert Ahdoot of Ahdoot & Wolfson, PC.

5.      "Consumer Action" means the consolidated civil action entitled *In Re Yapstone Data Breach*, Case No. 4:15-cv-04429-JSW (N.D. Ca.).

6.      "Consumer Plaintiffs" means the plaintiffs named in the Actions, Master Consolidated Class Action Complaint, and FACC.

7.      "Court" means the United States District Court for the Northern District of California.

8.      "Defense Counsel" means Ronald I. Raether, Jr., Mark C. Mao, and Sheila M. Pham of Troutman Sanders LLP.

9.      "Effective Date" means first business day after which all of the following events have occurred:   (a) the Parties, Class Counsel, Plaintiffs' Counsel, and Defense Counsel have executed this Agreement;  (b) the Court has entered the Final Approval Order without material change to the Parties' agreed-upon proposed Final Approval Order attached as Exhibit A;  and (c) the time for seeking rehearing, appellate, or other review of the Final Approval Order has expired, or (i) the Settlement is affirmed on appeal or review without material change, (ii) no other appeal or petition for rehearing or review is pending, and (iii) the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  The Effective Date shall not be altered

in the event the Court declines to approve, in whole or in part, the Service Awards or the payment of attorneys' fees, costs, and expenses in the amounts that Class Counsel requests. Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Fee Request awarded to Class Counsel or the Service Awards.

10. "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) entering the Final Approval Order and Final Judgment and dismissing the Action with prejudice; (b) determining whether the Settlement should be approved as fair, reasonable, and adequate; (c) ruling upon an application for Service Awards by the Plaintiffs; (d) ruling upon an application by Class Counsel for attorneys' fees, costs, and expenses; and (e) entering any final order awarding attorneys' fees, costs, and expenses and Service Awards. The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. § 1715(d).

11. "Fee Award" means such funds as may be awarded by the Court to Class Counsel and/or Plaintiffs' Counsel to compensate them for their attorneys fees, costs, and expenses in connection with the Actions, Consumer Action and the Settlement, as described in Paragraphs 73 to 78 of this Agreement.

12. "Final Approval Order" and "Final Judgment" mean the Court's order and judgment fully and finally approving the Settlement and dismissing the Consumer Action with prejudice, substantially in the form attached hereto as Exhibits A and B, respectively.

13. "Incident Notice" means Yapstone's written notification to individuals allegedly affected by the Incident sent during the Incident Notification Period.

14. "Long Form Notice" means the long form notice of settlement, substantially in the form attached hereto as Exhibit E.

15. "Notice" means the Long Form Notice and Summary Notice that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement, substantially in the form attached hereto as Exhibits E and G, respectively.

16. "Notice Date" means the first date on which Notice is disseminated.

17. "Notice Deadline" means thirty (30) days following the Notice Date.

18. "Notice Program" means the Notice plan and methods provided for in this Agreement and consists of: (1) an e-mailed Notice to all Settlement Class Members for whom Yapstone can ascertain an e-mail address from its records with reasonable effort ("E-Mail Notice"); (2) a direct-mail Notice to those Settlement Class Members for whom Yapstone can ascertain a mailing address from its records with reasonable effort and for whom Yapstone did not provide a valid e-mail address ("Mail Notice"); and (3) Notice posted on the Settlement Website. The forms of Notice shall be substantially in the forms attached as Exhibits E and G to this Agreement and approved by the Court. The Notice Program shall be effected in substantially the manner provided in Section VII.

19. "Objection Deadline" means forty-five (45) days after the Notice Deadline.

20. "Opt-Out Deadline" means forty-five (45) days after the Notice Deadline.

21. "Parties" means Settlement Class Representatives and Yapstone, collectively.

22. "Plaintiffs' Counsel" means Tina Wolfson and Robert Ahdoot of Ahdoot & Wolfson, PC; Michael A. Galpern, Andrew P. Bell, and James A. Barry of Locks Law Firm, LLC; and Shannon L. Hopkins, Shane Rowley, Nancy A. Kulesa, and Andrea Clisura of Levi & Korsinsky LLP.

23. "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice and Notice Program, substantially in the form attached hereto as Exhibit D.

24. "Redemption Claimants" means all persons who were sent an Incident Notice, but who did not sign up or redeem their Monitoring Offer, and whose SSN, DLN, or PN were at issue in the Incident. Yapstone's records show that there are approximately 30,342 Redemption Claimants.

25. "Released Claims" means any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, expenses, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Consumer Action, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (1) any alleged theft, exposure or disclosure of Settlement Class Members' PII; (2) Yapstone's maintenance and storage of

Settlement Class Members' PII; (3) Yapstone's information security policies and practices; and (4) Yapstone's Incident Notice to Settlement Class Members, and its handling of notices during the Incident Notice Period.

26. "Released Parties" means Yapstone and Yapstone's enterprise and consumer customers involved in the Incident (*e.g.*, Homeaway) and each of their present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, predecessors, successors, and assigns of each of them.

27. "Releasing Parties" means the Settlement Class Representatives and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement Class, and each of their respective heirs, assigns, beneficiaries, and successors.

28. "Service Award" means compensation to Settlement Class Representatives for their efforts in the Consumer Action, as set forth in Paragraph 72.

29. "Settlement Administration Protocol" means an allocation and distribution plan, substantially in the form attached hereto as Exhibit F.

