Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Robert Ahdoot, SBN 172098
*rahdoot@ahdootwolfson.com*
Theodore W. Maya, SBN 223242
*tmaya@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

*Interim Lead Class Counsel*
[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| *In Re* Yapstone Data Breach | Case No. 4:15-cv-04429-JSW<br><br>The Honorable Jeffrey S. White<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   March 10, 2017<br>Time:   9:00 A.M.<br>Place:  Courtroom 5, 2nd Floor<br>           1301 Clay Street, Oakland CA 94612<br><br>[Proposed Preliminary Approval Order, Stipulation of Settlement, and Declarations of Tina Wolfson, Robert Siciliano, Paul Bland, and Betsy Cooper filed concurrently herewith] |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 10, 2017 at 9:00 A.M., in Courtroom 5 of the above-captioned Court, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, Plaintiffs Jonathan Koles, Christopher Bonnema, Daniel Adams, James Mitchell and Robert McGuire (collectively, "Plaintiffs") will and hereby do move for an Order Granting Preliminary Approval of Class Action Settlement, pursuant to the Stipulation of Settlement filed concurrently herewith.

More specifically, Plaintiffs move for an Order: (1) granting preliminary approval of the proposed Settlement; (2) certifying a Class for settlement purposes; (3) approving the Parties' proposed Notice Program and forms of Notice; (4) directing that Notice of the proposed Settlement be disseminated to the Class; (5) approving the procedures for Class Members to exclude themselves from the Settlement or object to the Settlement; (6) appointing Jonathan Koles, Christopher Bonnema, Daniel Adams, James Mitchell and Robert McGuire as Class Representatives for the Class; (7) appointing Tina Wolfson and Robert Ahdoot of Ahdoot & Wolfson, PC as Class Counsel; (8) appointing Kurtzman Carson Consultants, LLC ("KCC") as the Settlement Administrator specified in the Settlement; and (9) setting the following schedule on further proceedings to determine whether the proposed Settlement is fair, reasonable and adequate and whether an order awarding attorneys' fees, reimbursement of expenses and costs, and service awards should be approved:

| Event | Date |
|---|---|
| Initial Date For Publishing Notice ("Notice Date") | 10 days after entry of preliminary approval order |
| Deadline For Completing Notice Program ("Notice Deadline") | 30 days after Notice Date |
| Deadline For Plaintiffs' Counsel To File Motion for Final Approval of Class Action Settlement and Motion For Award Of Attorneys' Fees And Service Awards | 14 days before Objection Deadline |
| Deadline For Class Members To Submit Objections To The Proposed Settlement Or Requests For Exclusion | 45 days after Notice Deadline |

| Event | Date |
|---|---|
| Deadline To Submit Claim Forms ("Claims Deadline") | 180 days after Notice Deadline |
| Final Approval Hearing | No earlier than 90 days after the CAFA notices are mailed in compliance with 28 U.S.C. § 1715 |

This motion is made pursuant to Fed. R. Civ. P. 23 and is based upon: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Stipulation of Settlement; the declaration of Tina Wolfson (Plaintiffs' proposed Class Counsel); the declaration of Paul Bland, on behalf of one of the proposed *cy pres* recipients, Public Justice; the declaration of Betsy Cooper, on behalf of the other proposed *cy pres* recipient, the UC Berkeley School of Information, Center for Long-Term Cybersecurity ("CLTC"); the declaration of Robert Siciliano (Plaintiffs' expert), and such evidence and argument as the Court may consider at the hearing on this motion.

Dated: January 20, 2017     Respectfully Submitted,

**AHDOOT & WOLFSON, PC**

By: ___*/s/ Tina Wolfson*_____
Tina Wolfson
*twolfson@ahdootwolfson.com*
Robert Ahdoot
*rahdoot@ahdootwolfson.com*
Theodore W. Maya
*tmaya@ahdootwolfson.com*
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

*Interim Class Counsel and Counsel for Plaintiffs*

**LOCKS LAW FIRM, LLC**
Michael A. Galpern (*pro hac vice*)
*mgalpern@lockslaw.com*
Andrew P. Bell (*pro hac vice*)
*abell@lockslaw.com*
James A. Barry (*pro hac vice*)
*jbarry@lockslaw.com*

801 North Kings Highway
Cherry Hill, New Jersey 08034
Telephone: (856) 663-8200; Facsimile: (856) 661-8400

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins (*pro hac vice*)
*shopkins@zlk.com*
Shane Rowley (*pro hac vice*)
*srowley@zlk.com*
Nancy A. Kulesa (*pro hac vice*)
*nkulesa@zlk.com*
Andrea Clisura (*pro hac vice*)
*aclisura@zlk.com*
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500; Facsimile: (866) 367-6510

*Plaintiffs Executive Committee and Counsel for Plaintiffs*

## ATTORNEY ATTESTATION

Pursuant to Civil Local Rule 5-1(i), I, Tina Wolfson, hereby attest that concurrence in the filing of this document has been obtained from the other signatories on this document.

DATED: January 20, 2017

By:  _/s/ Tina Wolfson_____
Tina Wolfson

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................v

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................1

II. STATEMENT OF ISSUES TO BE DECIDED .............................................................1

III. SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT ...............1

IV. THE PROPOSED SETTLEMENT ................................................................................4

V. CLASS ACTION TREATMENT IS APPROPRIATE ..................................................6

VI. THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL ............10

VII. THE PROPOSED FORM AND METHOD OF NOTICE IS THE BEST NOTICE
PRACTICABLE AND SHOULD BE APPROVED .......................................................21

VIII. THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL ..................21

IX. CONCLUSION .............................................................................................................21

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (NO. 4:15-CV-04429-JSW)

<u>CASES</u>

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,

   133 S. Ct. 1184 (2013) ------------------------------------------------------------------------------- 8

*Bellinghausen v. Tractor Supply Co.*,

   306 F.R.D. 245 (N.D. Cal. 2015) --------------------------------------------------------------------20

*Chun–Hoon v. McKee Foods Corp.*,

   716 F. Supp. 2d 848 (N.D. Cal. 2010) -------------------------------------------------------- 11, 16

*Churchill Village, LLC v. Gen. Elec.*,

   361 F.3d 566 (9th Cir. 2004) ------------------------------------------------------------------------15

*Custom LED, LLC v. eBay, Inc*,

   No. 12-CV-00350-JST, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013)--------------------------- 15, 20

*Garner v. State Farm Mut. Auto. Ins. Co.*,

   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) -------------------------------------------------15, 16, 20

