1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

*In re* Yapstone Data Breach

Case No. 4:15-CV-04429-JSW

Hon. Jeffrey S. White

**DECLARATION OF F. PAUL BLAND JR., IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Frank Paul Bland Jr., do hereby declare as follows:

1. I am the Executive Director of the Public Justice Foundation, a 501(c) (3) non-profit charitable public foundation dedicated to advancing the public interest, and Public Justice, P.C. ("Public Justice"), a national public interest law firm that advances the Public Justice Foundation's goals. I make this declaration of my own personal knowledge.

2. I submit this declaration in support of Plaintiffs' motion for preliminary approval of class action setttlementin the above captioned matter and the designation of Public Justic as a *cy pres* recipient.

3. The Public Justice Foundation will use any *cy pres* award in this case to further the underlying goals of the case, directly and indirectly benefiting the class members and similarly situated persons. Specifically, the Public Justice Foundation will use any such award to help advance the rights of consumers to be free of privacy injuries to enforce – and help others enforce – consumers' rights and consumer protection laws guarding against privacy injuries. As explained

---

DECL. OF F. PAUL BLAND, JR., ISO MTN FOR PRELIM. APPROVAL OF SETTLEMENT
CASE NO. 4:15-CV-04429-JSW

below, Public Justice has demonstrated a longstanding commitment to and record of doing this work.

4. This declaration will describe my background and experience and the activities of the Public Justice Foundation and Public Justice.

## My Background and Experience

5. I am a lawyer licensed to practice law in the States of Maryland, California and the District of Columbia and in the United States District Court for the District of Maryland, in the U.S. Courts of Appeal for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits, and in the United States Supreme Court. I received my law degree from Harvard Law School in 1986. I graduated *cum laude* from law school, where I was also President of the Harvard Journal on Legislation.

6. I have argued or co-argued and won more than 30 reported decisions from federal and state courts across the nation, including cases in six of the federal Circuit Courts of Appeal and in nine different state high courts. I have presented at more than 100 continuing legal education or professional conferences in more than 25 states; have testified in both houses of Congress, several state legislatures and administrative agencies; and have been widely quoted in all sorts of national and local media.

7. I was named the "Vern Countryman" Award winner in 2006 by the National Consumer Law Center, which "honors the accomplishments of an exceptional consumer attorney who, through the practice of consumer law, has contributed significantly to the well-being of vulnerable consumers." In 2010, I received the Maryland Legal Aid Bureau's "Champion of Justice" Award. In 2013, I won the Champion of Justice Award from the Maryland Consumer Rights Coalition.

2

## General Background about Public Justice
## and the Public Justice Foundation

8. The Public Justice Foundation is a 501(c)(3) non-profit charitable membership organization dedicated to using attorneys' skills and resources to advance the public good. Its Federal Identification Number is 59-1730478. It supports the cutting-edge legal work of Public Justice, P.C., a national public interest law firm, and educates the public about the critical issues that legal work addresses. Both organizations are headquartered in Washington, D.C., and have a West Coast office in Oakland, California. Any *cy pres* funds awarded by the court to the Public Justice Foundation may be allocated by Public Justice Foundation to Public Justice, P.C., as appropriate under the tax laws, for work performed by the latter organization. For that reason, and for purposes of convenience, references to Public Justice in the remainder of this letter will mean both the Public Justice Foundation and Public Justice, P.C., unless there is a reason to refer to either organization specifically.

9. In both state and federal courts nationwide, Public Justice pursues high impact lawsuits to combat social and economic injustice, protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses. Public Justice also provides a substantial amount of assistance and information on a *pro bono* basis to individuals and attorneys who represent investors, consumers, workers and injury victims, and to legislators and government agencies interested in dealing with how the law can lead to systemic change.

10. Public Justice is unique in that, in addition to its 15 attorneys on staff, it draws on a nationwide volunteer network of approximately 2,500 plaintiffs' lawyers and other attorneys who are members of the Public Justice Foundation. This network helps to maximize Public Justice's impact. By using the skills and resources of this network, Public Justice is able to prosecute cases that private attorneys and other public interest organizations would not have the resources or expertise to pursue. We are also dedicated to enforcing laws that, for various realistic reasons, are not adequately enforced by government regulators or the private bar.

