1  Tina Wolfson, SBN 174806
   *twolfson@ahdootwolfson.com*
2  Robert Ahdoot, SBN 172098
   *rahdoot@ahdootwolfson.com*
3  Theodore W. Maya, SBN 223242
   *tmaya@ahdootwolfson.com*
4  Bradley K. King, SBN 274399
   *bking@ahdootwolfson.com*
5  **AHDOOT & WOLFSON, PC**
   1016 Palm Avenue
6  West Hollywood, California 90069
   Tel: 310-474-9111; Fax: 310-474-8585
7
   *Interim Lead Class Counsel*
8  *[Additional counsel on signature page]*

9

10                **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                      **OAKLAND DIVISION**

13                                        Case No. 4:15-cv-04429-JSW

14                                        The Honorable Jeffrey S. White

15
                                          **PLAINTIFFS' NOTICE OF MOTION AND**
16  *In Re* Yapstone Data Breach          **MOTION FOR FINAL APPROVAL OF**
                                          **CLASS ACTION SETTLEMENT;**
17                                        **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT THEREOF**
18

19
                                          Date:   August 4, 2017
20                                        Time:   9:00 A.M.
                                          Place:  Courtroom 5, 2nd Floor
21                                                 1301 Clay Street, Oakland CA 94612

22                                        [Proposed Final Approval Order and Declarations
                                          of Tina Wolfson and Carla Peak filed
23                                        concurrently herewith]

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 4, 2017 at 9:00 a.m., in Courtroom 5 of the above-captioned Court, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, Plaintiffs/Settlement Class Representatives Jonathan Koles, Christopher Bonnema, Daniel Adams, James Mitchell, and Robert McGuire (collectively, "Plaintiffs" or "Settlement Class Representatives") will and hereby do move for an Order Granting Final Approval of Class Action Settlement, pursuant to the Stipulation of Settlement ("Stip."). *See* Dkt. 73.

More specifically, Plaintiffs move for an Order:

(1) Granting final approval of the proposed Settlement as fair, reasonable, and adequate to Plaintiffs and the Settlement Class Members and directing the Settlement's consummation according to its terms;

(2) Reaffirming certification of the Settlement Class for settlement purposes;

(3) Finding that the form and manner of class notice implemented pursuant to the Settlement: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the litigation, the terms of the proposed Settlement, the right to object to the proposed Settlement or exclude themselves from the Settlement Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure;

(4) Finding that all Settlement Class Members shall be bound by the Settlement as it relates to the Settlement Class in which each is a member, including the release provisions and covenant not to sue;

(5) Finding that all Settlement Class Members shall be bound by the Settlement as it relates to the Settlement Class in which each is a member, including the release provisions and covenant not to sue;

(6) Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement;

(7) Incorporating the release and related provisions set forth in the Settlement and barring any Released Claims against the Released Parties;

1     (8) Approving provision of the benefits to the Redemption Claimants consistent with the

2 Settlement;

3     (9) Approving creation of and payment to the Settlement Fund consistent with the Settlement;

4     (10) Retaining jurisdiction of all matters relating to the interpretation, administration,

5 implementation, and enforcement of the Settlement.

6     As discussed in the accompanying memorandum, approval of the Settlement and the related relief

7 requested herein is appropriate under applicable law and well justified under the circumstances of this

8 matter.

9     This motion is based on this notice of motion and motion; the accompanying memorandum of

10 points and authorities; the Settlement, including all exhibits thereto, and all papers filed in support thereof;

11 the accompanying declarations of Tina Wolfson, Class Counsel ("Wolfson Decl."); Carla Peak (VP of

12 Legal Notification Services at Class Administrator KCC, LLC) ("Peak Decl."); the argument of counsel;

13 all papers and records on file in these cases; and such other matters as the Court may consider.

14

15 Dated: May 16, 2017                     Respectfully Submitted,

16

17                               **AHDOOT & WOLFSON, PC**

18

19                     By:___*/s/ Tina Wolfson*_____
                             Tina Wolfson

20                              *twolfson@ahdootwolfson.com*
                             Robert Ahdoot

21                              *rahdoot@ahdootwolfson.com*
                             Theodore W. Maya

22                              *tmaya@ahdootwolfson.com*
                             Bradley K. King, SBN 274399

23                              *bking@ahdootwolfson.com* 1016 Palm Avenue
                             West Hollywood, California 90069

24                              Tel: (310) 474-9111; Fax: (310) 474-8585

25                              *Interim Lead Class Counsel and Counsel for Plaintiffs*

26                              **LOCKS LAW FIRM, LLC**
                             Michael A. Galpern (*pro hac vice*)

27                              *mgalpern@lockslaw.com*
                             Andrew P. Bell (*pro hac vice*)

28                              *abell@lockslaw.com*

1
2
3

James A. Barry (*pro hac vice*)
jbarry@lockslaw.com
801 North Kings Highway
Cherry Hill, New Jersey 08034
Telephone: (856) 663-8200; Facsimile: (856) 661-8400

4
5
6
7
8
9
10

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins (*pro hac vice*)
shopkins@zlk.com
Shane Rowley (*pro hac vice*)
srowley@zlk.com
Nancy A. Kulesa (*pro hac vice*)
nkulesa@zlk.com
Andrea Clisura (*pro hac vice*)
aclisura@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500; Facsimile: (866) 367-6510

11
12

*Counsel for Plaintiffs*

13
14
15

### ATTORNEY ATTESTATION

16
17
18

Pursuant to Civil Local Rule 5-1(i), I, Tina Wolfson, hereby attest that concurrence in the filing of this document and all supporting documents has been obtained from the other signatories on these documents.

19
20
21

DATED: May 16, 2017                    By: */s/ Tina Wolfson*
                                            Tina Wolfson

22
23
24
25
26
27
28

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.   INTRODUCTION ...................................................................................................................1

II.  BACKGROUND...................................................................................................................2

    A. Factual and Procedural History........................................................................................2

    B. Settlement Negotiations ..................................................................................................3

    C. Plaintiffs' Counsel's Investigation and Discovery..........................................................3

    D. Preliminary Settlement Approval and Implementation of the Notice Program...................4

III. THE SETTLEMENT ............................................................................................................4

    A. The Settlement Class.......................................................................................................4

    B. Benefits to Class Members..............................................................................................4

        1. Experian's ProtectMyID® Services for Redemption Claimants...............................4

        2. Monetary Payments ..................................................................................................5

        3. Injunctive Relief.......................................................................................................5

    C. Opt-Out Procedure..........................................................................................................6

    D. Objection Procedure........................................................................................................6

    E. Separate Payment of Attorneys' Fees, Costs, and Expenses, and Service Awards...........6

    F. Separate Payment of Administrative Costs .....................................................................7

    G. Release ............................................................................................................................7

IV.  NOTICE HAS BEEN DISSEMINATED TO SETTLEMENT CLASS MEMBERS PURSUANT
     TO THE COURT-APPROVED NOTICE PROGRAM.........................................................7

    A. Direct Notice to Class Members .....................................................................................7

    B. Settlement Website, Toll-Free Number, and Dedicated P.O. Box....................................8

V.   THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE ...............................9

VI.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ..............9

    A. The Class Action Settlement Approval Process ..............................................................9

    B. Final Approval of the Settlement is Appropriate ...........................................................10

        1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of
          Further Litigation ...................................................................................................10

          a. Plaintiffs Would Have to Overcome Defendant's Motion to Dismiss and Motion to Strike ..11

          b. Fact Intensive Inquiries Are Pervasive ...............................................................11

          c. Continued Litigation and Trial Present Risks Regarding Liability, Damages, and
            Certification ....................................................................................................12

        2. The Benefits Offered in the Settlement Are Substantial ..........................................13

          a. The Settlement's Consideration Is Significant Compared to the Maximum Potential
            Recovery Available ..........................................................................................13

          b. The Settlement's Injunctive Relief Is Substantial Consideration .........................16

          c. The Settlement's Additional Consideration Is Significant ...................................16

v

**TABLE OF CONTENTS**
(continued)

Page

C. The Settlement Provides for a Fair Allocation of Relief to All Class Members .............................17

   1. Class Counsel Performed Sufficient Research and Analysis to Adequately Assess the Settlement and the Strengths and Weaknesses of the Class' Claims ...........................................18