30. "Settlement Administrator" means the qualified third party administrator and agent agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including providing the Notice. The Parties agree to recommend that the Court appoint Kurtzman Carson Consultants LLC as Settlement Administrator to: (a) design, consult on, and implement the Notice and related requirements of this Agreement; and (b) implement and oversee the Notice Program, the Settlement Website, the submission and review of Claim Forms, and related requirements of this Agreement, subject to the Court's approval. Class Counsel and Yapstone may, by agreement, substitute a different Settlement Administrator, subject to approval by the Court. In the absence of agreement, either Class Counsel or Yapstone may move the Court to substitute a different Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

31.  "Settlement Administration Charges" means all actual costs associated with the implementation of the Notice Program, dissemination of the Notice, and administration of the Settlement invoiced by the Settlement Administrator with respect to the Consumer Action.

32.  "Settlement Agreement" or "Agreement" means this Settlement Agreement and Release and Exhibits A to H,  into which the Parties have entered to resolve the Consumer Action and Released Claims.

33.  "Settlement Class" means all persons and entities who were sent an Incident Notice. Excluded from the Settlement Class is any judge presiding over this matter and any members of their first degree relatives, judicial staff, the officers and directors of Yapstone, and persons who timely and validly request exclusion from the Settlement Class.

34.  "Settlement Class Members" means all natural persons or entities who fall within the Settlement Class, including the Redemption Claimants, who do not exclude themselves from the Settlement Class.

35.  "Settlement Class Representatives" means Consumer Plaintiffs named in the FACC, as set forth in Paragraph 6 of this Agreement, namely, Jonathan Koles, Christopher Bonnema, Daniel Adams, James Mitchell, and Robert McGuire.

36.  "Settlement Fund" means one hundred twenty thousand dollars ($120,000) to be paid, equally, to two Internal Revenue Code § 501(c)(3) non-profit organizations on behalf of the Settlement Class, as set forth in Paragraph 43(b).

37.  "Settlement Website" means the Internet website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain Notice of and information about the Settlement, with the URL address www.yapstonesettlement.com.

38.  "Summary Notice" means the Summary Notice of the proposed class action settlement.  Redemption Claimants will receive a separate Summary Notice from the other Settlement Class Members.  Both Summary Notices will be substantially in the forms attached hereto as Exhibit G.

39.	"ProtectMyID® Services" means Experian ProtectMyID® identity monitoring services, set forth in Paragraph 43(a).	ProtectMyID® Services offered under this Agreement shall include: (a) a free copy of Redemption Claimant's Experian credit report; (b) surveillance alerts for Daily Bureau Credit Monitoring; (c) identity theft resolution and ProtectMyID® ExtendCARE™; and (d) one million dollars ($1,000,000.00) in identity theft insurance.

40.	"Yapstone" or "Defendant" means collectively, Yapstone Holdings Inc., formerly known as Yapstone, Inc., a Delaware corporation, and YapStone, Inc. a Delaware corporation.

## III.	SETTLEMENT CLASS

41.	For settlement purposes only, the Parties agree that the Court should certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3).

42.	For settlement purposes only, Class Counsel shall seek, and Yapstone shall not oppose, the appointment of Class Counsel as Settlement Class counsel, and appointment of the following persons as Settlement Class Representatives: Jonathan Koles, Christopher Bonnema, Daniel Adams, James Mitchell, and Robert McGuire. Settlement Class Representatives will move for certification of the Settlement Class contemporaneously with their motion for preliminary approval of the Settlement. Yapstone agrees not to contest certification of the Settlement Class but reserves the right to contest any motion to certify a class for any purpose other than approval of this Settlement. For purposes of settlement only, the Parties agree to seek provisional certification of the Class. The Parties further agree that the Court should make preliminary findings and enter the Preliminary Approval Order (substantially in the form attached at Exhibit D) granting provisional certification of the Class subject to final findings and ratification in the Final Order and Final Judgment, and appointing the representative Plaintiffs as the representatives of the Class and Class Counsel as counsel for the Class. Yapstone does not consent to certification of the Class for any purpose other than to effectuate the Settlement of the Action. Yapstone's agreement to conditional certification does not constitute an admission of wrongdoing, fault, liability, or damage of any kind to Consumer Plaintiffs or any of the Settlement Class Members. In the event Stipulation of Settlement is terminated pursuant to its terms, disapproved by any court (including any appellate court), and/or not consummated for any reason, or the Effective Date for any reason does not occur, the order certifying

the Settlement Class for purposes of effectuating this Stipulation of Settlement, and all preliminary and/or final findings regarding that class certification order, shall be automatically vacated upon notice of the same to the Court, the Action shall proceed as though the Class had never been certified pursuant to this Stipulation of Settlement and such findings had never been made, and the Action shall return to the procedural status quo in accordance with this paragraph. Class Counsel shall not refer to or invoke the vacated findings and/or order relating to class settlement in the event this Stipulation of Settlement is not consummated and the case is later litigated and contested by Yapstone under Rule 23 of the Federal Rules of Civil Procedure.

## IV.   SETTLEMENT CONSIDERATION

43.    In consideration for the release contained in this Agreement, and as a direct result of the Consumer Action, and without admitting liability for any of the alleged acts or omissions alleged in the Consumer Action, and in the interests of minimizing the costs inherent in any litigation, Yapstone will perform all of the following:

a.    Yapstone shall provide the Redemption Claimants, at Yapstone's expense, twelve (12) months of ProtectMyID® Services which shall be identical to the services offered in the Incident Notices. Upon receiving the list of Redemption Claimants pursuant to Paragraph 47(m), Yapstone shall commence ProtectMyID® Services for Redemption Claimants the later of thirty (30) days after the Claims Deadline or thirty (30) days after the Effective Date.