*Glass v. UBS Fin. Servs., Inc.*,

   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)------------------------------------18

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998) -----------------------------------------------------------------7, 8, 15

*In re Ferrero Litig.*,

   583 F. App'x 665 (9th Cir. 2014)------------------------------------------------------------------11

*In re Heritage Bond Litig.*,

   No. 02–ML–1475–DT, 2005 WL 1594389 (C.D. Cal. June 10, 2005)-------------------------------20

*In re LDK Solar Secs. Litig.*,

   No. 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168 (N.D. Cal. July 29, 2010)-----------------------20

*In re Lorazepam & Clorazepate Antitrust Litig.*,

   205 F.R.D. 369 (D.D.C. 2002)-----------------------------------------------------------------------11

*In re Omnivision*,

559 F. Supp. 2d 1036 (N.D. Cal. 2008)-------------------------------------------------- 17, 20

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,

  962 F. Supp. 450 (D.N.J. 1997)----------------------------------------------------------------10

*In re Tableware Antitrust Litig.*,

  484 F. Supp. 2d 1078 (N.D. Cal. 2007)--------------------------------------------------- 1, 10, 15

*In re Tobacco II Cases*,

  46 Cal. 4th 298 (2009) ----------------------------------------------------------------------9, 12

*In re TracFone Unlimited Serv. Plan Litig.*,

  No. C-13-3440 EMC, 2015 WL 4051882 (N.D. Cal. July 2, 2015) --------------------------11

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,

  No. MDL C-07-1841 EMC, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ----------------------------16

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,

  No. M 07-1827 SI, 2012 WL 12369590 (N.D. Cal. Oct. 15, 2012)------------------------------ 10, 15

*Keirsey v. eBay, Inc.*,

  No. 12-CV-01200-JST, 2013 WL 5755047 (N.D. Cal. Oct. 23, 2013)------------------------------- 6

*Larsen v. Trader Joe's Co.*,

  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) -------------------------------20

*Linney v. Cellular Alaska Partnership*,

  151 F.3d 1234 (9th Cir. 1998) ----------------------------------------------------------------10

*Mullane v. Central Hanover Trust*,

  339 U.S. 306 (1950) -------------------------------------------------------------------------21

*Negrete v. Allianz Life Ins. Co. of N. Am.*,

  238 F.R.D. 482 (C.D. Cal. 2006) --------------------------------------------------------------10

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,

  688 F.2d 615 (9th Cir. 1982) -----------------------------------------------------------------15

*Rodriguez v. W. Publ'g Corp.*,

  563 F.3d 948 (9th Cir. 2009) ----------------------------------------------------- 10, 15, 16, 17

*Satchell v. Fed. Express Corp.*,

No. C 03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) --------------------------------------------11

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-*
*CIO v. ConocoPhillips Co.*,
593 F.3d 802 (9th Cir. 2010) ------------------------------------------------------------------------- 7

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) --------------------------------------------------------------------------10

*Villegas v. J.P. Morgan Chase & Co.*,
No. CV 09–00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) --------------------------14

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ------------------------------------------------------------------------------- 7

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) -------------------------------------------------------------------------- 9

*Yokoyama v. Midland Nat. Life Ins. Co.*,
594 F.3d 1087 (9th Cir. 2010) ------------------------------------------------------------------------ 9

STATUTES

28 U.S.C. § 1715-------------------------------------------------------------------------------------------- 5

OTHER AUTHORITIES

Manual for Complex Litigation (2d ed. 1985) ------------------------------------------------------------10

RULES

Fed. R. Civ. P. 23 --------------------------------------------------------------------------------7, 8, 9, 21

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs and Defendant, Yapstone,[1] have reached a settlement that, if approved, will resolve claims arising out of Defendant's alleged failure to secure and safeguard the personally identifiable information ("PII") of Plaintiffs and the Class. The concurrently filed Stipulation of Settlement ("Settlement" or "Stip."), requires Defendant to provide certain Class Members (referred to as Redemption Claimants) twelve (12) months of ProtectMyID® Services valued at approximately $4,853,202.90 in the first year alone. (Stip. ¶ 43(a); Declaration of Robert Siciliano, filed concurrently herewith ("Siciliano Decl.") ¶ 19.)) Defendant will also establish a non-reversionary cash Settlement Fund in the amount of $120,000, and distribute that Fund, equally, to the following non-profit organizations: Public Justice and the UC Berkeley School of Information, Center for Long-Term Cybersecurity. (Stip. ¶ 43(b).) The Settlement also provides significant injunctive relief to Class Members by requiring Yapstone to implement substantial data security measures. (*Id.* ¶ 43(f)(i-x).)

The Settlement is the product of extensive and complex arms-length negotiations between experienced and informed counsel, including mediation with the Honorable Richard Kramer (Ret.). It is fair, reasonable, and adequate given the claims, the alleged harm, and the Parties' respective litigation risks, and is well within the "range of reasonableness" standard applicable at the preliminary approval stage. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). It also provides the best notice practicable: direct notice to all potential Class Members by E-Mail and U.S. Mail (if necessary). Finally, the Settlement Class meets the requirements of FRCP 23(a) and 23(b)(3) and should be certified for settlement purposes.

## II.    STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided are the following: (1) whether the Settlement Class should be certified for the purposes of settlement only; and (2) whether the proposed Settlement is fair, reasonable, and adequate such that this Court should grant preliminarily approval.

## III.    SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT

### A.    Underlying Fact and The Consolidated Class Action Complaint

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Settlement.

In September of 2015, Yapstone announced it experienced a data incident in which certain personally identifiable information ("PII") of some users may have been exposed via unsecured online unique resource locators ("URLs"), otherwise commonly known as "web addresses," between July 15, 2014 and August 5, 2015 (the "Incident"). (Stip. Recital ¶ B.) Following the Incident, Defendant sent approximately 182,500 Incident Notices to its users. (Stip. Recital ¶ J.) The Parties estimate that the size of the proposed Settlement Class herein is approximately 182,500. The Incident Notice included an offer for Experian's ProtectMyID® Services for a term of twenty-four (24) months that comprised of (i) a free credit report; (ii) surveillance alerts for Daily Bureau Credit Monitoring; (iii) identity theft resolution and ProtectMyID® ExtendCare™; and (iv) one million dollars ($1,000,000.00) in identity theft insurance. Although approximately 182,500 Incident Notices were provided to users, it appears that approximately 36,500 users had provided Yapstone additional PII (their Social Security Number ("SSN"), Passport Number ("PN"), and/or Driver's License Number ("DLN")), and approximately 30,342 of these consumers did not sign up for Experian's ProtectMyID® Service offered in the Incident Notices ("Redemption Claimants"). *See* Declaration of Tina Wolfson, filed concurrently herewith ("Wolfson Decl.") ¶¶ 25-26, 28-30.)