## Other Courts Approving Cy Pres Awards to Public Justice in Cases Involving Privacy Injury

11. Because of Public Justice's record of success and commitment to ensuring that cy pres awards are properly used, numerous courts have directed that the Public Justice Foundation be awarded cy pres funds throughout our nearly 35-year history. Since 2010 alone, we have gratefully received cy pres designations originating from more than 60 different cases, including having courts grant cy pres awards to Public Justice in the following privacy injury-related cases:

- *Brown v. Delhaize America, LLC* (U.S. – Middle Dist. of North Carolina, No. 1:14-cv-00195-TDS-JLW) (settlement in case involving alleged violations of the Fair Credit Reporting Act, specifically regarding privacy injuries suffered by workers linked to inaccurate background checks)

- *Greenberg v. Etrade* (State: California - Los Angeles County Super. Ct., No. BC 360152) (settlement in case involving alleged violations of the Telephone Communications Protection Act, specifically claims of privacy injury due to phone calls which were recorded without consumers' knowledge or consent)

- *Harris v. U.S. Physical Therapy* (U.S. – Dist. of Nevada, No. 2:10-cv-01508-JCM-VCF) (settlement in case involving alleged violations of the Fair Credit Reporting Act, specifically regarding privacy injuries suffered by workers linked to inaccurate background checks)

- *Michaels v. Classmates Online, Inc.* (U.S. – Western Dist. of Washington, No. 2:09-cv-00045-RAJ) (settlement in consolidated class action case involving alleged violations privacy injuries, including email messages that were in violation of the law and personal information made public in violation of users' privacy rights)

- *Northern Suburban Chiropractic v RX Security* (In Re Prescription Pads TCPA Litigation) (U.S. - Northern District of Illinois, No. 1:13-cv-6897) (settlement in case involving alleged violations of the Telephone Communications Protection Act, specifically claims of privacy injury due to automated phone calls which were made without consumers' consent)

- *Pettus et al v. The Servicing Company, LLC et al* (U.S. - Eastern District of Virginia, No. 3:15-cv-00479) (settlement in case involving alleged violations of the Fair Credit Reporting Act, specifically claims of credit reports obtained by payday lenders without consumers' permission)

- *Pines Nursing Home (77), Inc. v PharMerica Corporation* (U.S. – Southern Dist. of Florida, No. 1:13-cv-23924-KMM) (settlement in case involving alleged violations of the Telephone Communications Protection Act, specifically claims of privacy injury due to automated faxes which were sent without consumers' consent)

DECL. OF F. PAUL BLAND, JR., ISO MTN FOR PRELIMIN. OF SETTLEMENT
CASE NO. 4:15-CV-04429-JSW

- *Silbaugh v. Viking Magazine Services* (U.S. – Northern Dist. of Ohio, No. 1:11-cv-01299-PAG) (settlement in case involving alleged violations of the Telephone Communications Protection Act, specifically claims of privacy injury due to automated phone calls which were made without consumers' consent)

- *Smith v. Res-Care Inc.* (U.S. - Southern District of West Virginia, No. 3:13-cv-05211) (settlement in case involving alleged violations of the Fair Credit Reporting Act, specifically regarding privacy injuries suffered by workers linked to unlawfully handled background checks)

- *Weller v. CarsDirect.com* (State: California - Los Angeles County Super. Ct., No. BC 256282) (settlement in case involving alleged violations of the Telephone Communications Protection Act, specifically claims of privacy injury due to automated phone calls which were made without consumers' consent)

- *Williams et al v. LexisNexis Risk Management Inc. et al* (U.S. – Eastern Dist. of Virginia, No. 3:06-cv-00241-REP) (settlement in case involving alleged violations of the Fair Credit Reporting Act, specifically regarding privacy injuries suffered by workers linked to inaccurate and unlawfully handled background checks)

12. We have also been approved for cy pres awards in previous cases here in the Northern District of California, including:

- *Rand v. American Nat'l Ins. Co.,* No. CV-09-0639-SI

- *Wolph v. Acer America Corp.,* No. 3:09-cv-D1314-JSW

- *In re Wachovia Option ARM Litigation,* No. 5-09-cv-0215-JF

- *In re ATI Tech. HDCP,* No. 5-06-01303-JW

### Public Justice's Education Efforts, Particularly Related to Privacy Litigation

13. Public Justice educates the public about the important issues addressed in Public Justice's litigation and equip the legal community with valuable tools, strategies, and resources. Through webinars, Continuing Legal Education workshops, debates, and direct policy advocacy, Public Justice helps lawyers representing victims of privacy breaches understand the latest ways to fight back, and lets policymakers and the public recognize and fix the problems at the root of corporate privacy violations.

5

DECL. OF F. PAUL BLAND, JR., ISO MTN FOR PRELIMIN. OF SETTLEMENT
CASE NO. 4:15-CV-04429-JSW

14. With the respect to CLE programs focused on consumer privacy issues, for just a few examples, I have presented at the National Association of Consumer Advocates' annual educational conference on a number of occasions, including giving the keynote address at NACA's FCRA conference in 2004 and 2006, and participating in the FCRA conference in 2011 and 2014. Similarly, Public Justice Staff Attorney Leslie Bailey spoke at the Conference on Effective Consumer Privacy Enforcement, sponsored by Berkeley Law and the Samuelson Law, Technology & Public Policy Clinic, in October 2011. This invitation-only conference was an opportunity for plaintiffs' attorneys to develop new strategies for privacy cases and share ideas on how to better protect consumers' privacy in the face of new tracking technologies.