   2. The Recommendations of Experienced Class Counsel Favor Approval ....................................19

   3. The Presence of a Government Participant ......................................................................19

   4. The Class Response to Date Favors Final Approval .........................................................19

   5. Lack of Collusion Between the Parties .........................................................................19

VII. CLASS ACTION TREATMENT IS APPROPRIATE...................................................................20

  A. This Action Satisfies the Reqirements of Rule 23(a)...........................................................20

  B. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied............................21

VIII. CONCLUSION...............................................................................................................23

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S.Ct. 1184 (2013)........................................... 22

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ............................................ 10, 18

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)........................................................ 10

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................................................... 10, 19

*Custom LED, LLC v. eBay, Inc*, No. 12-cv-00350-JST, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013).... 18

*Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012).................................................................................... 17

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............. 10, 11, 19

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......... 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................. 10, 21, 22

*In re Ferrero Litig.*, 583 F. App'x 665 (9th Cir. 2014) ................................................................................ 16

*In re Heritage Bond Litig.*, No. 02-ml-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)......... 16, 19

*In re LDK Solar Secs. Litig.*, No. 07-cv-5182-WHA, 2010 U.S. Dist. LEXIS 87168 (N.D. Cal. July 29, 2010) ........................................................................................................................................................ 16

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015 ......................................................... 22

*In re Netflix Privacy Litig.*, No. 11-cv-379-EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............... 10

*In re Omnivision*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................................... 12, 16

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450 (D.N.J. 1997)............................ 23

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .......................................................................... 10

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)................................................................................... 16, 22

*In re TracFone Unlimited Serv. Plan Litig.*, No. C-13-3440 EMC, 2015 WL 4051882 (N.D. Cal. July 2, 2015) ....................................................................................................................................................... 16

*In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841-EMC, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011)........................................................................................................................... 11

*Keirsey v. eBay, Inc.*, No. 12-CV-01200-JST, 2013 WL 5755047 (N.D. Cal. Oct. 23, 2013).................... 20

*Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ........ 18

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011)................................................................................ 17

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) ............................................ 23

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ....................................................................................................................................................... 10

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................................................... 10

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) .......................................................................... 20

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......................................................................................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................................... 20

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008).................................................................. 22

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vii

**TABLE OF AUTHORITIES**
(continued)

Page

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010)....................................................... 22

**STATUTES**

28 U.S.C. § 1715 ..................................................................................................................................... 7, 19

Cal. Bus. & Prof. Code § 17200, *et seq*. ...................................................................................................... 22

**RULES**

Fed. R. Civ. P. 23(b) ....................................................................................................................... 21, 22, 23

Fed. R. Civ. P. 23(a) ............................................................................................................................. 20, 21

**TREATISES**

4 *Newberg on Class Actions*, § 11.22 *et seq.* (4th ed. 2002) ................................................................ 9, 19

*Manual for Complex Litigation* (Fourth), § 21.63 *et seq.* (2004) ............................................................... 9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      The Court has preliminarily approved the Stipulation of Settlement ("Stip.") (*see In re Yapstone*

4 *Data Breach*, Dkt. 73)[1] reached by the parties in this litigation, and approved the parties' proposed

5 notice program. *See* Dkt. 75.  Notice has been, and continues to be, disseminated to the Settlement

6 Class Members in accordance with the notice program approved by the Court.  By this motion, Plaintiffs

7 respectfully request that the Court conduct a final review of the Settlement, and approve the Settlement

8 as fair, reasonable, and adequate.

9      The Settlement is the product of extensive arms-length negotiations between the parties and their

10 experienced and informed counsel, and is absolutely fair, reasonable, and adequate given the claims and

11 relief sought, the alleged harm, and the parties' respective litigation risks.

12      Pursuant to the Settlement, Yapstone will provide certain Class Members (referred to as

13 Redemption Claimants) twelve (12) months of ProtectMyID® Services valued at approximately

14 $4,853,202.90 in the first year alone and additional $4,399,590 annually thereafterunder the

15 ProtectMyID® ExtendCARE™ program.  Yapstone will also establish a non-reversionary cash

16 Settlement Fund in the amount of $120,000, and distribute that Fund, equally, to the following non-

17 profit organizations: Public Justice and the UC Berkeley School of Information, Center for Long-Term

18 Cybersecurity.  The Settlement also provides significant injunctive relief to Class Members by requiring

19 Yapstone to implement substantial data security measures.

20      Additionally, the Settlement provides for a robust, multi-pronged notice program, which has

21 been, and is being, implemented by the Settlement Administrator.  The costs of class notice and the

22 other costs of the Settlement Administrator, and any Court-awarded attorneys' fees, costs, and expenses,

23 and service awards, will be paid separately by Yapstone and will thus not reduce the other benefits for

24 the Settlement Class Members under the Settlement.

25

26

27 [1]      Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation of
Settlement.

28

1    Notably, the reaction from Settlement Class Members thus far has been resoundingly positive.

2    The deadline for Settlement Class Members to opt-out or object is May 30, 2017.  As of May 12, 2017,

3    only 7 persons out of an estimated total class size of 182,476 have asked to be excluded, and no

4    objections have been submitted.  *See* Declaration of Carla Peak, filed concurrently herewith ("Peak

5    Decl.") ¶¶ 3, 12.

6    For the foregoing reasons and the others detailed below, the Settlement meets the standards for

7    final settlement approval and should be approved.

8    **II.    BACKGROUND**

9    **A.    Factual and Procedural History**

10   In September of 2015, Yapstone announced it experienced a data incident in which certain

11   personally identifiable information ("PII") of some users may have been exposed via unsecured online

12   unique resource locators ("URLs"), otherwise commonly known as "web addresses," between July 15,

13   2014 and August 5, 2015 (the "Incident").  (Stip. Recital ¶ B.)  Following the Incident, Defendant sent

14   approximately 182,476 Incident Notices to its users.  (Stip. Recital ¶ J.)  The Class Administrator

15   estimates that the size of the proposed Settlement Class is approximately 182,476.  The Incident Notice

16   included an offer for Experian's ProtectMyID® Services for a term of twenty-four (24) months that

17   comprised of (i) a free credit report; (ii) surveillance alerts for Daily Bureau Credit Monitoring; (iii)

18   identity theft resolution and ProtectMyID® ExtendCare™; and (iv) one million dollars ($1,000,000.00)

19   in identity theft insurance.  Although approximately 182,476 Incident Notices were provided to users, it

20   appears that approximately 36,500 users had provided Yapstone additional PII (their Social Security

21   Number ("SSN"), Passport Number ("PN"), and/or Driver's License Number ("DLN")), and 30,342 of

22   these consumers did not sign up for Experian's ProtectMyID® Service offered in the Incident Notices

23   ("Redemption Claimants").  *See* Declaration of Tina Wolfson, filed concurrently herewith ("Wolfson

24   Decl."), ¶¶ 24-25, 27-30.

25   Following a joint motion to consolidate separately filed actions against the Defendant, and the

26   appointment of Ahdoot & Wolfson, PC as Interim Lead Class Counsel and Ahdoot & Wolfson, PC,

27   Locks Law Firm, LLC, and Levi & Korsinsky, LLP to the Plaintiffs' Executive Committee, and the

28   filing of a Motion to Dismiss, on June 7, 2016, Plaintiffs filed a First Amended Consolidated Class

– 2 –

1    Action Complaint ("FACC") (Dkt. 52), which alleged, *inter alia*, that Defendant failed to safeguard the

2    PII, including customer names, e-mail addresses, physical addresses, dates of birth, social security

3    numbers ("SSNs"), and bank account information ("BAI") that it collected and maintained, and that

4    Defendant failed to provide timely and adequate notice of the Incident.[2]  (Dkt. 52 ¶ 1.)  Yapstone filed a

5    second Motion to Dismiss and Motion to Strike the FACC on June 24, 2016.  (Dkts. 53 and 54,

6    respectively; *see also* Wolfson Decl., ¶¶ 2-21 for a detailed Summary of the Litigation.)