b.    Yapstone will pay the amount of one hundred twenty thousand dollars ($120,000) to create the Settlement Fund on behalf of the Settlement Class. Within ten (10) business days of the Effective Date, Yapstone shall distribute the Settlement Fund, equally, to the following Internal Revenue Code § 501(c)(3) non-profit organizations, as follows: Public Justice and the UC Berkeley School of Information, Center For Long-Term Cybersecurity;

c.    Within ten (10) business days of any invoice issued by the Settlement Administrator, Yapstone will pay any and all invoiced Settlement Administration Charges;

d.    Within ten (10) business days of the Effective Date, Yapstone will pay all of the Court-approved Service Awards to Class Counsel for the benefit of the Settlement Class Representatives;

e.     Within ten (10) business days of the Effective Date, Yapstone will pay all of the Fee Award to Class Counsel; and

f.     Within ninety (90) days after the Effective Date, if it has not already done so in calendar year 2016, Yapstone will adopt and implement all of the following data security measures with respect to all financial transactions conducted or facilitated by Yapstone:

i.     <u>Migration of URL tool to "ZenDesk"</u>. Yapstone shall expedite moving the Settlement Class Members' PII at issue from the URL tool to "ZenDesk";

ii.     <u>Payment Card Industry Data Security Standard (PCI DSS)</u>.  Yapstone shall expedite compliance with PCI DSS 3.2, to ensure its compliance no later than sixty (60) days after the time by which PCI Security Standards Council has established that PCI DSS 3.2 becomes effective as a requirement;

iii.     <u>Chief Information Security Officer</u>.  Yapstone shall designate a Chief Information Security Officer, with responsibility to coordinate and be responsible for the company's program(s) to protect the security of Settlement Class Members' PII;

iv.     <u>Product and Data Risk Assessments</u>.  Yapstone will perform a single risk assessment that identifies material internal and external risks to the security of the Settlement Class Members' PII stored on Yapstone's systems.  The risk assessment may also assess risk to Yapstone customers who are not Settlement Class Members and, at a minimum, will consider risks associated with: (i) employee training and management; (ii) software design and testing; and (iii) vendor data management and security practices;

v.     <u>Safeguard Design Resulting From Risk Assessments</u>.  Yapstone will design and implement reasonable safeguards to manage the risks to the Settlement Class Members' PII, if any, identified through its risk assessments, pursuant to Paragraph 43(f)(iv);

vi.     <u>Dynamic Security Program</u>.  Yapstone will evaluate and adjust as reasonably necessary its systems on which and by which Settlement Class Members' PII is stored in light of: (i) the results of the testing and monitoring required by Paragraph 43(f); (ii) any material changes to its operations or business arrangements; or (iii) any other circumstances that it knows or has reason to know may have a material impact on the effectiveness of its security program;

vii.       <u>Privacy Policy Notice</u>.   Yapstone will continue to provide Settlement Class Members with updates regarding its privacy policy as required by law;

viii.       <u>Employee Education</u>.   Yapstone will maintain a program to educate and train its workforce on the importance of the privacy and security of the Settlement Class Members' PII, which need not be segregated from training with respect to privacy and security of other Yapstone customers' PII; and

ix.       Yapstone shall pay, separate from and in addition to the other considerations set forth in this Agreement, all of its compliance costs and expenses associated with implementing measures described in Paragraph 43 hereto.

x.       The obligations pursuant to Paragraph 43(f) will expire once completed for subsections i, ii, iii, iv, and v, and one year from the Effective Date for the remaining subsections.

## V.     <u>PRELIMINARY APPROVAL</u>

44.     Upon execution of this Agreement by the Parties, Class Counsel shall promptly move the Court for an order granting preliminary approval of this Settlement, substantially in the form of Exhibit D. The motion for preliminary approval shall request that the Court: (1) preliminarily approve the terms of the Settlement as falling within the range of possible approval as fair, reasonable and adequate; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notice; (4) approve the procedures set forth in Section VII for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay all proceedings in the Consumer Action unrelated to the Settlement pending Final Approval of the Settlement; and (6) schedule a Fairness Hearing for a time and date convenient for the Court, at which time the Court will conduct an inquiry into the fairness of the Settlement, determine whether it is fair and reasonable and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses.

45.     Within ten (10) days of the filing of the motion for preliminary approval, Yapstone, at its own expense, shall cause to be served through the Settlement Administrator, a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class

Action Fairness Act ("CAFA"). Following completion of CAFA notice as set forth herein, Yapstone will file notice with the Court stating it has complied with the requirements of CAFA.

## VI.   **SETTLEMENT ADMINISTRATOR**

46.     The Settlement Administrator shall administer various aspects of the Settlement as described in Paragraph 47 and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, overseeing the claim process; providing E-mail Notice and Mail Notice to Settlement Class Members as described in Section VII; establishing and operating the Settlement Website and a toll-free number; administering the Claims processes; and distributing relief according to the processes and criteria set forth herein and in the Settlement Administration Protocol attached hereto as Exhibit F.

47.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

a.     Obtaining from Yapstone and securely maintaining the names, mailing addresses, and/or e-mail addresses of Settlement Class Members for the purpose of sending E-Mail Notice and Mail Notice, to the extent that such information is reasonably available from Yapstone's records;

b.     Obtaining from Yapstone information necessary to establish a reasonably practical procedure to verify the Redemption Claimants;

c.     Effecting the Notice Program and performing the duties ascribed to the Settlement Administrator in this Agreement;

d.     Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

e.     Establishing and maintaining the Settlement Website;

f.     Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

g.     Responding to any mailed Settlement Class Member inquiries;

h.     Processing all written notifications of exclusion from the Settlement Class;

i.      Providing weekly reports and, no later than five (5) days after the Opt-Out Deadline, a final report to Class Counsel and Yapstone, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information as requested by Class Counsel and Defense Counsel;

j.      In advance of the Fairness Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

k.      Reviewing, determining the validity of, and responding to all Claims submitted by Redemption Claimants, pursuant to criteria set forth in the Settlement Administration Protocol attached hereto as Exhibit F;

l.      Fifteen (15) days before the Claims Deadline, sending to all Redemption Claimants who have not made a Claim, an email reminding Redemption Claimants of the offer provided for in this Settlement, how to make a Claim, and the deadline for making such a Claim.  In the event an e-mail address for a Redemption Claimant is invalid, the Settlement Administrator shall send a reminder letter via U.S. Mail.

m.      Fifteen (15) days after the Claims Deadline, delivering to Yapstone a list of Redemption Claimants, in order for Yapstone to secure for them ProtectMyID® Services in accordance with Paragraph 43(a);

n.      Providing weekly reports and a final report to Class Counsel and Yapstone that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel and Defense Counsel; and

o.      Performing other functions reasonably related to administration of this Agreement at the agreed-upon written instruction of both Class Counsel and Yapstone.