Following a joint motion to consolidate separately filed actions against the Defendant, and the appointment of Ahdoot & Wolfson, PC as Interim Lead Class Counsel and Ahdoot & Wolfson, PC, Locks Law Firm, LLC, and Levi & Korsinsky, LLP to the Plaintiffs' Executive Committee, and the filing of a Motion to Dismiss, on June 7, 2016, Plaintiffs filed a First Amended Consolidated Class Action Complaint ("FACC") (Dkt. 52), which alleged, *inter alia*, that Defendant failed to safeguard the PII, including customer names, e-mail addresses, physical addresses, dates of birth, social security numbers ("SSNs"), and bank account information ("BAI") that it collected and maintained, and that Defendant failed to provide timely and adequate notice of the Incident.[2] (Dkt. 52 ¶ 1.). Yapstone filed a

---

[2] The FACC alleges claims for negligence, breach of implied contract, unjust enrichment, and violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*; the California Data Breach Law, Cal. Civ. Code § 1798.80, *et seq.*; the Nev. Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0915, *et seq.*; the Minn. Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*; the Minn. Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*; the N.J. Data Breach Act, N.J.S.A. 56:8-163, *et seq.*; the Nev. Data Breach Act, N.R.S. 603A.010, *et seq.*; and the Minn. Data Breach Act, Minn. Stat. § 325E.61, *et seq.*

1  second Motion to Dismiss and Motion to Strike the FACC on June 24, 2016. (Dkts. 53 and 54,

2  respectively.) (*See* Wolfson Decl. ¶¶ 3-22 for a detailed Summary of the Litigation.)

3  **B.    Settlement Negotiations**

4  The Parties began discussing possible settlement well over seven months ago, which resulted in a

5  long series of arms-length negotiations, including mediation and numerous post-mediation discussions

6  between counsel and the mediator: the Honorable Richard Kramer (Ret.) of JAMS. Prior to any

7  substantive negotiation, Plaintiffs requested substantial information from Defendant, and, to ensure that

8  this information could be provided, the Parties filed a Notice of Settlement and Stipulation For Order

9  Continuing Deadlines In Light Of Proposed Settlement on July 15, 2016 (Dkt. 57). After reaching a

10  settlement in principle, the Parties began memorializing the full Settlement, which involved further

11  extensive negotiations regarding each aspect of the Settlement. (Wolfson Decl. ¶¶ 13-19.)

12  **C.    Plaintiffs' Counsel's Investigation**

13  Before initiating these Actions, Plaintiffs' Counsel investigated the underlying facts and

14  analyzed the veracity of the claims. Plaintiffs' Counsel also conducted discovery concerning the size

15  and membership of the Settlement Class, as well as the nature and scope of the Incident, and the nature

16  and scope of Yapstone's response to the Incident. Furthermore, Plaintiffs Counsel researched and

17  analyzed the merits of the potential causes of action, and defenses, under state statutory and common

18  law. Plaintiffs' Counsel continued these efforts after filing the Consumer Actions and before entering

19  into the Settlement, and conducted a thorough examination, investigation, and evaluation of the relevant

20  law and facts to assess the merits of the claims and defenses. (*Id.* ¶¶ 21.)

21  Plaintiffs obtained information regarding their allegations and Defendant's anticipated defenses,

22  the size of the putative Class, and records that showed the type of PII that may have been exposed.

23  Plaintiffs' Counsel thoroughly analyzed and evaluated all information provided, including documents

24  bearing on Defendant's cyber security practices, the report of the forensics investigations company that

25  Defendant hired to review its system logs after the Incident, and confirmatory discovery from Defendant

26  that stated stating the manner and scope of the Incident. Plaintiffs also hired and consulted with experts,

27  interviewed putative class members, and conducted extensive factual and legal research regarding the

28  sufficiency of the claims and the appropriateness of class certification. (*Id.*)

## IV. THE PROPOSED SETTLEMENT

### A. The Class to Be Certified for Settlement Purposes

Plaintiffs seek certification of the following Class for settlement purposes:

> All persons and entities who were sent an Incident Notice. Excluded from the Settlement Class is any judge presiding over this matter and any members of their first degree relatives, judicial staff, the officers and directors of Yapstone, and persons who timely and validly request exclusion from the Settlement Class. Incident Notice means Yapstone's written notification to individuals allegedly affected by the Incident sent during the Incident Notification Period. Incident Notification Period means the time during which Yapstone sent the Incident Notices.

(Stip. Recital ¶ E and ¶¶ 13, 33.) The proposed Settlement Class (approximately 182,500 individuals (Stip. Recital ¶ J)) provides greater relief than the class alleged in the FACC. [3] (*See, e.g.,* Dkt. No. 52 ¶ 33.)

### B. Consideration: Experian's ProtectMyID® Services, Monteary Payment, and Injunctive Relief

*First*, the approximately 30,342 Redemption Claimants, who had certain additional PII at issue, and who did not previously enroll in Experian's ProtectMyID® will be provided another opportunity to enroll in Experian's ProtectMyID® Service for a term of twelve (12) months. The ProtectMyID® Service shall be identical to the service offered in the Incident Notices (*i.e.* (i) a free copy of the Redemption Claimant's Experian credit report; (ii) surveillance alerts for Daily Bureau Credit Monitoring; (iii) identity theft resolution and ProtectMyID® ExtendCare™;[4] and (iv) one million dollars ($1,000,000.00) in identity theft insurance). (Stip. ¶¶ 39, 43(a).) Plaintiffs' expert, Robert Siciliano, estimates that the ProtectMyID® Service to the Redemption Claimants provides $4,853,202.90 potential value to the Redemption Claimants in the first year, and $4,399,590 annually thereafter. (Siciliano Decl. ¶ 19.)

*Second*, Defendant will pay each of the following:

    (a)    $120,000 in cash to create the Settlement Fund to be distributed equally to non-profit

---

[3]    The proposed Class includes individuals whose PII *may have* been exposed whereas the class alleged in the FACC required proof of *actual* disclosure to receive benefits under the Settlement.