15. Public Justice attorneys have also spoken on topics that are critical for attorneys representing victims of privacy harms at events sponsored by organizations including: the National Consumer Law Center, the American Constitution Society, the American Association for Justice, the Impact Fund, Attorneys Information Exchange Group, the Pound Institute, Consumer Attorneys of California, and numerous state trial lawyer associations and state bar associations.

16. Public Justice also receives and responds to numerous requests for advice and legal research from consumer attorneys who represent persons who are the victims of privacy injuries, as well as requests for informational assistance from consumers who are victims of such injuries. A large number of these requests have come from lawyers and consumers in California. We regularly provide such attorneys and consumers with strategic assistance, reviewing briefs and other pleadings and sharing our own briefs.

17. Public Justice has also endeavored to promote the ability of legal services programs to represent consumers. On several occasions, Public Justice attorneys have conducted trainings or made presentations at educational training programs to enable legal aid lawyers to better handle consumer cases. Public Justice also has developed and distributed a number of educational materials for consumers and community-based legal aid attorneys to use in their own work.

## Public Justice's Privacy-Related Litigation

18. Leveraging *cy pres* and other resources, Public Justice has been proud to advocate for consumers who have been harmed by privacy injuries, including data breaches, and to bring impact cases which preserve the abilities of consumers to seek meaningful redress in the wake failures to secure and safeguard the personally identifiable information and bank account information, as well as failures to provide timely and adequate notice to consumers whose information has been compromised.

19. In a great many cases, privacy laws may only be effectively enforced through private class actions. Public Justice has engaged in a wide variety of advocacy to preserve the class action device in the face of various attacks against it, and litigated a number of issues which impact access to justice for individuals and classes who have been harmed, as outlined below:

20. **Article III Standing Issues:** Public Justice is active in litigation relating to Article III standing issues (including cases involving privacy injuries), including *Romero v. Department Stores National Bank*, No. 16-56265 (9th Cir. Pending), where we represent a consumer who received more than 60 telephone calls from a debt collector, who has raised both federal and state statutory claims, and whose case was dismissed by the district court on the grounds that she did not have standing under Article III to bring the case.

21. In addition, we have also filed amicus briefs on standing issues, including in *Spokeo* itself, and in *Gubala v. Time Warner* (U.S. – 7th Circuit, No. No. 16-2613). *Gubala* involves alleged violations of the Cable Communications Policy Act (CCPA), with the plaintiff claiming that the company is keeping records about consumers' viewing habits for longer than Congress specified was permitted. Our *amicus* brief sets out a rationale in support of the existence of a strong historical basis for giving a private right of action to protect against invasions of privacy (a right that is crucial in many data breach and identity theft cases).

22. **Forced Arbitration:** Arbitration clauses have been to prevent access to justice for consumers alleging privacy injuries in a number of cases. While the U.S. Supreme Court has

consistently re-affirmed that pre-dispute binding arbitration clauses (including clauses that bar consumers from bringing and participating in class actions) are enforceable and favored under federal law, this is not the case where parties have not agreed to arbitration, or if an arbitration clause includes extreme and unusual terms that would run afoul of normal principles of state contract law.

23. Our experience has been that a great many companies facing serious allegations of violating privacy laws (including companies that were allegedly negligent or otherwise at fault in cases involving data breaches) have been able to defeat even meritorious, consumer claims by interposing arbitration clauses as defenses.

24. Public Justice has a long record of success handling cases throughout the country in which courts limited over-reaching abuses of arbitration clauses, which (when miss-used) restrict or eliminate consumers' rights under deceptive trade practice laws. See, e.g., *Sgourous v. TransUnion*, 817 F.3d 1029 (7th Cir. 2016) (consumers did not agree to arbitration due to lack of reasonable notice of clause on website); *Messina v. North Cent. Distributing, Inc.*, 821 F.3d 1047 (8th Cir. 2016) (employer waived right to compel arbitration by excessive litigation in court); *Roes v. SFBSC Mgmt, LLC*, __ Fed. Appx __ (9th Cir. July 16, 2016) (non-party could not invoke arbitration clause where it did not meet its burden of proof to establish that any exception applied to rule limiting arbitration agreements to parties); *Newton v. American Debt Services, Inc.*, 549 Fed. Appx. 692 (9th Cir. 2013) (arbitration clause unconscionable where it required consumers in California to travel to Oklahoma City to arbitrate, imposed a loser pays rule, limited damages, and reserved selection of arbitrator solely to defendant); *Lee v. Intelius Inc.*, 737 F.3d 1254 (9th Cir. 2013) (consumer did not enter agreement to arbitrate where "even an exceptionally careful consumer would not have understood" that clicking on a link constituted agreement to arbitrate); *Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803 (N.M. 2011) (where lender's arbitration clause named an arbitration provider that had been closed by a law enforcement action, and that provider was an integral part of the agreement between the parties, the consumer was not required to arbitrate with another provider); *FIA Card Services v. Weaver*, 62 So.3d 709 (La. 2011) (a debt