7              **B.      Settlement Negotiations**

8              The Parties began discussing possible settlement well over seven months ago, which resulted in a

9    long series of arms-length negotiations, including mediation and numerous post-mediation discussions

10   between counsel and the mediator: the Honorable Richard Kramer (Ret). of JAMS.  Prior to any

11   substantive negotiation, Plaintiffs requested substantial information from Defendant, and, to ensure that

12   this information could be provided, the Parties filed a Notice of Settlement and Stipulation for Order

13   Continuing Deadlines In Light Of Proposed Settlement on July 15, 2016 (Dkt. 57).  After reaching a

14   settlement in principle, the Parties began memorializing the full Settlement, which involved further

15   extensive negotiations regarding each aspect of the Settlement.  Wolfson Decl., ¶¶ 12-18.

16             **C.      Plaintiffs' Counsel's Investigation and Discovery**

17             Before initiating these Actions, Plaintiffs' Counsel investigated the underlying facts and

18   analyzed the veracity of the claims.  Plaintiffs' Counsel also conducted discovery concerning the size

19   and membership of the Settlement Class, as well as the nature and scope of the Incident, and the nature

20   and scope of Yapstone's response to the Incident.  Furthermore, Plaintiffs' Counsel researched and

21   analyzed the merits of the potential causes of action, and defenses, under state statutory and common

22   law.  Plaintiffs' Counsel continued these efforts after filing the Consumer Actions and before entering

23

24   ─────────────────
     [2]      The FACC alleges claims for negligence, breach of implied contract, unjust enrichment, and
25   violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*; New Jersey's
     Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*;  the California Data Breach Law, Cal. Civ. Code §
26   1798.80, *et seq.*; the Nev. Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0915, *et seq.*; the Minn.
     Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*; the Minn. Uniform Deceptive Trade Practices Act,
27   Minn. Stat. § 325D.43, *et seq.*; the N.J. Data Breach Act, N.J.S.A. 56:8-163, *et seq.*; the Nev. Data
     Breach Act, N.R.S. 603A.010, *et seq.*; and the Minn. Data Breach Act, Minn. Stat. § 325E.61, *et seq.*

28

1  into the Settlement, and conducted a thorough examination, investigation, and evaluation of the relevant

2  law and facts to assess the merits of the claims and defenses.  *Id.* ¶ 20.

3      Plaintiffs obtained information regarding their allegations and Defendant's anticipated defenses,

4  the size of the putative Class, and records that showed the type of PII that may have been exposed.

5  Plaintiffs' Counsel thoroughly analyzed and evaluated all information provided, including documents

6  bearing on Defendant's cyber security practices, the report of the forensics investigations company that

7  Defendant hired to review its system logs after the Incident, and confirmatory discovery from Defendant

8  that stated the manner and scope of the Incident. Plaintiffs also hired and consulted with experts,

9  interviewed putative Settlement Class Members, and conducted extensive factual and legal research

10  regarding the sufficiency of the claims and the appropriateness of class certification.  *Id.*

11      **D.     Preliminary Settlement Approval and Implementation of the Notice Program**

12      Plaintiffs filed a motion for preliminary approval of the Settlement on January 20, 2017, and on

13  March 2, 2017, the Court granted preliminary approval of the Settlement.  (Dkt. 75, "Preliminary

14  Approval Order.")  Following the entry of the Preliminary Approval Order, Class Counsel have worked

15  closely with the Settlement Administrator and counsel for Defendant regarding implementation of the

16  notice program and claims process.  Wolfson Decl., ¶ 22.

17  **III.    THE SETTLEMENT**

18      **A.     The Settlement Class**

19      In the Preliminary Approval Order, the Court certified the following class for settlement

20  purposes:

21      All persons and entities who were sent an Incident Notice.  Excluded from the Settlement
        Class is any judge presiding over this matter and any members of their first degree
22      relatives, judicial staff, the officers and directors of Yapstone, and persons who timely
        and validly request exclusion from the Settlement Class.
23

24  (Preliminary Approval Order ¶ 2(a); Stip. Recital ¶ E and ¶¶ 13, 33.)

25      **B.     Benefits to Class Members**

26      **1.     Experian's ProtectMyID® Services for Redemption Claimants**

27      *First*, the 30,342 Redemption Claimants, who had certain additional PII at issue, and who did not

28  previously enroll in Experian's ProtectMyID® will be provided another opportunity to enroll in

– 4 –

1    Experian's ProtectMyID® Service for a term of twelve (12) months.  The ProtectMyID® Service shall be

2    identical to the service offered in the Incident Notices (*i.e.* (i) a free copy of the Redemption Claimant's

3    Experian credit report; (ii) surveillance alerts for Daily Bureau Credit Monitoring; (iii) identity theft

4    resolution and ProtectMyID® ExtendCare™;[3] and (iv) one million dollars ($1,000,000.00) in identity

5    theft insurance).  (Stip. ¶¶ 39, 43(a).)  Plaintiffs' expert, Robert Siciliano, estimates that the

6    ProtectMyID® Service to the Redemption Claimants provides $4,853,202.90 potential value to the

7    Redemption Claimants in the first year, and $4,399,590 annually thereafter.  (Declaration of Robert

8    Siciliano ("Sicilaino Decl."), Dkt. 74-2, ¶ 19.)

9             **2.    Monetary Payments**

10           *Second*, Defendant will pay each of the following:

11   (a)    $120,000 in cash to create the Settlement Fund to be distributed equally to non-profit
12          organizations Public Justice and the UC Berkeley School of Information, Center for
            Long-Term Cybersecurity (Stip. ¶ 43(b));
13

14   (b)    All Settlement Administration Charges (estimated to be $69,651) (*See* Declaration of
            Carla Peak, Dkt. 73-8, ¶ 19);

15   (c)    Any Court-approved Service Awards to Representative Plaintiffs (not to exceed $2,000 to
16          each Representative Plaintiff) (Stip. ¶ 72); and

17   (d)    Any Court-approved Attorneys' Fees, Costs, and Expenses (not to exceed $300,000)
18          (Stip. ¶ 73).

19           **3.    Injunctive Relief**

20           *Third*, as injunctive relief Yapstone has agreed to the implementation of substantial and wide-

21   ranging data security measures.  These numerous measures are detailed in paragraph 43(f) of the

22   Stipulation of Settlement.  (Stip. ¶ 43(f)(i-x).)  The Settlement thus addresses substantially all of the

23   objectionable conduct alleged in the FACC, despite Defendant's denial of liability.

24

25

26

27   [3]    ExtendCARE™ continues the availability of the ProtectMyID® identity theft resolution service
     in perpetuity for claimants beyond the one-year membership.
28

1

## C.     Opt-Out Procedure

2         Any Settlement Class Member may opt-out of the Settlement Class by sending a written request

3 to the Settlement Administrator, via U.S. Mail, to the address provided in the Long Form Notice.  Valid

4 requests must include information described in the Notice, including a statement that the person sending

5 the request wishes to be excluded from the Class.  Such requests must be postmarked on or before the

6 Opt-Out Deadline, which is May 30, 2017.  (*Id.* ¶ 58 & Ex. E; Peak Decl. ¶ 13.)

7

## D.     Objection Procedure

8         Any Settlement Class Member who does not request to be excluded may object to the Settlement

9 and/or the applications for Service Awards or attorneys' fees, costs, and expenses.  An objection must be

10 (i) mailed to the Class Action Clerk or filed with the Court, (ii) in writing, (iii) personally signed by the

11 objector, (iv) include the information prescribed by the Long Form Notice, and (v) filed or postmarked

12 on or before the Objection Deadline, which is May 30, 2017.  (Stip. ¶¶ 53(c), 56 & Ex. E; Peak Decl. ¶

13 13.)

14

## E.     Separate Payment of Attorneys' Fees, Costs, and Expenses, and Service Awards

15         Concurrently with this motion, Class Counsel is filing an application for an award of reasonable

16 attorneys' fees, costs, and expenses.  Class Counsel is requesting attorneys' fees, costs, and expenses in

17 the amount of $300,000.00.  The amount of potential attorneys' fees, costs, and expenses that will be

18 requested was stated on the relevant notice forms.  (Stip. Exs. E, G.)  Any such attorneys' fees, costs,

19 and expenses that are granted by the Court will be paid by Yapstone in addition to (*i.e.*, on top of) the

20 settlement benefits provided to the Settlement Class Members.  (Stip.  ¶¶ 73-75.)