48.     All costs incurred by the Settlement Administrator required by this Agreement shall be borne by Yapstone. These payments shall be made separate and apart from the Settlement Fund or any other obligation of Yapstone under the terms and conditions of this Agreement.

## VII.     NOTICE, OPT-OUTS, AND OBJECTIONS

49.     Upon Preliminary Approval of the Settlement, at the direction of Class Counsel, the Settlement Administrator will implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order.

50.     Notice of the Settlement to the Settlement Class Members shall comply with Federal Rules of Civil Procedure and any other applicable statute, law, or rule, including but not limited to, the Due Process Clause of the United States Constitution.

51.     Class Member Information:  No later than seven (7) days after entry of the Preliminary Approval Order, Yapstone shall provide the Settlement Administrator with the name, e-mail address, and mailing address of each Settlement Class Member, and for each Settlement Class Member indicate whether he or she is a Redemption Claimant. Yapstone will provide the most current information for all Settlement Class Members.

52.     Settlement Website:  Prior to the Notice Date, the Settlement Administrator shall establish the Settlement Website, www.yapstonesettlement.com, that will inform Settlement Class Members of the terms of this Agreement, their rights, dates and deadlines and related information, through and including periodic updates, a list of important dates, hyperlinked access to this Agreement, the Long Form Notice and Summary Notice, any motion seeking Final Approval of this Agreement, any motion for an award of attorneys' fees, costs, and expenses and Service Awards, the Preliminary Approval Order, the Claim Form, the First Amended Consolidated Class Action Complaint, and such other documents as Class Counsel and Yapstone agree to post or that the Court orders posted on the website. Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website. The Settlement Website shall not include any advertising and shall remain operational until at least thirty (30) days following the Effective Date. The Settlement Administrator will terminate the Settlement Website thirty (30) days after the Effective Date. The Settlement Administrator will then transfer ownership of the URL to Yapstone. The

Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically. The Settlement Website shall also make the Claim Form available for download.

53.     The Long Form Notice:  The Long Form Notice shall be in a form substantially similar to the document attached to this Agreement as Exhibit E and shall comport to the following:

a.     <u>General Terms</u>:  The Long Form Notice shall contain a plain and concise description of the nature of the Consumer Action and the proposed Settlement, including information on the definition of the Settlement Class and the Settlement Class Members, how the proposed Settlement would provide relief to Settlement Class Members, the date upon which the Fairness Hearing will occur, the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information, the claims released under the proposed Settlement, and other relevant information.

b.     <u>Opt-Out Rights</u>:  The Long Form Notice shall inform Settlement Class Members that they have the right to opt out of the Settlement Class.  The Long Form Notice shall provide the deadlines and procedures for exercising this right.

c.     <u>Objection to Settlement</u>:  The Long Form Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.  The Notice shall provide the deadlines and procedures for exercising these rights.

d.     <u>Fees, Costs, and Expenses</u>:  The Long Form Notice shall inform Settlement Class Members the maximum amounts to be sought by Class Counsel as attorneys' fees, costs, and expenses and individual Service Awards to Settlement Class Representatives, and shall explain the fees, costs, and expenses awarded to Class Counsel, and Service Awards to Settlement Class Representatives, in addition to relief available to Settlement Class Members and Redemption Claimants.

e.     <u>Settlement Benefits</u>: The Long Form Notice shall inform the Settlement Class Members: (i) of the difference between a Settlement Class Member and a Redemption Claimant; (ii) of the benefits provided in the Settlement to all Settlement Class Members; (iii) of the benefits provided in the Settlement to Redemption Claimants; and (iv) that in order to receive ProtectMyID®

Services, Redemption Claimants must fully complete and timely submit a Claim Form prior to the Claims Deadline.

54. Toll Free Telephone Number: Prior to the Notice Date, the Settlement Administrator shall establish a toll-free telephone number, through which Settlement Class Members may obtain information about the Consumer Action and the Settlement and request a mailed copy of the Long Form Notice and/or the Claim Form (if a Redemption Claimant), pursuant to the terms and conditions of this Settlement.

55. As set forth in the Declaration of the Settlement Administrator attached hereto as Exhibit H, the Notice Program has three components: (1) E-Mail of the Summary Notice; (2) dissemination of the Summary Notice by U.S. Mail as necessary; and (3) posting of the Long Form Notice and Summary Notice along with relevant documents and information on the Settlement Website. Within ten (10) days after the entry of the Preliminary Approval Order and to be substantially completed no later than the Notice Deadline, and subject to the requirements of this Agreement and the Preliminary Approval Order, the Parties shall coordinate with the Settlement Administrator to provide Notice pursuant to the Notice Program as follows:

      a. The Settlement Administrator shall send the Summary Notice via E-mail to all Settlement Class Members for whom Yapstone can ascertain an e-mail address from its records;

      b. In the event an e-mail address for a Settlement Class Member cannot be ascertained by Yapstone or the Settlement Administrator learns (through an email "bounce-back" or otherwise) that the e-mail address in Yapstone's records is invalid, the Settlement Administrator shall send the Summary Notice via U.S. Mail Notice to all Settlement Class Members for whom Yapstone can ascertain a mailing address from its records. For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Summary Notice to the updated address as indicated. For any U.S. Mailed Summary Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Summary Notice to the extent updated

addresses are identified. The Settlement Administrator need only make one attempt to re-mail any Summary Notices that are returned as undeliverable;

        c.    Publishing, on or before the Notice Date, the Long Form Notice on the Settlement Website, as specified in the Preliminary Approval Order and as set forth in the Declaration of the Settlement Administrator, attached hereto as Exhibit H; and

        d.    Providing the Internet URL address of the Settlement Website (www.yapstonesettlement.com) in the Long Form Notice and the Summary Notice.