[4]    ExtendCARE™ continues the availability of the ProtectMyID® identity theft resolution service in perpetuity for claimants beyond the one-year membership.

organizations Public Justice and the UC Berkeley School of Information, Center for Long-Term Cybersecurity (Stip. ¶ 43(b));

    (b)    All Settlement Administration Charges (estimated to be $69,651) (*See* Stip. Ex. H, Declaration of Carla Peak ("Peak Decl.") ¶ 19);

    (c)    Any Court-approved Service Awards to Representative Plaintiffs (not to exceed $2,000 to each Representative Plaintiff) (Stip. ¶ 72); and

    (d)    Any Court-approved Attorneys' Fees, Costs, and Expenses (not to exceed $300,000) (Stip. ¶ 73).

*Third*, as injunctive relief Yapstone has agreed to the implementation of substantial and wide-ranging data security measures. These measures are detailed in paragraph 43 of the Stipulation of Settlement. (Stip. ¶ 43(f)(i-x).) The Settlement thus addresses substantially all of the objectionable conduct alleged in the FACC, despite Defendant's denial of liability.

**C.    Dissemination of Notice to the Class**

Settlement Class Members will directly receive a Summary Notice (Stip. Ex. G, which includes two versions of the Summary Notice, one for Redemption Claimants and another for Settlement Class Members) to the e-mail addresses associated with their Yapstone accounts. (Stip. ¶ 55(a).) In the event any Settlement Class Member e-mails are invalid, the Summary Notice will be mailed to their physical addresses *via* U.S. Mail. (Stip. ¶ 55(b).) Yapstone is in possession of the names, e-mail addresses, and physical mailing addresses of all Settlement Class Members. (Stip. Recital ¶ K.) The Long Form Notice (Stip. Ex. E) will be made available at www.yapstonesettlement.com. Prior to the Notice Date, the Settlement Administrator will establish a toll-free telephone number, through which Settlement Class Members may request a mailed copy of the Long Form Notice and, if a Redemption Claimant, the Claim Form. (Stip. ¶ 54.) Each version of the Summary Notice will refer Class Members to the Settlement website, which will make available the Long Form Notice and case relevant documents. (Stip. ¶ 52 & Ex. G.) Finally, Defendant will comply with the requirements of 28 U.S.C. § 1715 ("CAFA"). (Stip. ¶ 45.)

**D.    Service Awards to Class Representatives & Attorneys Fees and Expenses**

The Settlement allows each Representative Plaintiff to apply for a Service Award of up to $2,000 no later than 14-days prior to the objection and Opt-Out Deadline, to be paid separate, apart, and in

addition to the Settlement Fund.  (Stip. ¶ 72.)  The application for, or any individual's entitlement to, a Service Award is not conditioned on that individual's support for the Settlement.  (*Id.*)

Class Counsel will apply for attorneys' fees, costs, and expenses of up to $300,000, to be paid separate, apart, and in addition to the Settlement Fund.  (Stip. ¶ 73.)  Class Counsel will apply for the award of fees, costs, and expenses no later than 14-days prior to the objection and exclusion deadline. The amount of potential attorneys' fees, costs, and expenses that will be requested is stated on the relevant notice forms.  (Stip. Exs. E, G.)

### E. Release Provisions

If the Court grants final approval of the proposed Settlement, Settlement Class Members will be deemed to have released Defendant of all claims, known or unknown, that were asserted or could have been asserted in the litigation. (*Id.* ¶¶ 25, 66-71.)  The Released Claims are tied to the allegations in the Consumer Action, which are the claims alleged in the FACC.  (*Id.*)

### F. Opt-Out Procedure and Opportunity to Object

Any Settlement Class Member may opt-out of the Settlement Class by sending a written request to the Settlement Administrator, via U.S. Mail, to the address provided in the Long Form Notice.  (Stip. ¶ 58 & Ex. E.)  Such requests must be postmarked on or before the Opt-Out Deadline.  (*Id*.)  Valid requests must include information described in the Notice, including a statement that the person sending the request wishes to be excluded from the Class.  (*Id*.)

Any Settlement Class Member who does not request to be excluded may object to the Settlement and/or the applications for Service Awards or attorneys' fees, costs, and expenses.  (Stip. ¶¶ 53(c), 56.) An objection must be (i) mailed to the Class Action Clerk or filed with the Court, (ii) in writing, (iii) personally signed by the objector, (iv) include the information prescribed by the Long Form Notice, and (v) filed or postmarked on or before the Objection Deadline.  (Stip. ¶ 56 & Ex. E.)

## V. CLASS ACTION TREATMENT IS APPROPRIATE

The Court may and should certify the Class for settlement purposes because Rule 23(a) and 23(b)(3) are satisfied.  *See e.g.  Keirsey v. eBay, Inc*., No. 12-CV-01200-JST, 2013 WL 5755047, at *2 (N.D. Cal. Oct. 23, 2013) (the Court may certify a class for settlement purposes).

### A. This Action Satisfies the Requirements of Rule 23(a)

"The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

_The Class Is Numerous_:  The Settlement Class includes approximately 182,500 members (Stip. Recital ¶ K), easily satisfying the numerosity requirement of Rule 23(a)(1).

_The Action Presents Common Questions_:  Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."[5]  This requirement is also satisfied.  Common questions include: whether Defendant unlawfully used, maintained, lost or disclosed Plaintiffs' and Settlement Class Members' personal and/or financial information; whether Defendant unreasonably delayed in notifying affected consumers of the Incident; and whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information potentially exposed in the Incident.

_Plaintiffs' Claims Are Typical_:  Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" also is satisfied because Plaintiffs' claims are "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The Plaintiffs' claims stem from the same common course of conduct as the claims of the Settlement Class.  The alleged injuries suffered by Plaintiffs are the same as those of the Settlement Class and allegedly result from the data Incident experienced by Defendant.  Typicality is therefore satisfied.  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (internal quotation omitted).

_The Interests of the Class Are Adequately Protected_: Rule 23(a)(4) requires that the

---

[5]    *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id. at* 2551.  Class members' claims "must depend on a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

representative parties will fairly and adequately protect the interests of the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. There are no conflicts of interest here. Plaintiffs seek the same remedy as all Settlement Class Members: relief to address claims arising from Defendant's data Incident in which certain PII of Class Members may have been exposed. Plaintiffs' interests are perfectly aligned with the interests of the Settlement Class.

Further, proposed Class Counsel have extensive experience litigating and settling class actions, including false advertising, breach of contract, and unlawful business practices claims on behalf of consumers. They have demonstrated expertise in handling all aspects of complex litigation and class actions, and are well qualified to represent the Class. (Wolfson Decl. ¶ 2 & Ex. A attached thereto.) Plaintiffs and proposed Class Counsel remain fully committed to advancing the interests of, and obtaining relief for, the Settlement Class Members, as evidenced by the terms of the Settlement.