8

collector cannot enforce an arbitration award against a consumer without first proving that the consumer agreed to arbitration); *Gibson v. Nye Frontier Ford, Inc.*, 205 P.3d 1091 (Ak. 2009) (selective appeal provision unconscionable; case would only be sent to arbitration if employer would pay all substantial costs of arbitration); *Cordova v. World Fin. Corp.*, 208 P.3d 901 (N.M. 2009) (one-sided arbitration provision unconscionable); *Toppings v. Meritech Mortgage*, 569 S.E.2d 149 (W.Va. 2002) (where a lender's arbitration clause designates an arbitration forum that is paid through a case volume fee system, and the arbitration forum's income is dependent on continued referrals from the creditor, this so impinges on neutrality and fundamental fairness that the clause is unconscionable and unenforceable); *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So.2d 707 (Fla. 2005) (broker waived right to compel arbitration, even though investor proved no prejudice); *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085 (8th Cir. 2007) (also finding waiver of right to compel arbitration by a lender); and *Sanderson Farms, Inc. v. Gatlin*, 848 So.2d 828 (Miss. 2003) (poultry company's refusal to comply with arbitration clause requirement that is pay half of forum costs constituted breach and waiver, allowing farmer to bring wrongful termination claim in court).

25. **Pick Offs:** We have also litigated against "pick off" offers aimed at eliminating class actions through unaccepted offers of judgment to named class representatives. In particular, we are proud to have won the leading case on the use of pick off offers to moot class actions in the Ninth Circuit: *Chen v. AllState Insurance Company* (U.S. – 9th Circuit, No. 13-16816). In *Chen*, we represented the appellees in this case, which involved privacy violations under the Telephone Communications Protection Act. The Court held that even if Allstate's pick off offer fully satisfied the named class representative's individual claims, that offer did not moot the entire case. The Court explained that a case is not moot if the plaintiff's claims are "transitory in nature and may otherwise evade review." The Court also held that the plaintiff's claims could not be considered moot until he had a fair opportunity to seek class certification. The Court explained that the named class plaintiff was not just being "obstinate" or acting out of "madness" – the class action device is often the only effective means of pursuing relief on behalf of injured persons, and the

9

plaintiff acts sensibly in pursuing all of the relief sought in the complaint.

26.  Public Justice had also filed an *amicus* brief in *Campbell-Ewald v. Gomez* (U.S. – Supreme Court, No. 14-857), which also addressed the issue of pick offs. The Supreme Court held in a 5-4 decision that if a defendant made an offer of judgment and the plaintiff didn't accept it, that a case was not rendered moot.

### Public Justice Advocacy Relating to Proposed Changes to the Federal Rules of Civil Procedure

27.  The Federal Rules Advisory Committee regularly considers proposals to change the Federal Rules of Civil Procedure. Public Justice has regularly commented on proposals over a period of years, in ways that are supportive of the interests of consumers alleging privacy injuries. In 2013, for example, Public Justice filed comments dealing with proposals to change some of the discovery provisions of the federal rules in ways that would make it harder for privacy advocates to prove their cases. At this time, the Federal Rules Advisory Committee has created a subcommittee to consider proposals to change Rule 23, the rule dealing with class actions. Public Justice has been and will be attending the Committee's meetings on this issue (I will testify at the Committee's public hearing in Phoenix on January 4, 2017), and also filed extensive written comments proposing changes to improve Rule 23 so as to enhance access to justice for victims of privacy injuries and other consumers.

### Conclusion

28.  A *cy pres* award to Public Justice would benefit the class or similarly situated persons, and would promote the law consistent with the objectives and purposes of the underlying cause of action in this case. Public Justice would use any such award to protect and advance the rights of consumers to have their privacy protected. In addition to the information set forth above, extensive background information on Public Justice and its activities is available on our web site at http://www.PublicJustice.net. I would be more than pleased to provide any additional information directly to the Court if required.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of December 2016 in Washington, D.C.

By: *F. Paul Bland*
F. Paul Bland, Jr.
Executive Director

11

DECL. OF F. PAUL BLAND, JR., ISO MTN FOR PRELIMIN. OF SETTLEMENT
CASE NO. 4:15-CV-04429-JSW