21         Class Counsel is also concurrently applying for Service Awards of $2,000 on behalf of each

22 Representative Plaintiff.  The amount of potential Service Awards that will be requested was stated on

23 the relevant notice forms.  (Stip. Exs. E, G.)  The application for, or any individual's entitlement to, a

24 Service Award is not conditioned on that individual's support for the Settlement.  Like the attorneys'

25 fees, costs, and expenses, any Service Awards approved by the Court will be paid by Yapstone separate

26 and apart from the settlement benefits provided to the Settlement Class Members.  (Stip. ¶¶ 72, 74-75.)

27

28

1

**F.    Separate Payment of Administrative Costs**

2

Notice costs and the other fees and costs of the Settlement Administrator will likewise be paid by

3

Yapstone in addition to the settlement benefits provided to the Settlement Class Members.  (Stip. ¶ 48.)

4

**G.    Release**

5

If the Court grants final approval of the proposed Settlement, Settlement Class Members will be

6

deemed to have released Defendant of all claims, known or unknown, that were asserted or could have

7

been asserted in the litigation. (*Id.* ¶¶ 25, 66-71.)  The Released Claims are tied to the allegations in the

8

Consumer Action, which are the claims alleged in the FACC.  (*Id.*)

9

**IV.    NOTICE HAS BEEN DISSEMINATED TO SETTLEMENT CLASS MEMBERS
PURSUANT TO THE COURT-APPROVED NOTICE PROGRAM**

10

11

The robust notice program approved by the Court in the Preliminary Approval Order has been,

12

and continues to be, implemented by the parties and the Settlement Administrator.  This program –

13

which includes direct email/mail notice to all Settlement Class Members, a dedicated Settlement

14

Website, and an informational Toll-Free Number – is well-designed to give the best notice practicable.

15

*See generally* Peak Decl.

16

**A.    Direct Notice to Class Members**

17

Pursuant to the Court-approved notice program, the Class Administrator mailed all the notices

18

within the requirements of 28 U.S.C. § 1715 ("CAFA").  Peak Decl., ¶ 3.  Then, Yapstone's records

19

were utilized to provide direct email notice to the Settlement Class Members. Yapstone provided the

20

Settlement Administrator with the most current name, e-mail address and mailing address of each

21

Settlement Class Member and for each Settlement Class Member indicated whether he or she is a

22

Redemption Claimant.  The Settlement Administrator developed two sets of Summary Notices (one via

23

e-mail and one via U.S. Mail), one set for Redemption Claimants which included a claim number and

24

PIN code, and one set for other Settlement Class Members which included a unique identifying number.

25

Peak Decl., ¶ 4 & Exs. 1-4.   The Settlement Administrator then sent the Summary Email Notices to all

26

potential Settlement Class Members at their respective email addresses and sent the Summary Notices

27

via U.S. Mail for those Settlement Class Members for whom an email address was not available.  For

28

any Settlement Class Member with respect to whom the Settlement Administrator received notice that

– 7 –

1   the email notice was bounced or not received, the Settlement Administrator mailed the appropriate

2   notice to that Settlement Class Member at their mailing address as updated. For any mailed Summary

3   Notices returned with forwarding address information, the Settlement Administrator promptly re-mailed

4   the Summary Notice to the new address indicated.  For any mailed Summary Notices returned without

5   forwarding address information, the Settlement Administrator conducted a standard address search,

6   updated the address, and then promptly re-mailed the Summary Notice to the new address indicated.

7   Peak Decl., ¶ 5.  As of May 5, 2017, a total of 181,414 Summary Notices were disseminated and not

8   returned undelivered, thereby demonstrating that the direct notice effort reached approximately 99.4% of

9   the Settlement Class.  *Id.* ¶ 6.

10          **B.      Settlement Website, Toll-Free Number, and Dedicated P.O. Box**

11          As directed by the Court, on March 13, 2017, the Settlement Administrator established and is

12  maintaining a Settlement Website, www.yapstonesettlement.com, where the Long Form Notice, the

13  Claim Form, the Stipulation of Settlement (including all of its Exhibits; and Preliminary Approval Order

14  and the FACC have been made available for viewing and downloading.  The Settlement Website also

15  provides the opportunity for Redemption Claimants to file the personalized Claim Forms online.  The

16  Settlement Administrator also established and is maintaining a toll-free telephone number where class

17  members can obtain additional information, and a dedicated P.O. Box to receive and process Claim

18  Forms, opt-out requests and objections, and respond to Settlement Class Member inquiries.  Peak Decl.,

19  ¶¶ 8-12.

20          Finally, the Settlement Administrator will continue to process all timely and valid claims

21  submitted by Redemption Claimants, and will receive and process any requests for exclusion and

22  attached as Exhibit 5 to the Peak Decl. the list of seven (7) opt-outs as of May 10, 2017.  Peak Decl., ¶¶

23  13-14.  Accordingly, the Settlement Administrator concluded that the reach achieved by the Notice Plan

24  far exceeds to 70-95% guideline recommended by the Federal Judicial Center, affords enough time to

25  provide full and proper notice, and provided the best notice practicable under the circumstances.  *Id.* ¶¶

26  15-17.

27

28

1 | **V.     THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE**

2 The response from Settlement Class Members thus far has been very positive. The deadline for

3 Settlement Class Members to opt-out or object is May 30, 2017. As of May 10, 2017, only seven (7)

4 persons out of an estimated total class size of 182,476 have asked to be excluded, and no objections have

5 been submitted. See Peak Decl., ¶ 4, 13 & Ex. 5.[4]

6 | **VI.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

7 |     **A.     The Class Action Settlement Approval Process**

8 Proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure

9 for approval of class action settlements:

10
11 > (1)  Certification of a settlement class and preliminary approval  of the proposed settlement after submission to the Court of a written motion for preliminary approval.

12
13 > (2)  Dissemination of notice of the proposed settlement to the affected class members.

14
15 > (3)  A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

16

17 *See Manual for Complex Litigation* (Fourth), § 21.63 *et seq.* (2004).  This procedure safeguards

18 Settlement Class Members' procedural due process rights and enables the Court to fulfill its role as

19 guardian of class interests.  *See* 4 *Newberg on Class Actions*, § 11.22 *et seq.* (4th ed. 2002) (hereinafter

20 "Newberg").

21 The Court completed the first step in the settlement approval process when it issued the

22 Preliminary Approval Order, and the second step – dissemination of notice to the Settlement Class

23 Members – has been, and continues to be, implemented by the Settlement Administrator.  *See* Peak

24 Decl.  By this motion, Plaintiffs respectfully request that the Court take the third and final step and grant

25 final approval of the Settlement.

26

27 [4] Should any objections eventually be filed, the parties will address all submitted objections in advance of the Final Fairness Hearing.

28

1     **B.    Final Approval of the Settlement is Appropriate**

2         Public policy "strong[ly] . . . favors settlements, particularly where complex class action

3     litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill*

4     *Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955

5     F.2d 1268, 1276 (9th Cir. 1992); *In re Netflix Privacy Litig.*, No. 11-cv-379-EJD, 2013 WL 1120801, at

6     *3 (N.D. Cal. Mar. 18, 2013).

7         In weighing final approval of a class settlement, the Court's role is to determine whether the

8     settlement, taken as a whole, is fair, reasonable, and adequate.  *Staton v. Boeing Co.*, 327 F.3d 938, 952

9     (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The Ninth

10    Circuit has established a list of factors to consider when assessing whether a proposed settlement is fair,

11    reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and

12    likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4)

13    the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the

14    proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;

15    and (8) the reaction of the class members to the proposed settlement.  *See Churchill Village*, 361 F.3d at

16    575; *Hanlon*, 150 F.3d at 1026.  Application of these factors here supports the conclusion that the

17    Settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

18                    **1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and**
19                    **Likely Duration of Further Litigation**

20        The probability of success analysis is not subject to any "particular formula," nor is the Court

21    expected to "reach any ultimate conclusions of the contested issues of fact and law which underlie the

22    merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and

23    expensive litigation that induce consensual settlements." *Garner v. State Farm Mut. Auto. Ins. Co.*, No.

24    CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (quoting *Rodriguez*, 563

25    F.3d at 965, and *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688

26    F.2d 615, 625 (9th Cir. 1982)).  "Rather, the Court's assessment of the likelihood of success is nothing

27    more than an amalgam of delicate balancing, gross approximations and rough justice." *Garner*, 2010

28    WL 1687832, at *9 (citing *Officers for Justice*, 688 F.2d at 625) (internal quotations omitted).  Given

– 10 –

1  the subjective components inherent in evaluating the potential range of recovery, "the Court may

2  presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of

3  settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing

4  *Rodriguez*, 563 F.3d at 965).