56.    Any written objection to the Settlement must (i) provide identifying information of the objector, including the full legal name, address, phone number, and the same contact information for any counsel representing the objector; (ii) clearly identify the case name and number; (iii) include a statement containing the basis and reasons for the objection, and the amount of time for speaking that will be requested by the objector at the Fairness Hearing; (iv) their signature; (v) be submitted to the Court by filing the written objection through the Court's Case Management/Electronic Case Files system, by mailing the written objection to the Class Action Clerk for United States District Court for the Northern District at 1301 Clay Street, Oakland, California 94612, or by filing the written objection in person at any location of the United States District Court for the Northern District of California; (vi) if the objector is represented by counsel, said counsel shall request for admission for the Northern District of California for the purposes of the objection; and (vii) be filed or postmarked on or before the Objection Deadline provided in the Court's Preliminary Approval Order. Only Settlement Class Members who do not opt out as set forth in Paragraphs 58 and 59 may file objections. To the extent a timely objection is withdrawn before final approval, such an objection shall be treated as though no objection has been made.

57.    The Parties shall request that the Court allow any interested party to file a response to any objection, no later than seven (7) days before the Fairness Hearing, or as the Court may otherwise direct.

58.    Settlement Class Members may elect to opt out of the Settlement Class, relinquishing their rights to benefits under the Settlement. Settlement Class Members who opt out of the Settlement Class will not release their claims pursuant to this Settlement. Settlement Class Members wishing to

opt out of the Settlement Class must send to the Settlement Administrator by U.S. mail (to the address provided in the Class Notice) a letter including: (a) their full name (first, middle, last and any suffix); (b) email address and mailing address; (c) a clear statement communicating that they elect to be excluded from the Settlement Class, do not wish to be a Settlement Class Member, and elect to be excluded from any judgment entered pursuant to the Settlement; (d) the case name and case number; and (e) their signature. Any request for exclusion or opt out must be postmarked on or before the Opt-Out Deadline provided in the Court's Preliminary Approval Order. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Settlement Class Members who fail to submit a valid and timely request for exclusion on or before the date specified in the Court's Preliminary Approval Order shall be bound by all terms of this Agreement and the Final Approval Order and Final Judgment, regardless of whether they have requested exclusion from the Settlement Class.

59. Any Settlement Class Member who submits a timely request for exclusion or opt out may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement.

60. The Settlement Administrator shall promptly provide copies of all requests for exclusion, objections, and/or related correspondence from Settlement Class Members to Class Counsel and Defense Counsel. Not later than five (5) business days after the deadline for submission of requests for exclusion or opt out, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete opt out list together with copies of the opt out requests.

61. The E-Mail and Mail Notice Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices and E-Mail Notices that are returned undeliverable.

62. The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court. The Notice shall be posted on the Settlement Website by the Notice Deadline.

63. Within five (5) days after the Notice Deadline, the Settlement Administrator shall provide Class Counsel and Yapstone with one or more affidavits confirming that the E- mail Notice and Mail Notice Program, and posting of Notice on the Settlement Website were completed

in accordance with the Parties' instructions and the Court's approval. Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representatives' motion for final approval of the Settlement.

## VIII. <u>FAIRNESS HEARING, FINAL APPROVAL ORDER, AND JUDGMENT</u>

64. Settlement Class Representatives' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Fairness Hearing will occur. The Fairness Hearing shall be scheduled no earlier than ninety (90) days after the CAFA notices are mailed to ensure compliance with 28 U.S.C § 1715. By no later than fourteen (14) days prior to the Objection Deadline, Plaintiffs shall file a motion for final approval of the Settlement and a motion for attorneys' fees, costs, and expenses and for Service Awards. By no later than seven (7) days prior to the Fairness Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses, and for Service Awards. At the Fairness Hearing, the Court will consider Settlement Class Representatives' motion for final approval of the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards. In the Court's discretion, the Court also may hear argument at the Fairness Hearing from any Settlement Class Members (or their counsel) who objects to the Settlement, and the application for attorneys' fees, costs, and expenses and for Service Awards, provided the objectors filed timely objections that meet all of the requirements set forth in Paragraph 56 herein.