## B. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Rule 23(b)(3) is satisfied because: (i) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (ii) the class action mechanism is superior to any other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

*Common Questions of Law and Fact Predominate*: Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (emphasis in original). Plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). The claims in this case are based upon uniform conduct regarding a single data Incident affecting Defendant where the PII of the Settlement Class Members was potentially exposed at the same time, and for the same amount of time. There are no predominating individual issues because, under

Plaintiffs' legal theory alleging violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), the objective reasonable consumer standard applies to determining liability. *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089, 1092-93 (9th Cir. 2010) (predominance requirement met where state's consumer protection statute is based upon the objective reasonable consumer standard); *Williams v. Gerber Products Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (reasonable consumer standard applies to California's consumer protection statutes); *In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009) (no showing of injury or reliance by absent class members required). Furthermore, for Plaintiffs' legal theories based on common law and/or state data breach laws, the determination of liability rests on inquiries that are common to all Settlement Class Members, including whether Defendant's cyber security procedures were adequate and whether Defendant's notice program was timely and adequate. *See also In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015) (finding predominance exists because whether defendant failed to protect its users' PII is a common question that can be resolved for all members of the proposed class in a single adjudication, and is a central focus of the class action).

   *A Class Action Is Superior*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider: "(A) [T]he interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

   Each of these factors supports certifying the Settlement Class for settlement purposes. First, there is little interest or incentive for Settlement Class Members to individually control the prosecution of separate actions. The Settlement Class Members' individual claims are too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually. Although Plaintiffs claim that the injury resulting from Defendant's alleged failure to secure and safeguard the PII of the Settlement Class are real, the cost of individually litigating such a case against Defendant would easily exceed the value of any relief that could be obtained by any one consumer. This fact strongly

warrants a finding that a class action is a superior method of adjudication.

Second, certification would be superior because concentrating this litigation in one forum would not only prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote greater efficiency." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006). This "factor emphasizes the desirability of the forum selected, not the desirability of claims concentration generally." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 524 (D.N.J. 1997). The Northern District is a compelling forum because Defendant is headquartered in Walnut Creek.

*Plaintiffs' Counsel Should Be Appointed Class Counsel Under Rule 23(g)*: Rule 23(g)(1) states that "a court that certifies a class must appoint class counsel." As discussed above, Plaintiffs' counsel are well-qualified and should be appointed class counsel.

## VI. THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) requires that any settlement of claims brought on a class basis be approved by the Court. There is an "overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), *vacated on other grounds* 688 F.3d 645. Settlements of complex class actions prior to trial are strongly favored. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998).

To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness." *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 12369590, at *3 (N.D. Cal. Oct. 15, 2012). A settlement falls within the range of reasonableness if: "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . .." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (quoting Manual for Complex Litigation § 30.44 (2d ed. 1985)). Each of these four factors weighs in favor of preliminary approval.

### A. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

A proposed settlement is presumed to be fair and reasonable when it is the result of arms-length

negotiations. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (internal quotation omitted).

The Settlement is the result of over seven months of arms-length negotiations, including mediation with Judge Richard Kramer (Ret.), and numerous telephone conferences with the mediator and directly between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and defenses. The negotiations were mediated and facilitated by a retired judge with substantial judicial and mediation experience in class actions. Moreover, the settlement was reached only after Plaintiffs' counsel analyzed materials provided by Yapstone and performed other independent investigation. (Wolfson Decl. ¶ 22.) Given these facts, the Settlement is shown to be non-collusive. *See Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("[A]rms-length negotiations, including a day-long mediation before [an experienced private mediator], indicate[s] that the settlement was reached in a procedurally sound manner"); *see also Satchell v. Fed. Express Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). In addition, the proposed Settlement does not contain any of the three "warning signs" of collusion delineated by the Ninth Circuit: class counsel receiving a disproportionate portion of the settlement, "clear sailing" arrangements, or reversions of funds to Defendant. *Compare In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011); *with* Stip. ¶ 43(b) ($120,000 non-reversionary cash payment), ¶ 73 (cap on attorneys' fees).

**B.    The Settlement Presents No Deficiencies**

The Settlement's injunctive relief (discussed in Section IV.B, *supra*) alone would justify preliminary approval of this Settlement. *See, e.g.*, *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) (affirming settlement approval where "injunctive relief . . . [was] meaningful and consistent with the relief requested in plaintiffs' complaint"); *In re TracFone Unlimited Serv. Plan Litig.*, No. C-13-3440 EMC, 2015 WL 4051882, at *8 (N.D. Cal. July 2, 2015) (approving settlement where "the injunctive relief [would] have significant value for both class members and the general public"). For

example, the data security measures that the Settlement requires Defendant to implement will materially benefit the Settlement Class Members, and possibly current and future consumers as well, who used or will use products serviced by Yapstone's payment service. Moreover, Plaintiffs seek relief under the UCL, and "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction." *In re Tobacco II Cases*, 46 Cal. 4th at 319.

In addition to the injunctive relief, the twelve-months of free ProtectMyID® Services to consumers whose PII was potentially at risk but that did not previously enroll in Yapstone's Monitoring Offer ("Redemption Claimants") and the $120,000 Settlement Fund amounts to an excellent result. Experian's ProtectMyID® Services start at $15.99 per month, and the annual price is $159.95. (Siciliano Decl. ¶ 7.) Furthermore, the price Experian charges a consumer for a credit report is $14.95. (*Id*. ¶ 9.) Therefore, Plaintiffs' expert estimates a per-person retail value of the identity theft resolution component of this Settlement at $145 annually per Redemption Claimant, which is the $159.95 annual retail cost of ProtectMyID® less the $14.95 cost of an Experian credit report. (*Id*. ¶ 15.) Therefore, Plaintiffs' expert estimates the total retail value this Settlement makes available to the Redemption Claimants in the first year, where a free credit report is included, is approximately $4,853,202.90. (*Id*. ¶ 19.)

Because ExtendCARE™ is being provided with ProtectMyID®, Settlement Class Members will receive fraud resolution support even after ProtectMyID® expires. (Stip. ¶ 39; Siciliano Decl. ¶ 16.) Plaintiffs' expert estimates that a total retail value of $4,399,590 is available to the Redemption Claimants annually after the first year. (Siciliano Decl. ¶ 19.) Settlement Class Members who took advantage of Yapstone's Monitoring Offer have already received ProtectMyID® with ExtendCare™. Therefore, they have already received the same benefit which the Redemption Claimants, who did not take advantage of the Monitoring Offer, can now claim in this Settlement. Even if only fifteen percent of Redemption Claimants make a claim in this Settlement the total value to the Redemption Claimants would be approximately $727,980.44 in the first year, and approximately $659,938.50 annually thereafter for the lives of the Redemption Claimants.