5      Approval of a class settlement is particularly appropriate when plaintiffs must overcome

6  significant barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851

7  (N.D. Cal. 2010). While Plaintiffs are confident in the strength of their claims, they also recognize that

8  they would have to overcome significant obstacles to succeed.

9                    a.    **Plaintiffs Would Have to Overcome Defendant's Motion to Dismiss**
10                          **and Motion to Strike.**

11     The first barrier that Plaintiffs would need to overcome is Defendant's attempt to dismiss the

12  FACC for lack of standing and for failure to state a claim upon which relief can be granted. (Dkt. 53).

13  Moreover, Plaintiffs would also need to overcome Defendant's motion to strike Plaintiffs' class

14  allegations and various other allegations contained in the FACC. (Dkt. 54). While Plaintiffs are

15  confident that they would ultimately prevail against Defendant's arguments, Plaintiffs also recognize the

16  possibility that the Court or the Ninth Circuit may not share this view. If the FACC were dismissed

17  without leave to amend, the absent Settlement Class Members would receive no relief. It is also

18  possible that the Court could strike Plaintiffs' class allegations, among other allegations, as Defendant

19  requested. This would also leave the absent Settlement Class Members with no relief.

20                    b.    **Fact Intensive Inquiries Are Pervasive.**

21     "Ultimately, the merits of many of Plaintiffs' claims depend largely on a fact-intensive inquiry

22  into multiple questions," presenting another factor weighing in favor of settlement approval. *In re Wells*

23  *Fargo Loan Processor Overtime Pay Litig.*, No. 07-cv-1841-EMC, 2011 WL 3352460, at *5 (N.D. Cal.

24  Aug. 2, 2011) (finding the strength of plaintiffs' claim in favor of final approval where plaintiff's claims

25  depended largely on "fact-intensive inquiries into multiple questions.") Plaintiffs' contention that

26  Defendant failed to secure and safeguard their PII (*e.g.,* FACC ¶¶ 1-2, 21-23, 32) involves consideration

27  of many facts surrounding the data Incident, including the manner and the length of time in which the

28  PII was allegedly exposed, the types of PII exposed, and whether any of the PII was improperly

– 11 –

1  accessed or used.  Likewise, Plaintiffs' claims regarding Defendant's failure to provide timely and

2  adequate notice (*e.g.*, FACC ¶¶ 1-2, 48, 80) requires a factual inquiry into Defendant's notification

3  program to the individuals potentially affected by the Incident.

4     In support of its defenses, Plaintiffs expect that Defendant would present evidence at trial and

5  arguments that: (i) no credit or debit card information or bank PINs were exposed; (ii) the PII that was

6  potentially exposed was not publicly searchable; and (iii) and there was no evidence of any unauthorized

7  PII extraction.  Plaintiffs also expect that Defendant would present evidence at trial that the PII of

8  approximately 182,476 users was potentially involved in the Incident, and that Defendant sent notice in

9  writing of the Incident to all of them, with the offer of credit protection services through Experian's

10  ProtectMyID® free of charge. Defendant also argues that Plaintiffs' case should be barred from federal

11  court because they cannot allege that they have suffered an injury-in-fact fairly traceable to the Incident.

12  While Plaintiffs assert that they have sustained real, cognizable injury in the form of lost money due to

13  fraudulent charges and lost time spent addressing issues arising from the Incident, Defendant would

14  argue that there is no evidence connecting those injuries to its own conduct.

15
16       **c.**  **Continued Litigation and Trial Present Risks Regarding Liability,
   Damages, and Certification.**

17     In evaluating the Settlement, the Court should consider "the risk of continued litigation balanced

18  against the certainty and immediacy of recovery from the Settlement."  *In re Omnivision*, 559 F. Supp.

19  2d 1036, 1041 (N.D. Cal. 2008).  This is particularly true in cases, like this one, which involve

20  significant uncertainty and the potential for years of litigation and costly appeals.  *See, e.g.*, *Rodriguez*,

21  563 F.3d at 966 (favoring settlement where "[i]nevitable appeals would likely prolong the litigation, and

22  any recovery by Settlement Class Members, for years").

23     If the Settlement is not approved, this action will proceed to litigation and possibly trial and

24  appeal.  Plaintiffs and Defendant vehemently disagree about the merits of Plaintiffs' claims.  However,

25  regardless of each Party's respective position, there is uncertainty about the ultimate outcome of this

26  action and proceeding with this litigation poses various risks such as to certification, decertification, loss

27  on the merits, and loss on appeal, all of which would be extremely costly and time-consuming to fully

28  litigate.

1        Defendant will likely contend even throughout trial that the types of PII allegedly at risk in the

2   Incident for each affected individual varies depending on when the user first applied for direct deposit of

3   payments through Yapstone, and that not all individuals had any unique identifiers potentially exposed.

4   These variables could affect whether a user could have been injured by the Incident.  In light of these,

5   and similar, considerations, this Court or the Ninth Circuit might ultimately conclude that individualized

6   questions predominate over any common questions.

7             **2.**        **The Benefits Offered in the Settlement Are Substantial**

8                    **a.**       **The Settlement's Consideration Is Significant Compared to the**

9                        **Maximum Potential Recovery Available.**

10        *First*, the twelve-months of free ProtectMyID® Services to consumers whose PII was potentially

11   at risk but that did not previously enroll in Yapstone's Monitoring Offer ("Redemption Claimants") and

12   the $120,000 Settlement Fund amounts to an excellent result and constitute substantial consideration.

13   Experian's ProtectMyID® Services start at $15.99 per month, and the annual price is $159.95.  (Siciliano

14   Decl., Dkt. 74-2, ¶ 7.)  Furthermore, the price Experian charges a consumer for a credit report is $14.95.

15   (*Id*. ¶ 9).  Therefore, Plaintiffs' expert estimates a per-person retail value of the identity theft resolution

16   component of this Settlement at $145 annually per Redemption Claimant, which is the $159.95 annual

17   retail cost of ProtectMyID® less the $14.95 cost of an Experian credit report.  (*Id*. ¶ 15).  Therefore,

18   Plaintiffs' expert estimates the total retail value this Settlement makes available to the Redemption

19   Claimants in the first year, where a free credit report is included, is approximately $4,853,202.90.  (*Id*. ¶

20   19.)  "[C]ompar[ing] the settlement amount to the parties' 'estimates of the maximum amount of

21   damages recoverable in a successful litigation'" suggests the Settlement merits approval.  *Glass v. UBS*

22   *Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F.

23   App'x 452 (9th Cir. 2009).

24        It is very difficult, if not impossible, to accurately predict what amounts, if any, an ultimate trier

25   of fact would award in damages for the causes of action averred in this Action.  Without any discount

26   for the significant risks of continued litigation, including class certification and Defendant's defenses on

27   the merits, Plaintiffs estimate – for the purposes of this Motion – that the maximum potential recovery

28   available if they were successful on all of their claims is approximately $1,095,000 (or $10.00 per

– 13 –

1   Settlement Class Member whose SSN, DLN, and/or PN was potentially exposed and $5.00 per

2   Settlement Class Member whose SSN, DLN, and/or PN was not involved).  Wolfson Decl., ¶¶ 36-38.

3   This figure comes from the reality that the alleged injuries suffered by Plaintiffs and the Settlement

4   Class were relatively small if not nominal, and that establishing a nexus between said injuries and

5   Defendant's data Incident has the potential to be problematic.  Of the consumers who claim they did

6   suffer fraud in the wake of the Incident, many if not most of them have been fully reimbursed for any

7   fraudulent charge by their financial institutions.  Therefore, their damages include any out-of-pocket

8   expenses they incurred attempting to remediate the fraud or protect against future identity theft and

9   fraud, and nominal damages for time spent remediating the fraud and for invasion of privacy.  For these

10   nominal damages, Class Counsel's best estimate (under the facts of this case) of the Settlement Class's

11   maximum potential recovery is $5.00 per Member whose SSN, DLN, and/or PN was not involved, and

12   $10.00 per Member whose SSN, DLN, and/or PN was potentially exposed, as those identifiers are