65. At or following the Fairness Hearing, the Court will determine whether to enter the Final Approval Order granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, and expenses and the Service Awards. The proposed Final Approval Order that will be filed with the motion for final approval shall be in a form agreed upon by Class Counsel and Yapstone, attached hereto as Exhibit A. Such proposed Final Approval Order shall, among other things:

a. Determine that the Settlement is fair, adequate, and reasonable and approve the Settlement;

b. Finally certify the Settlement Class for settlement purposes only;

c.  Determine that the Notice provided satisfied Due Process requirements;

d.  Dismiss the Consumer Action with prejudice;

e.  Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section IX, including during the pendency of any appeal from the Final Approval Order;

f.  Release Yapstone and the Released Parties from the Released Claims, as set forth in Section IX; and

g.  Reserve the Court's continuing and exclusive jurisdiction over Yapstone and all Settlement Class Members (including all objectors or their counsel) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## IX.  **RELEASES**

66.  As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from any and all Released Claims.

67.  For the avoidance of doubt, the Released Claims include any existing or potential claims that a Releasing Party under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under Cal. Bus. & Prof. Code § 17200, *et seq.*, Cal. Civ. Code § 1798.80, *et seq.*, N.J.S.A. 56:8-1, *et seq.*, Minn. Stat.§ 325F.68, *et seq.*, Minn. Stat. § 8.31, *et seq.*, Minn. Stat. § 325D.43, *et seq.*, Minn. Stat.§325E.61, *et seq.*, N.J.S.A. 56:8-163, *et seq.*, Nev. Rev. Stat. § 598.0915, *et seq.*, Nev. Rev. Stat. § 41.600, *et seq.*, N.R.S. 603A.010, *et seq.*, and any similar statutes or data breach notification statutes in effect in the United States or in any states in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the

United States or of any states in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs, and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief. The Released Claims do not include any claims arising from or relating to any conduct by a Releasing Party after the date the Agreement is executed.

68. As of the Effective Date, the Released Parties will be deemed to have completely released and forever discharged the Releasing Parties and Class Counsel from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Consumer Action.

69. The Releasing Parties and the Released Parties expressly acknowledge that they are familiar with principles of law such as Section 1542 of the Civil Code of the State of California, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding California or other similar law, the Releasing Parties and the Released Parties hereby expressly agree that the provisions, rights, and benefits of Section 1542 and all similar federal or state laws, rights, rules or legal principles of any other jurisdiction that may be applicable herein are hereby knowingly and voluntarily waived, released, and relinquished to the fullest extent permitted by law solely in connection with unknown claims that are the same as, substantially

similar to, or overlap the Released Claims, and the Releasing Parties and the Released Parties hereby agree and acknowledge that this is an essential term of the Release. In connection with the Release, the Releasing Parties and the Released Parties acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein, and that such claims, to the extent that they are the same as, substantially similar to, or overlap the Released Claims, are hereby released, relinquished, and discharged.

70. Nothing in the Release shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

71. Upon entry of the Final Judgment, the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## X. ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

72. Service Awards. Class Counsel will ask the Court to approve, and Yapstone will not oppose, Service Awards not to exceed $2,000 for each Settlement Class Representative, which are intended to compensate such individuals for their efforts in the litigation and commitment on behalf of the Settlement Class. Any Service Awards approved will be paid as set forth in Paragraph 43(d). Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Agreement.

73. Attorneys' Fees, Costs, and Expenses. Class Counsel, on behalf of Plaintiffs' Counsel and the Settlement Class, will make their application for attorneys' fees, costs, and expenses ("Fee Request") at least fourteen (14) days before the Objection Deadline. Consumer Plaintiffs and Class Counsel agree not to seek an award of attorneys' fees, costs, and expenses in excess of three hundred thousand dollars ($300,000). Yapstone and Defense Counsel will not oppose or otherwise object to the Fee Request, provided it does not exceed the amounts set forth herein.

74.     In the event that the Fee Award is reduced on appeal, Yapstone shall only pay the reduced amount of such award. Class Counsel shall timely furnish to Yapstone any required tax information, account information or necessary forms at least fifteen (15) days before the payment is due.

75.     The payment of Service Awards and Fee Award pursuant to Paragraphs 72-74 shall be made through a wired deposit by Yapstone into a bank account to be designated by Class Counsel.

76.     In the event the Court declines to approve, in whole or in part, the Fee Request or Service Award, the remaining provisions of this Agreement shall remain in full force and effect.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the Fee Request or Service Award shall constitute grounds for cancellation or termination of this Agreement.

77.     Yapstone and Released Parties shall not be liable for any additional attorneys' fees, costs, and/or expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member individually, other than what is expressly provided for in this Agreement.

78.     Class Counsel agrees to hold Yapstone and the Released Parties harmless for any claim that this Agreement failed to include any person or firm who claims they are entitled to a share of any Fee Award for the Released Claims.  Class Counsel is solely responsible for distributing the Fee Award to any attorney that may claim entitlement to attorneys' fees, costs, or expenses in the Consumer Action.  Yapstone and the Released Parties are not responsible for Class Counsel's allocation of the Fee Award.

## XI.     MODIFICATION OR TERMINATION

79.     The terms and provisions of this Settlement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are

consistent with the Court's Final Approval Order and Final Judgment and do not materially alter, reduce or limit the rights of Settlement Class Members under this Settlement.

80. This Settlement may be terminated by either Settlement Class Representatives or Yapstone by serving on counsel for the opposing Party and filing with the Court a written notice of termination within fourteen (14) days (or such longer time as may be agreed between Class Counsel and Yapstone) after any of the following occurrences:

      a. Class Counsel and Yapstone agree to termination before the Effective Date;

      b. The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

      c. An appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

      d. The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Approval Order, or the Settlement; or

      e. The Effective Date does not occur.

81. In the event that a party exercises his/her/its option to withdraw from and terminate this Settlement pursuant to Paragraph 80, or if the Court does not enter the Final Judgment without material modification, or if the Final Judgment is reversed in whole or in part on appeal, or in the event the Final Judgment is not achieved, certification of the Settlement Class will be vacated, and the Parties will be returned to their positions *status quo ante* with respect to the Consumer Action as if the settlement had not been entered into and: (a) any court orders preliminarily or finally approving the certification of any class contemplated by the Settlement and any other orders entered pursuant to this Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in support of claims or defenses or in support of or in opposition to a class certification motion; and (b) this Agreement will become null and void (with the exception Paragraphs 81, 82, 99 and 100 herein) and shall have no force or effect, the Parties shall not be bound by this Settlement, the Parties will be returned to their respective positions existing immediately before the execution of

this Settlement, and all of the Parties' respective pre-Settlement claims and defenses will be preserved, and the fact of this settlement, that Yapstone did not oppose the certification of any class under the settlement, or that the Court approved the certification of a Settlement Class, shall not be used or cited thereafter by any person or entity, including in any contested proceeding relating to the certification of any class.