This real, pecuniary consideration on behalf of approximately 30,342 Redemption Claimants is substantial in relation to the relatively small amount of injury, and in some cases nominal amounts, alleged by Plaintiffs on behalf of Settlement Class Members. (Wolfson Decl. ¶¶ 37-39.) Some

Settlement Class Members whose PII may have been exposed during the Incident claim they have experienced fraud since, while others have had no fraud. For those who have not experienced fraud, their alleged injury can be said to be only nominal, accounting for the invasion of their privacy. (*Id.*) Furthermore, Defendant contends that according to a report of the forensics analyst it hired in the wake of the data Incident, there is no evidence of unauthorized extraction of PII. (Id. ¶ 7.) This contention, if true, may limit Plaintiffs' ability to prevail on the merits if the case proceeded to litigation. Consequently, as set forth in more detail in Section VI.D.2, *infra*, the value of the Settlement Consideration is significant compared to the maximum potential recovery that might be achieved through continued litigation.

Class Counsel was also able to secure additional consideration in the amount of $120,000, which Yapstone will pay on behalf of the Settlement Class, directly and equally to the non-profit organizations Public Justice ("PJ"), a non-profit organization with a mission to "combat social and economic injustice, protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses", and the UC Berkeley School of Information, Center for Long-Term Cybersecurity ("CTLC"), a non-profit "research and collaboration hub dedicated to building secure digital futures." (Wolfson Decl. ¶ 35; Declaration of Paul Bland (Executive Director of PJ), filed concurrently herewith ("Bland Decl.") ¶ 9; Declaration of Betsy Cooper (Executive Director of CLTC), filed concurrently herewith ("Cooper Decl.") ¶ 4.) *See Dennis v. Kellogg*, 697 F.3d 858, 865 (9th Cir. 2012) (the use of *cy pres* in federal class action settlements is common "where the proof of individual claims would be burdensome or distribution of damages costly.") Both of these non-profit organizations fulfill the requirements of *Kellogg*, namely that there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Kellogg*, 697 F.3d at 865 (citing *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). That is, "[a] *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members,' ..., and must not benefit a group 'too remote from the plaintiff class,' ..." *Kellogg*, 697 F.3d at 865 (citations omitted).

PJ and CLTC will use any *cy pres* award in this case to further the underlying goals of the Consumer Action, directly and indirectly benefiting the Settlement Class Members and similarly situated

persons. (*See generally* Bland Decl.[6]; Cooper Decl.[7].)

In summary, given its substantial monetary and non-monetary components, the Settlement is an excellent result and presents no deficiencies.

### C. The Settlement Provides for a Fair Allocation of Relief to All Class Members

Under this factor, "the Court examines whether the Settlement provides preferential treatment to any class member." *Villegas v. J.P. Morgan Chase & Co*., No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012). Here, all Settlement Class Members receive the injunctive relief benefits and the cash components of the Settlement equally. Redemption Claimants, however, are receiving a benefit not available to other Settlement Class Members, namely another opportunity to enroll in the ProtectMyID® Service. This allocation is fair because out of the Settlement Class of approximately 182,500 individuals, approximately 36,500 individuals had also provided Yapstone with certain additional PII (their SSN, DLN, or PN). The Settlement simply provides the remaining 30,342 Redemption Claimants who did not yet enroll in ProtectMyID® with another opportunity to enroll. Thus, all consumers who had certain additional PII at issue during the Incident would receive, in the end, the same benefit from this aspect of the Settlement.

The consideration to Settlement Class Members does not result in any preferential treatment, as each Redemption Claimant will receive twelve (12) months of free identity monitoring services from Experian's ProtectMyID®. Redemption Claimants will receive the same types of services through ProtectMyID® in which all other Settlement Class Members already had the opportunity to enroll

---

[6]     PJ will use the funds to advance the rights of consumers to be free of privacy injuries and to help enforce consumer protection laws guarding against privacy injuries. (Bland Decl. ¶ 3.) Because of PJ's proven record of success and commitment to ensuring that *cy pres* awards are properly used, numerous courts have directed that Public Justice be awarded *cy pres* funds. (*Id*. ¶ 11.) Furthermore, PJ has presented CLE programs focused on consumer privacy issues. (*Id*. ¶ 14.) PJ also receives and responds to many requests for advice and legal research from consumer attorneys who represent persons who are the victims of privacy injuries, as well as requests for assistance from consumers who are victims of such injuries. (*Id*. ¶ 16.) PJ has advocated for consumers who have been harmed by privacy injuries, including data breaches specifically. (*Id*. ¶ 18.)

[7]     CLTC will use the funds to help advance the rights of consumers to be aware of the risks they face online from cybersecurity threats, and to ensure that consumers have options to mitigate those risks. (Cooper Decl. ¶ 5.) CLTC provides educational activities to support students and the broader public in better understanding cybersecurity. (*Id*. ¶ 21.) The educational talks are free and open to the public. (*Id*. ¶ 22.) Furthermore, CLTC partners with governments, companies, civil society, and the media, to deliver new and innovative ways to address the world's growing cybersecurity challenges. (Id. ¶ 24.)

through Yapstone's Monitoring Offer. (Stip. Recital ¶ E & ¶¶ 39, 43(a).) *See, e.g.*, *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2013 WL 6114379, at *9 (N.D. Cal. Nov. 20, 2013) (finding "universal availability" of the same settlement consideration "ensure[s] that certain segments of the class would not benefit more" than others from the distribution method).

### D. The Settlement Falls Within the Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer," taking into account the risks of continuing litigation. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080; *see also In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 12369590, at *3 (N.D. Cal. Oct. 15, 2012). The Court has discretion to preview the factors that ultimately inform final approval: (1) strength of the plaintiffs' case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and the stage of the proceedings; (6) experience and views of counsel; (7) presence of a governmental participant; and (8) reaction of class members to the proposed settlement. *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The probability of success analysis is not subject to any "particular formula," nor is the Court expected to "reach any ultimate conclusions of the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (quoting *Rodriguez*, 563 F.3d at 965, and *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). "Rather, the Court's assessment of the likelihood of success is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Garner*, 2010 WL 1687832, at *9 (citing *Officers for Justice*, 688 F.2d at 625) (internal quotations omitted). Given the subjective components inherent in evaluating the potential range of recovery, "the Court may presume

that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

Approval of a class settlement is particularly appropriate when plaintiffs must overcome significant barriers to make their case. *Chun–Hoon*, 716 F. Supp. 2d at 851. While Plaintiffs are confident in the strength of their claims, they also recognize that they would have to overcome significant obstacles to succeed.