13   highly sensitive and valuable to identity thieves.  *Id.*

14          According to the information provided to the Settlement Administrator, the class of consumers

15   potentially affected by the Incident is 182,476 individuals.  *Id.* ¶ 29.  These individuals had provided

16   Yapstone with their bank deposit routing numbers and account numbers, name, address, and date of

17   birth.  *Id.*  Of the 182,476 affected consumers, approximately 36,500 also had provided Yapstone with

18   their SSNs, DLN, and/or PN.  *Id.* ¶ 26.  Therefore, if each consumer whose SSN, DLN, and/or PN was

19   potentially exposed received nominal damages of $10.00, the maximum potential recovery for those

20   Settlement Class Members is $365,000.  Approximately 6,017 of the consumers whose SSN, DLN,

21   and/or PN was potentially exposed already enrolled in ProtectMyID® Services offered by Yapstone in

22   the Incident Notices.  Therefore, approximately 30,342 consumers remain as Redemption Claimants

23   pursuant to this Settlement.  The $159.95 first year retail value of the ProtectMyID® Services made

24   available to Redemption Claimants by this Settlement—or $4,853,202.90 in the aggregate—amounts to

25   significantly higher than 100% of the estimated maximum potential recovery for these consumers.  Even

26   if a mere five (5) percent of Redemption Claimants enroll in ProtectMyID® under the Settlement, at

27   $159.95 per consumer, the total value to those Redemption Claimants is approximately $242,660.15 in

28   the first year alone.  *Id.* ¶ 38.

– 14 –

1   If each Settlement Class Member whose SSN, DLN, and/or PN was not potentially exposed

2   (approximately 146,000 consumers) was entitled to nominal damages of $5.00, the total maximum

3   potential recovery for all of those Settlement Class Members would equal $730,000.  These consumers

4   are Settlement Class Members who, although ineligible for ProtectMyID®, will benefit from the

5   injunctive relief and the $120,000 cash Settlement Fund.  Though difficult to quantify the value of the

6   injunctive relief, as discussed above, the benefit is substantial.  Considering the Settlement Fund alone,

7   the Settlement Class Members who are not Redemption Claimants will be receiving a benefit that is over

8   16% of the maximum potential recovery to these consumers.  *Id.* ¶ 39.

9   Because ExtendCARE™ is being provided with ProtectMyID®, Settlement Class Members will

10  receive fraud resolution support even after ProtectMyID® expires.  (Stip. ¶ 39; Siciliano Decl., Dkt. 74-2

11  ¶ 16.)  Plaintiffs' expert estimates that a total retail value of $4,399,590 is available to the Redemption

12  Claimants annually after the first year.  (Siciliano Decl., Dkt. 74-2 ¶ 19.)  Settlement Class Members

13  who took advantage of Yapstone's Monitoring Offer have already received ProtectMyID® with

14  ExtendCare™.  Therefore, they have already received the same benefit which the Redemption

15  Claimants, who did not take advantage of the Monitoring Offer, can now claim in this Settlement. Even

16  if only fifteen percent of Redemption Claimants make a claim in this Settlement the total value to the

17  Redemption Claimants would be approximately $727,980.44 in the first year, and approximately

18  $659,938.50 annually thereafter for the lives of the Redemption Claimants.

19  This real, pecuniary consideration on behalf of the 30,342 Redemption Claimants is substantial

20  in relation to the relatively small amount of injury, and in some cases nominal amounts, alleged by

21  Plaintiffs on behalf of Settlement Class Members.  Wolfson Decl., ¶¶ 37-39.  Some Settlement Class

22  Members whose PII may have been exposed during the Incident claim they have experienced fraud

23  since, while others have had no fraud.  For those who have not experienced fraud, their alleged injury

24  can be said to be only nominal, accounting for the invasion of their privacy.  *Id*.  Furthermore,

25  Defendant contends that according to a report of the forensics analyst it hired in the wake of the data

26  Incident, there is no evidence of unauthorized extraction of PII. *Id.* ¶ 20.  This contention, if true, may

27  limit Plaintiffs' ability to prevail on the merits if the case proceeded to litigation.  Consequently, the

28

– 15 –

1  value of the Settlement Consideration is significant compared to the maximum potential recovery that

2  might be achieved through continued litigation.

3      Indeed, many courts have approved settlement values well below this range.  *See, e.g., Custom*

4  *LED*, 2014 WL 2916871, at *4 ("[C]ourts have held that a recovery of only 3% of the maximum

5  potential recovery is fair and reasonable…"); *In re OmniVision Techs.*, 559 F. Supp. 2d at 1042 (6% of

6  potential damages); *In re LDK Solar Secs. Litig.*, No. 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168 at

7  *7 (N.D. Cal. July 29, 2010) (5% of potential damages); *In re Heritage Bond Litig.*, No. 02–ML–1475–

8  DT, 2005 WL 1594389, at *8–9 (C.D. Cal. June 10, 2005) (median amount recovered in securities class

9  action settlements was 2.7% in 2002, 2.8% in 2003, 2.3% in 2004).  This monetary component of the

10  Settlement is significant compared to the maximum potential recovery available, suggesting the

11  Settlement merits approval.

12                    b.    **The Settlement's Injunctive Relief Is Substantial Consideration.**

13      The Settlement's injunctive relief alone would constitute substantial consideration and justify

14  approval of this Settlement.  *See, e.g.*, *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014)

15  (affirming settlement approval where "injunctive relief . . . [was] meaningful and consistent with the

16  relief requested in plaintiffs' complaint");  *In re TracFone Unlimited Serv. Plan Litig.*, No. C-13-3440

17  EMC, 2015 WL 4051882, at *8 (N.D. Cal. July 2, 2015) (approving settlement where "the injunctive

18  relief [would] have significant value for both Settlement Class Members and the general public").  For

19  example, the data security measures that the Settlement requires Defendant to implement will materially

20  benefit the Settlement Class Members, and possibly current and future consumers as well, who used or

21  will use products serviced by Yapstone's payment service. Moreover, Plaintiffs seek relief under the

22  UCL, and "the primary form of relief available under the UCL to protect consumers from unfair

23  business practices is an injunction."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009).

24                    c.    **The Settlement's Additional Consideration Is Significant.**

25      Class Counsel was also able to secure additional consideration in the amount of $120,000, which

26  Yapstone will pay on behalf of the Settlement Class, directly and equally to the non-profit organizations

27  Public Justice ("PJ"), a non-profit organization with a mission to "combat social and economic injustice,

28  protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses",

– 16 –

1  and the UC Berkeley School of Information, Center for Long-Term Cybersecurity ("CTLC"), a non-

2  profit "research and collaboration hub dedicated to building secure digital futures."  (*See* Dkts. 74-1, 74-

3  3 & 74-4); *see also Dennis v. Kellogg*, 697 F.3d 858, 865 (9th Cir. 2012) (the use of *cy pres* in federal

4  class action settlements is common "where the proof of individual claims would be burdensome or

5  distribution of damages costly.") Both of these non-profit organizations fulfill the requirements of

6  *Kellogg*, namely that there must be "a driving nexus between the plaintiff class and the *cy pres*

7  beneficiaries." *Id.* at 865 (citing *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)).  That is,

8  "[a] *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests

9  of the silent Settlement Class Members,' ..., and must not benefit a group 'too remote from the plaintiff

10  class,' ..." *Kellogg*, 697 F.3d at 865 (citations omitted).

11      PJ and CLTC will use any *cy pres* award in this case to further the underlying goals of the

12  Consumer Action, directly and indirectly benefiting the Settlement Class Members and similarly

13  situated persons.  (*See generally* Dkt. 74-3[5]; Dkt. 74-4[6].)

14      In summary, given its substantial monetary and non-monetary components, the consideration and

15  benefits of the Settlement are substantial.