82. Notwithstanding the foregoing, in the event this Settlement is not approved by any court, or the Settlement is declared null and void, or in the event that the Effective Date does not occur, Settlement Class Members, Consumer Plaintiffs, Class Counsel, and Plaintiffs' Counsel shall not in any way be responsible or liable for any costs of notice and administration associated with this Settlement, except that each Party shall bear its own attorneys' fees and costs and Yapstone's future payment obligations shall cease.

## XII. <u>NO ADMISSION OF LIABILITY</u>

83. Yapstone disputes the claims alleged in the Consumer Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind by it or the Released Parties. Yapstone has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Consumer Action.

84. Class Counsel and Settlement Class Representatives believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel and Settlement Class Representatives have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

85. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an

acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

86.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Consumer Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Consumer Action or in any proceeding in any court, administrative agency or other tribunal.

## XIII.  **MISCELLANEOUS**

87.     <u>Recitals</u>.  The Parties agree that the recitals are contractual in nature and form a material part of this Stipulation of Settlement.

88.     <u>Singular and Plurals</u>.  As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

89.     <u>Communications</u>.  Except in connection with any proceeding, court filing, or the dissemination of notice to the Class, Consumer Plaintiffs, Plaintiffs' Counsel, and Class Counsel will not issue any press releases or communicate with the media regarding the Settlement or the Consumer Action without prior approval from Yapstone or Defense Counsel.  However, if Consumer Plaintiffs, Plaintiffs' Counsel, or Class Counsel receive an inquiry from any third party, they may decline to comment, refer to the Settlement and/or defer to the Court file. Plaintiffs' Counsel and Class Counsel are free to state they served as legal counsel in this lawsuit and refer to the Settlement and/or defer to the Court file.  However, nothing shall limit the ability of Class Counsel to communicate privately with a Settlement Class Member concerning the Settlement, and the ability of Yapstone or its successors to make such public disclosures as the federal securities laws require or to provide information about the Settlement to state and federal regulators, other government officials, or its insurers/reinsurers.

90.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

91. <u>Cooperation of Parties</u>.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

92. <u>Obligation To Meet And Confer</u>.  If any Settlement Class Member has a claim or dispute regarding Yapstone's compliance with this Settlement Agreement, including but not limited to Paragraph 43, then such Settlement Class Member first must submit, *pro se* or through counsel, his or her dispute directly to Yapstone before taking any other action.  Upon receipt of such a dispute, Yapstone will investigate the dispute and respond to the Settlement Class Member within thirty (30) days.  Yapstone's response must state the results of the Yapstone's investigation of the allegation of non-compliance with the Settlement Agreement and any action taken or to be taken to address the Settlement Class Member's dispute; or, if additional information is required for Yapstone to complete its investigation, Yapstone's response must identify the specific additional information that is required.  Upon the Settlement Class Member's submission of all of the additional information required (as set forth in Yapstone's response), Yapstone will have thirty (30) days to complete its investigation of the Settlement Class Member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute.

If, after the dispute resolution process described above has been completed, the Settlement Class Member wants to seek additional remedies, then he or she may submit his or her dispute regarding the allegation of non-compliance with the Settlement Agreement to the Court (pursuant to the Court's retention of exclusive jurisdiction under Paragraph 97) under the caption for this Consumer Action.  The Settlement Class Member's submission to the Court must include copies of all correspondence between the Settlement Class Member and Yapstone regarding the dispute prior to the submission.  The Court shall have exclusive and sole jurisdiction to resolve the dispute. This section is not intended to govern or apply to allegations of a violation of state or federal law, except as might otherwise relate to Yapstone's compliance with this Settlement Agreement.

93.  Integration.  This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated, written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

94.  No Conflict Intended.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

95.  Governing Law.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of California, without regard to the principles thereof regarding choice of law.

96.  Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts.  Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

97.  Jurisdiction.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

98.  Notices.  All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

Tina Wolfson
Robert Ahdoot
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069

All notices to Yapstone provided for herein shall be sent by overnight mail to:

Mark C. Mao
Sheila M. Pham
**TROUTMAN SANDERS LLP**
580 California Street, Suite 1100
San Francisco, California 94104

Ronald I. Raether, Jr.
**TROUTMAN SANDERS LLP**
5 Park Plaza, Suite 1400
Irvine, California 92614-2545

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

99. <u>Authority</u>. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

100. <u>No Construction Against Drafter</u>. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

101. <u>Headings</u>. The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this document.

102. Any exhibits to this Stipulation of Settlement are hereby incorporated and made a part of this Stipulation of Settlement.

103. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

104. All reference to "days" in this Stipulation of Settlement shall refer to calendar days, unless otherwise specified, provided that if a deadline provided for in the Stipulation of Settlement falls on a weekend or holiday, that deadline shall be the next day that is not a weekend or holiday.

105. The Parties believe that this Stipulation of Settlement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length negotiations, taking into account all relevant factors, present and potential.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Settlement Agreement and Release as of the date set forth below.

**PLAINTIFFS**

Dated: 1/19/17

Jonathan Koles
Plaintiff

Dated: _____

Christopher Bonnema
Plaintiff

Dated: _____

Daniel Adams
Plaintiff

Dated: _____

James Mitchell
Plaintiff

Dated: _____

Robert McGuire
Plaintiff

105.   The Parties believe that this Stipulation of Settlement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length negotiations, taking into account all relevant factors, present and potential.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Settlement Agreement and Release as of the date set forth below.