### a.     Plaintiffs Would have to Overcome Defendant's Motion to Dismiss and Motion to Strike

The first barrier that Plaintiffs would need to overcome is Defendant's attempt to dismiss the FACC for lack of standing and for failure to state a claim upon which relief can be granted. (Dkt. 53.) Moreover, Plaintiffs would also need to overcome Defendant's motion to strike Plaintiffs' class allegations and various other allegations contained in the FACC. (Dkt. 54.) While Plaintiffs are confident that they would ultimately prevail against Defendant's arguments, Plaintiffs also recognize the possibility that the Court or the Ninth Circuit may not share this view. If the FACC were dismissed without leave to amend, the absent class members would receive no relief. It is also possible that the Court could strike Plaintiffs' class allegations, among other allegations, as Defendant requested. This would also leave the absent class members with no relief.

### b.     Fact Intensive Inquiries Are Pervasive

"Ultimately, the merits of many of Plaintiffs' claims depend largely on a fact-intensive inquiry into multiple questions," presenting another factor weighing in favor of settlement approval. *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 EMC, 2011 WL 3352460, at *5 (N.D. Cal. Aug. 2, 2011) (finding the strength of plaintiffs' claim in favor of final approval where plaintiff's claims depended largely on "fact-intensive inquiries into multiple questions.") Plaintiffs' contention that Defendant failed to secure and safeguard their PII (*e.g.*, FACC ¶¶ 1-2, 21-23, 32) involves consideration of many facts surrounding the data Incident, including the manner and the length of time in which the PII was allegedly exposed, the types of PII exposed, and whether any of the PII was improperly accessed or used. Likewise, Plaintiffs' claims regarding Defendant's failure to provide timely and

adequate notice (*e.g.*, FACC ¶¶ 1-2, 48, 80) requires a factual inquiry into Defendant's notification program to the individuals potentially affected by the Incident.

In support of its defenses, Plaintiffs expect that Defendant would present evidence and arguments that: (i) no credit or debit card information or bank PINs were exposed; (ii) the PII that was potentially exposed was not publicly searchable; and (iii) and there was no evidence of any unauthorized PII extraction. Plaintiffs also expect that Defendant would present evidence that the PII of approximately 182,500 users was potentially involved in the Incident, and that Defendant sent notice in writing of the Incident to all of them, with the offer of credit protection services through Experian's ProtectMyID® free of charge. Defendant also argues that Plaintiffs' case should be barred from federal court because they cannot allege that they have suffered an injury-in-fact fairly traceable to the Incident. While Plaintiffs assert that they have sustained real, cognizable injury in the form of lost money due to fraudulent charges and lost time spent addressing issues arising from the Incident, Defendant would argue that there is no evidence connecting those injuries to its own conduct.

### c. Continued Litigation Presents Risks Regarding Liability, Damages, and Certification

In evaluating the Settlement, the Court should consider "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *In re Omnivision*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008). This is particularly true in cases, like this one, which involve significant uncertainty and the potential for years of litigation and costly appeals. *See, e.g.*, *Rodriguez*, 563 F.3d at 966 (favoring settlement where "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years").

If the Settlement is not approved, this action will proceed to litigation and possibly trial and appeal. Plaintiffs and Defendant vehemently disagree about the merits of Plaintiffs' claims. However, regardless of each Party's respective position, there is uncertainty about the ultimate outcome of this action and proceeding with this litigation poses various risks such as no certification, decertification, loss on the merits, and loss on appeal, all of which would be extremely costly and time-consuming to fully litigate.

Defendant will likely contend that the types of PII allegedly at risk in the Incident for each

affected individual varies depending on when the user first applied for direct deposit of payments through Yapstone, and that not all individuals had any unique identifiers potentially exposed. These variables could affect whether a user could have been injured by the Incident. In light of these, and similar, considerations, this Court or the Ninth Circuit might ultimately conclude that individualized questions predominate over any common questions.

### 2. The Settlement's Consideration Is Significant Compared to the Maximum Potential Recovery Available

In addition to Defendant's agreement to implement certain data security measures and pay $120,000, on behalf of the Settlement Class, equally to PJ and to the CLTC, the identity monitoring services provides substantial consideration. "[C]ompar[ing] the settlement amount to the parties' 'estimates of the maximum amount of damages recoverable in a successful litigation'" suggests the Settlement merits approval. *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009).

It is very difficult, if not impossible, to accurately predict what amounts, if any, an ultimate trier of fact would award in damages for the causes of action averred in this Action. Without any discount for the significant risks of continued litigation, including class certification and Defendant's defenses on the merits, Plaintiffs estimate – for the purposes of this Motion – that the maximum potential recovery available if they were successful on all of their claims is approximately $1,095,000 (or $10.00 per Settlement Class Member whose SSN, DLN, and/or PN was potentially exposed and $5.00 per Settlement Class Member whose SSN, DLN, and/or PN was not involved). (Wolfson Decl., ¶¶ 37-39.) This figure comes from the reality that the alleged injuries suffered by Plaintiffs and the Settlement Class were relatively small if not nominal, and that establishing a nexus between said injuries and Defendant's data Incident has the potential to be problematic. Of the consumers who claim they did suffer fraud in the wake of the Incident, many if not most of them have been fully reimbursed for any fraudulent charge by their financial institutions. Therefore, their damages include any out-of-pocket expenses they incurred attempting to remediate the fraud or protect against future identity theft and fraud, and nominal damages for time spent remediating the fraud and for invasion of privacy. For these nominal damages, Class Counsel's best estimate (under the facts of this case) of the Settlement Class's

maximum potential recovery is $5.00 per Member whose SSN, DLN, and/or PN was not involved, and $10.00 per Member whose SSN, DLN, and/or PN was potentially exposed, as those identifiers are highly sensitive and valuable to identity thieves. (*Id.*)

According to informal discovery between the parties, the class of consumers potentially affected by the Incident is approximately 182,500 individuals. (Wolfson Decl. ¶ 29.) These individuals had provided Yapstone with their bank deposit routing numbers and account numbers, name, address, and date of birth. (*Id.*) Of the approximately 182,500 affected consumers, approximately 36,500 also had provided Yapstone with their SSNs, DLN, and/or PN. (*Id.* ¶ 26.) Therefore, if each consumer whose SSN, DLN, and/or PN was potentially exposed received nominal damages of $10.00, the maximum potential recovery for those class members is $365,000. Approximately 6,017 of the consumers whose SSN, DLN, and/or PN was potentially exposed already enrolled in ProtectMyID® Services offered by Yapstone in the Incident Notices. Therefore, approximately 30,342 consumers remain as Redemption Claimants pursuant to this Settlement. The $159.95 first year retail value of the ProtectMyID® Services made available to Redemption Claimants by this Settlement—or $4,853,202.90 in the aggregate—amounts to significantly higher than 100% of the estimated maximum potential recovery for these consumers. Even if a mere five (5) percent of Redemption Claimants enroll in ProtectMyID® under the Settlement, the value of those identity monitoring services to those claimants is an estimated $242,660.15[8] in the first year alone. (*Id.* ¶ 38.)