16  **C.     The Settlement Provides for a Fair Allocation of Relief to All Class Members**

17      Under this factor, "the Court examines whether the Settlement provides preferential treatment to

18  any Settlement Class Member." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC),

19

---

20  [5]     PJ will use the funds to advance the rights of consumers to be free of privacy injuries and to help enforce consumer protection laws guarding against privacy injuries. (Dkt. 74-3, ¶ 3.)  Because of PJ's proven record of success and commitment to ensuring that *cy pres* awards are properly used, numerous courts have directed that Public Justice be awarded *cy pres* funds.  (*Id*. ¶ 11.)  Furthermore, PJ has presented CLE programs focused on consumer privacy issues.  (*Id.* ¶ 14.)  PJ also receives and responds to many requests for advice and legal research from consumer attorneys who represent persons who are the victims of privacy injuries, as well as requests for assistance from consumers who are victims of such injuries.  (*Id*. ¶ 16.)  PJ has advocated for consumers who have been harmed by privacy injuries, including data breaches specifically.  (*Id*. ¶ 18.)

25  [6]     CLTC will use the funds to help advance the rights of consumers to be aware of the risks they face online from cybersecurity threats, and to ensure that consumers have options to mitigate those risks. (Dkt. 74-4, ¶ 5.)  CLTC provides educational activities to support students and the broader public in better understanding cybersecurity.  (*Id.* ¶ 21.)  The educational talks are free and open to the public. (*Id*. ¶ 22.)  Furthermore, CLTC partners with governments, companies, civil society, and the media, to deliver new and innovative ways to address the world's growing cybersecurity challenges. (Id. ¶ 24.)

28

1   2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012). Here, all Settlement Class Members receive the

2   injunctive relief benefits and the cash components of the Settlement equally. Redemption Claimants,

3   however, are receiving a benefit not available to other Settlement Class Members, namely another

4   opportunity to enroll in the ProtectMyID® Service. This allocation is fair because out of the Settlement

5   Class of approximately 182,476 individuals, approximately 36,500 individuals had also provided

6   Yapstone with certain additional PII (their SSN, DLN, or PN). The Settlement simply provides the

7   remaining 30,342 Redemption Claimants who did not yet enroll in ProtectMyID® with another

8   opportunity to enroll. Thus, all consumers who had certain additional PII at issue during the Incident

9   would receive, in the end, the same benefit from this aspect of the Settlement.

10          The consideration to Settlement Class Members does not result in any preferential treatment, as

11  each Redemption Claimant will receive twelve (12) months of free identity monitoring services from

12  Experian's ProtectMyID®. Redemption Claimants will receive the same types of services through

13  ProtectMyID® in which all other Settlement Class Members already had the opportunity to enroll

14  through Yapstone's Monitoring Offer (Stip. Recital ¶ E & ¶¶ 39, 43(a)). *See, e.g., Custom LED, LLC v.*

15  *eBay, Inc*, No. 12-CV-00350-JST, 2013 WL 6114379, at *9 (N.D. Cal. Nov. 20, 2013) (finding

16  "universal availability" of the same settlement consideration "ensure[s] that certain segments of the class

17  would not benefit more" than others from the distribution method).

18                      1.      **Class Counsel Performed Sufficient Research and Analysis to Adequately**
19                              **Assess the Settlement and the Strengths and Weaknesses of the Class'**
                                **Claims**
20

21          "This factor evaluates whether 'the parties have sufficient information to make an informed

22  decision about settlement.'" *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at

23  *5 (N.D. Cal. July 11, 2014). "In the context of class action settlements, as long as the parties have

24  sufficient information to make an informed decision about settlement, formal discovery is not a

25  necessary ticket to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257

26  (N.D. Cal. 2015) (internal quotation omitted). "Rather, the court's focus is on whether the parties

27  carefully investigated the claims before reaching a resolution." *Id.* (internal quotation omitted). Here,

28  Plaintiffs requested, received, and reviewed extensive information from Defendant, specifically in

1  connection with mediation and settlement negotiations.  *See* Section II, *supra*.  Plaintiffs fully

2  understand the merits of this case, and this factor weighs in favor of settlement.

3           **2.      The Recommendations of Experienced Class Counsel Favor Approval**

4           "Where a settlement is the product of arms-length negotiations conducted by capable and

5  experienced counsel, the court begins its analysis with a presumption that the settlement is fair and

6  reasonable." *Garner*, 2010 WL 1687832, at *13.  Class Counsel has broad experience litigating and

7  trying consumer and class action cases.  In their view, the Settlement provides substantial benefits to the

8  Class, especially when one considers the attendant expense, risks, delays, and uncertainties of litigation,

9  trial and post-trial proceedings.  (Wolfson Decl., ¶ 40).

10          **3.      The Presence of a Government Participant**

11          Notice has been issued pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 (see Peak

12  Decl., ¶ 3). To date, no governmental entity has intervened.

13          **4.      The Class Response to Date Favors Final Approval**

14          While it is premature to fully evaluate this factor, the response from Settlement Class Members

15  thus far has been very positive. The deadline for Settlement Class Members to opt-out or object is May

16  30, 2017. As of May 12, 2017, only 7 persons out of an estimated total class size of 182,476 have asked

17  to be excluded, and no objections have been submitted. See Peak Decl. ¶¶ 4, 13.

18          **5.      Lack of Collusion Between the Parties**

19          "Before approving a class action settlement, the district court must reach a reasoned judgment

20  that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the

21  negotiating parties." *City of Seattle*, 955 F.2d at 1290 (citations omitted). "Where a settlement is the

22  product of arms-length negotiations conducted by capable and experienced counsel, the court begins its

23  analysis with a presumption that the settlement is fair and reasonable." *Garner*, 2010 WL 1687832, at

24  *13; *see also* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, No. 02-ml-1475 DT, 2005 WL 1594403, at

25  *2-3 (C.D. Cal. June 10, 2005).

26          The Settlement is the result of over seven months of hard-fought, arms-length negotiations

27  between the parties and their well-qualified counsel, including mediation with Judge Richard Kramer

28  (Ret)., and numerous telephone conferences with the mediator and directly between experienced counsel

– 19 –

1   who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and

2   defenses.  The negotiations were mediated and facilitated by a retired judge with substantial judicial and

3   mediation experience in class actions.  Moreover, the settlement was reached only after Plaintiffs'

4   counsel analyzed materials provided by Yapstone and performed other independent investigation.

5   Wolfson Decl. ¶ 21.

6   **VII.   CLASS ACTION TREATMENT IS APPROPRIATE**

7       The Court may and should reaffirm certification of the Settlement Class for settlement purposes

8   only because Rule 23(a) and 23(b)(3) are satisfied.  *See e.g.  Keirsey v. eBay, Inc.*, No. 12-CV-01200-

9   JST, 2013 WL 5755047, at *2 (N.D. Cal. Oct. 23, 2013) (the Court may certify a class for settlement

10  purposes).

11      **A.   This Action Satisfies the Requirements of Rule 23(a)**

12      "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,'

13  'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel v.*

14  *ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

15      *The Class Is Numerous*:  The Settlement Class includes approximately 182,476 members  easily

16  satisfying the numerosity requirement of Rule 23(a)(1).

17      *The Action Presents Common Questions:*  Rule 23(a)(2) requires that "there [be] questions of

18  law or fact common to the class."[7]  This requirement is also satisfied.  Common questions include:

19  whether Defendant unlawfully used, maintained, lost or disclosed Plaintiffs' and Settlement Class

20  Members' personal and/or financial information; whether Defendant unreasonably delayed in

21  notifying affected consumers of the Incident; and whether Defendant failed to implement and

22  maintain reasonable security procedures and practices appropriate to the nature and scope of the

23  information potentially exposed in the Incident.

24  ———————————————

25  [7]    *See Hanlon*, 150 F.3d at 1019; *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556
    (2011).  "Commonality requires the plaintiff to demonstrate that the Settlement Class Members have
26  suffered the same injury." *Id.* at 2551.  Class members' claims "must depend on a common contention .
    . . of such a nature that it is capable of class wide resolution—which means that determination of its
27  truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."
    *Id.*
28

1    *Plaintiffs' Claims Are Typical:* Rule 23(a)(3)'s requirement that "the claims or defenses of

2    the representative parties are typical of the claims or defenses of the class" also is satisfied because

3    Plaintiffs' claims are "reasonably co-extensive with those of absent Settlement Class Members."

4    *Hanlon*, 150 F.3d at 1020. The Plaintiffs' claims stem from the same common course of conduct as

5    the claims of the Settlement Class Members. The alleged injuries suffered by Plaintiffs are the same

6    as those of the Settlement Class Members and allegedly result from the data Incident experienced by

7    Defendant. Typicality is therefore satisfied. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)

8    ("The test of typicality is whether other members have the same or similar injury, whether the action

9    is based on conduct which is not unique to the named plaintiffs, and whether other Settlement Class

10   Members have been injured by the same course of conduct.") (internal quotation omitted).

11       *The Interests of the Class Are Adequately Protected*: Rule 23(a)(4) requires that the

12   representative parties will fairly and adequately protect the interests of the class. "Resolution of two

13   questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts

14   of interest with other Settlement Class Members, and (2) will the named plaintiffs and their counsel

15   prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. There are no

16   conflicts of interest here. The Settlement Class Representatives seek the same remedy as all

17   Settlement Class Members: relief to address claims arising from Defendant's data Incident in which

18   certain PII of Class Members may have been exposed. The Settlement Class Representatives'

19   interests are perfectly aligned with the interests of the Settlement Class.