## PLAINTIFFS

Dated: _____      _____
                             Jonathan Koles
                             Plaintiff


Dated: _____      _____
                             Christopher Bonnema
                             Plaintiff


                             *Daniel S. Adams*
Dated: Jan 12, 2017          Daniel S. Adams (Jan 12, 2017)
                             _____
                             Daniel Adams
                             Plaintiff


Dated: _____      _____
                             James Mitchell
                             Plaintiff


Dated: _____      _____
                             Robert McGuire
                             Plaintiff

1  105.  The Parties believe that this Stipulation of Settlement is a fair, adequate, and

2  reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length

3  negotiations, taking into account all relevant factors, present and potential.

4  IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and

5  intending to be legally bound hereby, have duly executed this Settlement Agreement and Release as

6  of the date set forth below.

**PLAINTIFFS**

Dated: _____     _____
                           Jonathan Koles
                           Plaintiff

Dated: _____     _____
                           Christopher Bonnema
                           Plaintiff

Dated: _____     _____
                           Daniel Adams
                           Plaintiff

Dated: Jan 12, 2017        *James Mitchell*
                           James Mitchell (Jan 12, 2017)
                           _____
                           James Mitchell
                           Plaintiff

Dated: _____     _____
                           Robert McGuire
                           Plaintiff

105. The Parties believe that this Stipulation of Settlement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length negotiations, taking into account all relevant factors, present and potential.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Settlement Agreement and Release as of the date set forth below.

**PLAINTIFFS**

Dated: _____

_____
Jonathan Koles
Plaintiff

Dated: _____

_____
Christopher Bonnema
Plaintiff

Dated: _____

_____
Daniel Adams
Plaintiff

Dated: _____

_____
James Mitchell
Plaintiff

Dated: Jan 14, 2017

*Robert McGuire*
Robert McGuire (Jan 14, 2017)
_____
Robert McGuire
Plaintiff

STIPULATION OF SETTLEMENT (CASE NO. 4:15-cv-04429-JSW)

**DEFENDANT**

Dated: 1/12/17

_____

Yapstone Holdings, Inc., formerly known as Yapstone,
Inc.
By: DAVID E. DURANT
Its: SECRETARY & GENERAL COUNSEL

**CLASS COUNSEL**

Dated: _____

_____
By: Robert Ahdoot
**AHDOOT & WOLFSON, PC**
Attorneys for Plaintiffs and the Class

**PLAINTIFFS' COUNSEL**

Dated: _____

_____
By: Michael A. Galpern
**LOCKS LAW FIRM, LLC**
Attorneys for Plaintiffs and the Class

Dated: _____

_____
By: Shannon L. Hopkins
**LEVI & KORSINSKY LLP**
Attorneys for Plaintiffs and the Class

**DEFENSE COUNSEL**

Dated: _____

_____
By: Mark C. Mao
**TROUTMAN SANDERS LLP**
Attorneys for Defendant Yapstone, Inc.

**DEFENDANT**

Dated: _____

_____
Yapstone Holdings, Inc., formerly known as Yapstone, Inc.
By:
Its:

**CLASS COUNSEL**

Dated: 1-20-17

_____
By: Robert Ahdoot
**AHDOOT & WOLFSON, PC**
Attorneys for Plaintiffs and the Class

**PLAINTIFFS' COUNSEL**

Dated: _____

_____
By: Michael A. Galpern
**LOCKS LAW FIRM, LLC**
Attorneys for Plaintiffs and the Class

Dated: _____

_____
By: Shannon L. Hopkins
**LEVI & KORSINSKY LLP**
Attorneys for Plaintiffs and the Class

**DEFENSE COUNSEL**

Dated: _____

_____
By: Mark C. Mao
**TROUTMAN SANDERS LLP**
Attorneys for Defendant Yapstone, Inc.

**DEFENDANT**

Dated: _____

_____
Yapstone Holdings, Inc., formerly known as Yapstone,
Inc.
By:
Its:


**CLASS COUNSEL**

Dated: _____

_____
By: Robert Ahdoot
**AHDOOT & WOLFSON, PC**
Attorneys for Plaintiffs and the Class


**PLAINTIFFS' COUNSEL**

Dated: 1/19/17

_____
By: Michael A. Galpern
**LOCKS LAW FIRM, LLC**
Attorneys for Plaintiffs and the Class


Dated: _____

_____
By: Shannon L. Hopkins
**LEVI & KORSINSKY LLP**
Attorneys for Plaintiffs and the Class


**DEFENSE COUNSEL**

Dated: _____

_____
By: Mark C. Mao
**TROUTMAN SANDERS LLP**
Attorneys for Defendant Yapstone, Inc.

**DEFENDANT**

Dated: _____

_____
Yapstone Holdings, Inc., formerly known as Yapstone, Inc.
By:
Its:


**CLASS COUNSEL**

Dated: _____

_____
By: Robert Ahdoot
**AHDOOT & WOLFSON, PC**
Attorneys for Plaintiffs and the Class


**PLAINTIFFS' COUNSEL**

Dated: _____

_____
By: Michael A. Galpern
**LOCKS LAW FIRM, LLC**
Attorneys for Plaintiffs and the Class


Dated: _____

_____
By: Shannon L. Hopkins
**LEVI & KORSINSKY LLP**
Attorneys for Plaintiffs and the Class


**DEFENSE COUNSEL**

Dated: 1/12/17

_____
By: Mark C. Mao
**TROUTMAN SANDERS LLP**
Attorneys for Defendant Yapstone, Inc.