If each class member whose SSN, DLN, and/or PN was not potentially exposed (approximately 146,000 consumers) was entitled to nominal damages of $5.00, the total maximum potential recovery for all of those class members would equal $730,000. These consumers are Settlement Class Members who, although ineligible for ProtectMyID®, will benefit from the injunctive relief and the $120,000 cash Settlement Fund. Though difficult to quantify the value of the injunctive relief, as discussed above, the benefit is substantial. Considering the Settlement Fund alone, the Settlement Class Members who are not Redemption Claimants will be receiving a benefit that is over 16% of the maximum potential recovery

---

[8] If only 5% of the estimated 30,342 Redemption Claimants now enroll pursuant to this Settlement, at $159.95 per consumer, the total value to those Redemption Claimants is approximately $242,660.15 in the first year.

to these consumers. (*Id.* ¶ 39.)

This amount is fair, especially given the substantial risks that Plaintiffs would face prior to and at trial. Indeed, many courts have approved settlement values well below this range. *See, e.g., Custom LED*, 2014 WL 2916871, at *4 ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable…"); *In re OmniVision Techs.*, 559 F. Supp. 2d at 1042 (6% of potential damages); *In re LDK Solar Secs. Litig.*, No. 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168 at *7 (N.D. Cal. July 29, 2010) (5% of potential damages); *In re Heritage Bond Litig.*, No. 02–ML–1475–DT, 2005 WL 1594389, at *8–9 (C.D. Cal. June 10, 2005) (median amount recovered in securities class action settlements was 2.7% in 2002, 2.8% in 2003, 2.3% in 2004). The monetary component of the Settlement is significant compared to the maximum potential recovery available, suggesting the Settlement merits approval.

### 3. Class Counsel Performed Sufficient Research and Analysis to Adequately Assess the Settlement and the Strengths and Weaknesses of the Class' Claims

"This factor evaluates whether 'the parties have sufficient information to make an informed decision about settlement.'" *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014). "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen*, 306 F.R.D. at 257 (internal quotation omitted). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (internal quotation omitted). Here, Plaintiffs requested, received, and reviewed extensive information from Defendant, specifically in connection with mediation and settlement negotiations. *See* Section III, *supra*. Plaintiffs fully understand the merits of this case, and this factor weighs in favor of settlement.

### 4. The Recommendations of Experienced Class Counsel Favor Approval

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner*, 2010 WL 1687832, at *13. Class Counsel has broad experience litigating and

trying consumer and class action cases. In their view, the Settlement provides substantial benefits to the Class, especially when one considers the attendant expense, risks, delays, and uncertainties of litigation, trial and post-trial proceedings. (Wolfson Decl., ¶ 40.)

## VII.   THE PROPOSED FORM AND METHOD OF NOTICE IS THE BEST NOTICE PRACTICABLE AND SHOULD BE APPROVED

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust,* 339 U.S. 306, 314 (1950). Notice must clearly and concisely state the following, in plain, easily understood language: (i) the nature of the action; (ii) the class definition; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed Notice Program will include direct Notice to all Settlement Class Members. (Stip. ¶¶ 18, 46, 47(a), 49.) Moreover, the Summary Notice and Long Form Notice are written in clear and concise language and contain the information required by Rule 23(c)(2)(B). (Stip. Exs. E, G.) Accordingly, the forms of Notice and plan of dissemination should be approved.

## VIII.   THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL

In connection with the preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for dissemination of notice to the Settlement Class, deadlines for objecting to the Settlement, opting out of the Settlement, and filing papers in support of the Settlement. Plaintiffs propose the schedule included in the Notice of Motion, above, and set forth in the concurrently filed [Proposed] Preliminary Approval Order. (Stip. Ex. D.)

## IX.   CONCLUSION

The proposed Settlement is fair, presents no obvious deficiencies, and falls within the range of possible approval. Plaintiffs therefore request that the Court grant preliminary approval and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order. (*Id.*)

Dated: January 20, 2017                              Respectfully Submitted,

**AHDOOT & WOLFSON, PC**

By: */s/ Tina Wolfson*_____
     Tina Wolfson, SBN 174806
     *twolfson@ahdootwolfson.com*
     Robert Ahdoot, SBN 172098
     *rahdoot@ahdootwolfson.com*
     Theodore Maya, SBN 223242
     *tmaya@ahdootwolfson.com*
     Bradley K. King, SBN 274399
     *bking@ahdootwolfson.com*
     1016 Palm Ave.
     West Hollywood, California 90069
     Tel: 310-474-9111; Fax: 310-474-8585

*Interim Lead Class Counsel*

**LOCKS LAW FIRM, LLC**
Michael A. Galpern (*pro hac vice*)
*mgalpern@lockslaw.com*
Andrew P. Bell (*pro hac vice*)
*abell@lockslaw.com*
James A. Barry (*pro hac vice*)
*jbarry@lockslaw.com*
801 North Kings Highway
Cherry Hill, New Jersey 08034
Telephone: (856) 663-8200; Facsimile: (856) 661-8400

*Counsel for Plaintiffs*

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins (*pro hac vice*)
*shopkins@zlk.com*
Shane Rowley (*pro hac vice*)
*srowley@zlk.com*
Nancy A. Kulesa (*pro hac vice*)
*nkulesa@zlk.com*
Andrea Clisura (*pro hac vice*)
*aclisura@zlk.com*
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500; Facsimile: (866) 367-6510

*Counsel for Plaintiffs*

# ATTORNEY ATTESTATION

Pursuant to Civil Local Rule 5-1(i), I, Tina Wolfson, hereby attest that concurrence in the filing of this document has been obtained from the other signatories on this document.


DATED: January 20, 2017


By: */s/  Tina Wolfson*_____
Tina Wolfson

**PROOF OF SERVICE**