20       Further, as demonstrated in the motion for preliminary approval and exhibits attached thereto

21   (Dkt. 75), Class Counsel has extensive experience litigating and settling class actions, including false

22   advertising, breach of contract, and unlawful business practices claims on behalf of consumers. They

23   have demonstrated expertise in handling all aspects of complex litigation and class actions, and are well

24   qualified to represent the Class. Plaintiffs and Class Counsel remain fully committed to advancing the

25   interests of the Settlement Class Members, as evidenced by the terms of the Settlement.

26       **B.    The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied**

27       "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

28   certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."

– 21 –

1    *Hanlon*, 150 F.3d at 1022.  Here, Rule 23(b)(3) is satisfied because: (i) the questions of law and fact

2    common to members of the class predominate over any questions affecting only individuals; and (ii) the

3    class action mechanism is superior to any other available methods for the fair and efficient adjudication

4    of the controversy.  Fed. R. Civ. P. 23(b)(3).

5        *Common Questions of Law and Fact Predominate*: Rule 23(b)(3) "does *not* require a plaintiff

6    seeking class certification to prove that each element of [the] claim is susceptible to classwide

7    proof."  *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)

8    (emphasis in original).  Plaintiffs need only show that "common questions 'predominate over any

9    questions affecting only individual [class] members.'"  *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). The

10   claims in this case are based upon uniform conduct regarding a single data Incident affecting

11   Defendant where certain PII of the Settlement Class Members was potentially exposed at the same

12   time, and for the same amount of time.  There are no predominating individual issues because, under

13   Plaintiffs' legal theory alleging violations of the California Unfair Competition Law, Cal. Bus. &

14   Prof. Code § 17200, *et seq*. ("UCL"), the objective reasonable consumer standard applies to

15   determining liability.  *See Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1089, 1092-93

16   (9th Cir. 2010) (predominance requirement met where state's consumer protection statute is based

17   upon the objective reasonable consumer standard); *Williams v. Gerber Products Co*., 552 F.3d 934,

18   938-39 (9th Cir. 2008) (reasonable consumer standard applies to California's consumer protection

19   statutes); *In re Tobacco II Cases*, 46 Cal. 4th at 324 (no showing of injury or reliance by absent

20   Settlement Class Members required).  Furthermore, for Plaintiffs' legal theories based on common

21   law and/or state data breach laws, the determination of liability rests on inquiries that are common to

22   all Settlement Class Members, including whether Defendant's cyber security procedures were

23   adequate and whether Defendant's notice program was timely and adequate.  *See In re LinkedIn*

24   *User Privacy Litig*., 309 F.R.D. 573, 585 (N.D. Cal. 2015) (finding predominance exists because

25   whether defendant failed to protect its users' PII is a common question that can be resolved for all

26   members of the proposed class in a single adjudication, and is a central focus of the class action).

27       *A Class Action Is Superior*: A class action is superior to other available methods for the fair

28   and efficient adjudication of this controversy. To determine the issue of "superiority," Rule 23(b)(3)

– 22 –

1   enumerates the following factors for courts to consider: "(A) [T]he interest of members of the class

2   in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any

3   litigation concerning the controversy already commenced by . . . members of the class; (C) the

4   desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the

5   difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

6         Each of these factors supports certifying the Settlement Class for settlement purposes.  First,

7   there is little interest or incentive for Settlement Class Members to individually control the prosecution

8   of separate actions.  The Settlement Class Members' individual claims are too small to justify the

9   potential litigation costs that would be incurred by prosecuting these claims individually. Although

10  Plaintiffs claim that the injury resulting from Defendant's alleged failure to secure and safeguard the PII

11  of the Settlement Class are real, the cost of individually litigating such a case against Defendant would

12  easily exceed the value of any relief that could be obtained by any one consumer.  This fact strongly

13  warrants a finding that a class action is a superior method of adjudication.

14        Second, certification would be superior because concentrating this litigation in one forum would

15  not only prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote

16  greater efficiency."  *Negrete v. Allianz Life Ins. Co. of N. Am.,* 238 F.R.D. 482, 493 (C.D. Cal. 2006).

17  This "factor emphasizes the desirability of the forum selected, not the desirability of claims

18  concentration generally."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 524

19  (D.N.J. 1997).  The Northern District is a compelling forum because Defendant is headquartered in

20  Walnut Creek.

21  **VIII.   CONCLUSION**

22        For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

23        (1) Granting final approval of the proposed Settlement as fair, reasonable and adequate to

24  Plaintiffs and the Settlement Class Members and directing the Settlement's consummation according to

25  its terms;

26        (2) Reaffirming certification of the Settlement Class for settlement purposes;

27        (3) Finding that the form and manner of class notice implemented pursuant to the Settlement: (i)

28  constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably calculated, under

– 23 –

the circumstances, to apprise Settlement Class Members of the pendency of the litigation, the terms of the proposed Settlement, the right to object to the proposed Settlement or exclude themselves from the Settlement Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure;

(4) Finding that all Settlement Class Members shall be bound by the Settlement as it relates to the Settlement Class in which each is a member, including the release provisions and covenant not to sue;

(5) Finding that all Settlement Class Members shall be bound by the Settlement as it relates to the Settlement Class in which each is a member, including the release provisions and covenant not to sue;

(6) Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement;

(7) Incorporating the release and related provisions set forth in the Settlement and barring any Released Claims against the Released Parties;

(8) Approving provision of the benefits to the Redemption Claimants consistent with the Settlement;

(9) Approving creation of and payment to the Settlement Fund consistent with the Settlement;

(10) Retaining jurisdiction of all matters relating to the interpretation, administration, implementation, and enforcement of the Settlement.

Dated: May 16, 2017                       Respectfully Submitted,


                                          **AHDOOT & WOLFSON, PC**

                                          By: */s/   Tina Wolfson*
                                          Tina Wolfson, SBN 174806
                                          *twolfson@ahdootwolfson.com*
                                          Robert Ahdoot, SBN 172098
                                          *rahdoot@ahdootwolfson.com*

– 24 –

1

Theodore Maya, SBN 223242
*tmaya@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
1016 Palm Ave.
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

2

3

4

5

*Interim Lead Class Counsel and Counsel for Plaintiffs*

6

**LOCKS LAW FIRM, LLC**
Michael A. Galpern (*pro hac vice*)
*mgalpern@lockslaw.com*
Andrew P. Bell (*pro hac vice*)
*abell@lockslaw.com*
James A. Barry (*pro hac vice*)
*jbarry@lockslaw.com*
801 North Kings Highway
Cherry Hill, New Jersey 08034
Telephone: (856) 663-8200; Facsimile: (856) 661-8400

7

8

9

10

11

12

*Counsel for Plaintiffs*

13

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins (*pro hac vice*)
*shopkins@zlk.com*
Shane Rowley (*pro hac vice*)
*srowley@zlk.com*
Nancy A. Kulesa (*pro hac vice*)
*nkulesa@zlk.com*
Andrea Clisura (*pro hac vice*)
*aclisura@zlk.com*
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500; Facsimile: (866) 367-6510

14

15

16

17

18

19

20

21

*Counsel for Plaintiffs*

22

## ATTORNEY ATTESTATION

23

24

25

Pursuant to Civil Local Rule 5-1(i), I, Tina Wolfson, hereby attest that concurrence in the filing of this document and all supporting documents has been obtained from the other signatories on these documents.

26

27

DATED: May 16, 2017                    By: */s/ Tina Wolfson*
                                                   Tina Wolfson

28

– 25 –